UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| **THE STATE OF TEXAS,** | § § § | |
| *Plaintiff*, | § § | CIVIL ACTION NO. 2:23-CV-00055-AM |
| v. | § § | |
| **U.S. DEPARTMENT OF HOMELAND SECURITY,** *et al.*, | § § § | |
| *Defendants*. | § | |

**PLAINTIFF'S EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER OR
STAY OF AGENCY ACTION**

## INTRODUCTION

The State of Texas filed this lawsuit because federal officials have claimed the authority to destroy state property simply "to allow [illegal] aliens to enter & be processed." ECF 3-1 at 22. Beginning on September 20, 2023, the federal Defendants accelerated that practice, seizing and destroying Texas's concertina wire fence on almost a daily basis, *id.* at 24–27—just as the City of Eagle Pass was experiencing an unprecedented influx of illegal migration, *id.* at 18–20. Rather than resorting to self-help measures, Texas brought this suit in federal district court to enjoin ongoing invasions of the State's property rights and violations of the Administrative Procedure Act (APA).

But Defendants, it seems, are not content to have this Court decide these issues. Instead, just two days after Texas notified them of this lawsuit, federal agents escalated matters, trading bolt cutters for an industrial-strength telehandler forklift to dismantle Texas's border fence:




1

Federal agents used hydraulic-powered pallet forks to rip Texas's fence—concertina wire, fencing posts, clamps, and all—out of the ground, holding it suspended in the air in order to wave more than 300 migrants illegally into Texas. *See* Cooney Decl. ¶¶5-15, Supp.Appx.002–004.

This brazen escalation by Defendants is an affront not only to Texas, but also to this Court, which already had pending before it a motion for a preliminary injunction. ECF 3-1. This Court should immediately grant a temporary restraining order to enjoin Defendants from continuing to damage, destroy, or otherwise meddle with Texas's concertina wire fence until the Court can rule on the State's preliminary-injunction motion. Alternatively, this Court could simply grant a preliminary injunction in light of Defendants' willful misconduct. *Cf. 360 Mortgage Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. A-14-CA-847, 2014 WL 12570176, at *4 (W.D. Tex. Oct. 10, 2014) (Sparks, J.). Further, the Court could issue a stay of agency action pending judicial review under the APA. 5 U.S.C. § 705. Defendants oppose the relief sought in this motion.

### ARGUMENT

Texas seeks a temporary restraining order for the purpose "of preserving the status quo and preventing [the] irreparable harm" that will occur if Defendants are allowed to continue cutting, destroying, or otherwise damaging Plaintiff's concertina wire fence. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

To merit such relief, Texas, as the moving party, must make a showing similar to the one required to obtain a preliminary injunction: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) that the threatened injury outweighs any damage that the injunction may cause the opposing party; and

(4) that the injunction will not disserve the public interest." *Leija v. Kickapoo Traditional Tribe of Texas*, No. DR-18-cv-043, 2018 WL 7255430, at *6 (W.D. Tex. Sept. 14, 2018) (Moses, J.).

"None of [these] four prerequisites has a fixed quantitative value." *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975). Instead, "a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id.* (citation omitted). Ultimately, whether to grant a request for a temporary restraining order "is left to the sound discretion" of the Court. *Nianga v. Wolfe*, 435 F. Supp. 3d 739, 743 (N.D. Tex. 2020).

This Court has routinely found that imminent interference with property interests presents an appropriate occasion for entering a temporary restraining order. *See, e.g.*, *Pomeroy, Inc. v. Border Opportunity Saver Sys., Inc.*, No. DR-10-010, 2010 WL 11652127, at *4 (W.D. Tex. Feb. 23, 2010) (Moses, J.); *Jones v. Wells Fargo Bank, N.A.*, No. A-18-cv-379, 2018 WL 2996898 (W.D. Tex. June 4, 2018) (Yeakel, J.); *Baker v. HUD*, No. SA:19-cv-1049, 2019 WL 7763992 (W.D. Tex. Sept. 30, 2019) (Ezra, J.). A TRO is especially appropriate where, as here, "notice of the action … hasten[s] the Defendants' threatened [interference with] property." *Pomeroy*, 2010 WL 11652127, at *2.

In addition, the APA empowers a "reviewing court" to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. A stay of the agency action should issue "to the extent necessary to prevent irreparable injury" and "[o]n such conditions as may be required." *Id.*; *Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*, 16 F.4th 1130, 1143 (5th Cir. 2021); *Texas v. U.S. EPA*, 829 F.3d 405, 435 (5th Cir. 2016) (staying an EPA action pending review).

When considering "whether to stay an agency action pending judicial review," district courts apply the same test used for temporary restraining orders and preliminary injunctions. *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015); *see also IHG Healthcare, Inc. v. Sebelius*, 4:09-cv-3233, 2010 WL 11680368, at *1 (S.D. Tex. Apr. 1, 2010); *Safety Nat'l Cas. Corp. v. U.S. Dep't of Homeland Sec.*, 4:05-cv-2159, 2005 WL 8168878, at *2 (S.D. Tex. Dec. 9, 2005). Thus, for the reasons explained in its preliminary-injunction motion, Texas has made the showing necessary for a stay.

Staying the policy or practice of Defendants differs from a temporary restraining order in one important respect. While a standard temporary restraining order expires after 14 days, *see* Fed. R. Civ. P. 65(b)(2), the APA empowers the Court to postpone the effective date as long as necessary "to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. As a result, a stay would allow the Court to maintain the status quo pending a preliminary injunction hearing—or a final merits determination—regardless of the schedule the Court chooses.

**A.** There can no longer be any dispute that: the concertina wire fence is state property; Defendants have exercised dominion over that property absent any kind of exigency; and they have continued to do so even after being put on notice of the State's interest in the property. ECF 3-1 at 17–18, 21–28, 31–32 n.55; Perez Decl ¶¶3–6, Appx.001–002; Banks Decl. ¶¶15–25, Appx.020–027. This Court may never see a simpler case for common-law conversion or trespass to chattels. ECF 3-1 at 30–32. And it has granted a temporary restraining order for conversion before. *See Pomeroy*, 2010 WL 11652127, at *2-3. Defendants' conduct yesterday likewise attests to violations of the APA. Just like clockwork, agents of Defendants undertook the same destructive behavior they have

perpetrated almost every day since September 20—evidence of an obvious policy, pattern, or practice never subjected to public notice and comment. ECF 3-1 at 34–37. The fact that federal officers and agencies tasked with securing the border and deterring illegal entries persist instead in destroying state property designed to secure the border and deter illegal entries is clear evidence of acts in excess of statutory authority or *ultra vires* conduct. *Id.* at 32–34, 39–42. And the incoherence of destroying border barriers just weeks after DHS itself acknowledged "an acute and immediate need to construct physical barriers" demonstrates that Defendants' policy is arbitrary and capricious. *Id.* at 37–39.

    **B.** Texas has demonstrated a substantial threat of irreparable harm. It has already shown the extensive costs incurred because of Defendants' ongoing interference with state property. Garcia Decl. ¶¶5–10, 13–14, Appx.005–006, 010. Even more harm is "threatened if Plaintiff does not regain the use of" its concertina wire fence. *Pomeroy*, 2010 WL 11652127, at *3. Defendants' actions this week demonstrate—beyond any shadow of a doubt—that they *will* prevent the State of Texas from maintaining operational control of its own property. Instead, they will persist in damaging, destroying, and exercising dominion over state property on a continual basis, anytime aliens "have crossed onto U.S. soil without authorization into custody for processing."[1] This intransigence demonstrates that nothing short of ordering immediate relief will protect Plaintiff's property interest and the Texas communities being harmed by the uninhibited flow of illegal migration while this Court adjudicates Plaintiff's motion for a preliminary injunction.

---

[1] Uriel J. Garcia, *Texas Sues to Stop Border Patrol Agents from Cutting State's Razor Wire at the Border*, Tex. Trib. (Oct. 24, 2023), https://www.texastribune.org/2023/10/24/texas-attorney-general-paxton-lawsuit-border-concertina-wire/ (quoting "a spokesperson for the department").

Defendants' repeated destruction of Texas's concertina wire irreparably harms Texas because it facilitates increased illegal entry into the State.[2] ECF 3-1 at 43. As a result, Texas will incur uncompensated "expenditures in providing emergency medical services, social services and public education for illegal aliens." *Texas v. United States*, 50 F.4th 498, 518 (5th Cir. 2022); *see* Watlz Decl., Appx.031–033 (incarceration); Bricker Decl., Appx.034–046 (healthcare); Gipson Decl., Appx.047–058 (driver's licenses); Meyer Decl., Appx.059–062 (education). These costs are irreparable because of the sovereign immunity enjoyed by federal agencies. *Wages & White Lion Invs., L.L.C.,* 16 F.4th at 1142.

**C.** The balance of interests plainly favors Texas and temporary relief will serve the public interest. As Texas explained in its preliminary-injunction motion, ECF 3-1 at 31–32 & n.55, "[t]here is no … legal basis for the Defendants to exercise control and dominion over the property," *Pomeroy*, 2010 WL 11652127, at *3. If Defendants believe they *do* have some lawful basis to continuously interfere with another sovereign's chattels, "[t]he proper course of action to [remove that property] is through legal proceedings, not self-help action." *Id.* A temporary restraining order here will plainly serve the public interest. There is presently a crisis of human trafficking, drug smuggling, and terrorist infiltration along the southern border. ECF 3-1 at 9–14,

---

[2] Defendants have recently conceded that physical border barriers are effective in reducing unlawful entry by aliens: "There is presently an acute and immediate need to construct physical barriers and roads in the vicinity of the border of the United States in order to prevent unlawful entries into the United States." U.S. Dep't of Homeland Security, *Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, As Amended*, 88 Fed. Reg. 69,214, 69,215 (Oct. 5, 2023), *available at* https://www.federalregister.gov/documents/2023/10/05/2023-22176/determination-pursuant-to-section-102-of-the-illegal-immigration-reform-and-immigrant-responsibility.

38–39. Just days ago, CBP officials warned in an "intelligence note" that operatives from Hamas may be seeking to enter through the U.S.-Mexico border.[3]

Concertina wire fencing undoubtedly serves as an effective "deterrent" against the illegal entries fomenting this litany of harms. ECF 3-1 at 15–17. And Defendants' acts yesterday prove they are committed to permitting a free flow of these harms into Texas and the United States.

## CONCLUSION

Plaintiff the State of Texas respectfully requests the Court to enter an order temporarily restraining Defendants from damaging, destroying, or otherwise interfering with Texas's concertina wire fence while it adjudicates the pending preliminary-injunction motion—or grant that motion due to Defendants' escalation of its misconduct. Alternatively, the Court should issue a stay of Defendants' policy doing the same, pending judicial review.

---

[3] Quinn Owen & Luke Barr, *Hamas Militants 'May Potentially' Try Crossing the Southern Border, US Officials Warn*, ABC News (Oct. 23, 2023), https://abcnews.go.com/Politics/hamas-militants-potentially-crossing-southern-border-us-officials/story?id=104236095.

Dated: October 27, 2023.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**RALPH MOLINA**
Deputy Attorney General for Legal Strategy


**ROBERT HENNEKE**
Texas Bar No. 24046058
Texas Public Policy Foundation
901 Congress Ave.
Austin, Texas 78701
(512) 472-2700
rhenneke@texaspolicy.com

Respectfully submitted.

*/s/ Ryan D. Walters*
**RYAN D. WALTERS**
Chief, Special Litigation Division
Texas Bar No. 24105085

**SUSANNA DOKUPIL**
Special Counsel
Texas Bar No. 24034419

**MUNERA AL-FUHAID**
Special Counsel
Texas Bar No. 24094501

**AMY S. HILTON**
Special Counsel
Texas Bar No. 24097834

**HEATHER L. DYER**
Special Counsel
Texas Bar No. 24123044

Office of the Attorney General
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-2714
Ryan.Walters@oag.texas.gov
Munera.Al-Fuhaid@oag.texas.gov
Susanna.Dokupil@oag.texas.gov
Amy.Hilton@oag.texas.gov
Heather.Dyer@oag.texas.gov

**COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF CONFERENCE**

I certify that on October 27, 2023, I conferred via email with counsel for Defendants, Christopher Eiswerth of the U.S. Department of Justice, Civil Division, Federal Programs Branch, regarding the relief requested in this motion. Counsel for Defendants stated that they oppose the motion.

*/s/Ryan D. Walters*
RYAN D. WALTERS

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on October 27, 2023, which automatically serves all counsel of record who are registered to receive notices in this case. I also served a copy of this document via email to counsel for Defendants, Jean Lin and Christopher Eiswerth, at Jean.Lin@usdoj.gov and Christopher.A.Eiswerth@usdoj.gov.

*/s/Ryan D. Walters*
RYAN D. WALTERS