UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| **THE STATE OF TEXAS,** | § § § | |
| *Plaintiff,* | § § | Civil Action No. 2:23-CV-00055-AM |
| v. | § § | |
| **U.S. DEPARTMENT OF HOMELAND SECURITY,** *et al.*, | § § § | |
| *Defendants.* | § | |

**PLAINTIFF'S NOTICE OF ESCALATING PROPERTY DAMAGE
IN SUPPORT OF ITS EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER OR STAY OF AGENCY ACTION**

It happened again. Yesterday, federal Defendants and their agents unlawfully exercised dominion over another sovereign's personal property by seizing Texas's concertina wire fence with a forklift and smashing it into the ground. They did so *after* Plaintiff sought a temporary restraining order from this Court to protect against just this sort of escalation. This Court can and should immediately grant Plaintiff's Emergency Motion for a Temporary Restraining Order or Stay of Agency Action by entering an order immediately and temporarily restraining Defendants from seizing, damaging, destroying, or otherwise interfering with Texas's concertina wire fencing until the Court can hold a hearing on the pending motions for a temporary restraining order or preliminary injunction.

Texas brought this suit on October 24, 2023, after federal Defendants and their agents accelerated their policy, pattern, or practice of destroying state property by cutting gaps into Texas's concertina wire fence to allow an unprecedented surge of illegal migration in Eagle Pass, Texas. ECF 1. That same day, Texas sought a preliminary injunction pending this Court's adjudication of its conversion, trespass, and APA claims. ECF 3-1. In response to this suit, an official spokesperson for DHS expressed the department's view that Defendants have the authority to damage, destroy, and exercise dominion over Texas's property any time aliens "have crossed onto U.S. soil without authorization into custody for processing."[1] Just two days later, Defendants escalated matters by again destroying the State's wire fence, but this time in a novel way: Federal agents used hydraulic-powered pallet forks to rip Texas's fence—concertina wire,

---

[1] Uriel J. Garcia, *Texas Sues to Stop Border Patrol Agents from Cutting State's Razor Wire at the Border*, Tex. Trib. (Oct. 24, 2023), https://www.texastribune.org/2023/10/24/texas-attorney-general-paxton-lawsuit-border-concertina-wire/.

fencing posts, clamps, and all—out of the ground, holding it suspended in the air for twenty minutes in order to wave more than 300 migrants illegally into Texas. ECF 5-1 at 4–6, 8–11.

      Brazen destruction of another sovereign's property is unacceptable all by itself. But it is positively head-spinning when a barrier fence designed to secure the southern border is destroyed by a federal agency named "U.S. Customs and *Border Protection*." On the morning of October 27, 2023, Plaintiff's counsel notified Defendants' counsel that Texas intended to move for a temporary restraining order in response to Defendants' forklift provocation. ECF 5 at 10. In response, the federal Defendants urged Texas to forbear from filing that motion. Recognizing that Texas could not be protected from further invasion of its property interests absent immediate relief from this Court, Plaintiff's counsel declined that request and docketed its motion for a temporary restraining order at 12:09 PM. In that motion, Texas explained how this Court has granted such orders to ensure that "[t]he proper course of action to [remove property] is through legal proceedings, not self-help action." ECF 5 at 7.

      Just *twenty minutes* later, Defendants and their agents nonetheless chose "self-help action" once again. Never at a loss for creative ways to destroy property that does not belong to them, Defendants used their telehandler forklift to smash Texas's concertina wire fence into the ground. For roughly 30 minutes, the forklift operator—at CBP's direction—repeatedly lifted hydraulic-powered pallet forks up and down in order to pulverize Texas's wire fence until it was "completely flattened." Diaz Decl. ¶¶6, 9–11, 13.

3



One TMD soldier who witnessed this episode attests that he saw no migrants in distress and that no federal or state agent expressed a need for medical services. *Id.* ¶¶8, 12. Instead, CBP agents simply waved more than 40 migrants over the leveled fence and into Texas, *id.* ¶¶9, 14, in violation of federal law, *see, e.g.*, 8 U.S.C. § 1325.

      As Texas predicted in its TRO motion, "notice of th[is] action" has only "hasten[ed]" Defendants' threatened interference with state property. ECF 5 at 4. This Court pointed to just that risk as a basis for awarding an *ex parte* temporary restraining order against conversion of private property in *Pomeroy, Inc. v. Border Opportunity Saver Systems, Inc.*, No. DR-10-010, 2010 WL 11652127, at *2, 4 (W.D. Tex. Feb. 23, 2010) (Moses, J.). It should do the same thing here—especially considering Plaintiff repeatedly notified Defendants of this suit from its commencement.

4

*See* Fed. R. Civ. P. 65(b)(1)(B). On October 24, 2023, Plaintiff's counsel notified defense counsel of this suit and asked whether they would oppose a preliminary injunction. ECF 3-1 at 47. On October 27, 2023, Plaintiff's counsel notified defense counsel of Texas's intent to seek a temporary restraining order. ECF 5 at 10. Rather than meeting Texas's motions with legal arguments fit for peaceable resolution by this Court, Defendants have repeatedly opted to respond with a forklift that has further damaged Texas's property. It is entirely appropriate, therefore, to enter a temporary restraining order without awaiting a response from Defendants.

This Court should immediately restrain Defendants and their agents from damaging, destroying, or otherwise interfering with Texas's concertina wire fence until this Court can hold a hearing on the motion for a temporary restraining order that Texas filed yesterday, ECF 5, or a hearing on the motion for a preliminary injunction that it filed on Tuesday, ECF 3-1. Under our frame of government, guided by the rule of law, "courts provide the mechanism for the peaceful resolution of disputes that might otherwise give rise to attempts at self-help." *Talamini v. Allstate Ins. Co.*, 470 U.S. 1067, 1070–71 (1985) (Stevens, J., concurring); *see also United States v. Blake*, 89 F. Supp. 2d 328, 351 (E.D.N.Y. 2000) (Weinstein, J.). A lack of relief here can only invite further escalation by federal Defendants.

Dated: October 28, 2023.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**RALPH MOLINA**
Deputy Attorney General for Legal Strategy


**ROBERT HENNEKE**
Texas Bar No. 24026058
Texas Public Policy Foundation
901 Congress Ave.
Austin, Texas 78701
(512) 472-2700
rhenneke@texaspolicy.com

Respectfully submitted.

*/s/ Ryan D. Walters*
**RYAN D. WALTERS**
Chief, Special Litigation Division
Texas Bar No. 24105085

**SUSANNA DOKUPIL**
Special Counsel
Texas Bar No. 24034419

**MUNERA AL-FUHAID**
Special Counsel
Texas Bar No. 24094501

**AMY S. HILTON**
Special Counsel
Texas Bar No. 24097834

**HEATHER L. DYER**
Special Counsel
Texas Bar No. 24123044

Office of the Attorney General
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1706
Ryan.Walters@oag.texas.gov
Munera.Al-Fuhaid@oag.texas.gov
Susanna.Dokupil@oag.texas.gov
Amy.Hilton@oag.texas.gov
Heather.Dyer@oag.texas.gov

**COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

      I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on October 28, 2023, which automatically serves all counsel of record who are registered to receive notices in this case. I also served a copy of this document via email to counsel for Defendants, Jean Lin and Christopher Eiswerth, at Jean.Lin@usdoj.gov and Christopher.A.Eiswerth@usdoj.gov.

                                        */s/Ryan D. Walters*
                                        RYAN D. WALTERS