**FILED**

October 30, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
J.A. Ward

DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION**

| | | |
|---|---|---|
| **THE STATE OF TEXAS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. DR-23-CV-00055-AM** |
| **U.S. DEPARTMENT OF HOMELAND** | § | |
| **SECURITY, ALEJANDRO** | § | |
| **MAYORKAS, in his official capacity as** | § | |
| **Secretary of the U.S. Department of** | § | |
| **Homeland Security, U.S. CUSTOMS &** | § | |
| **BORDER PROTECTION, U.S.** | § | |
| **BORDER PATROL, TROY A.** | § | |
| **MILLER, in his official capacity as** | § | |
| **Acting Commissioner for U.S.** | § | |
| **Customers & Border Protection, JASON** | § | |
| **OWENS, in his official capacity as Chief** | § | |
| **of the U.S. Border Patrol, and JUAN** | § | |
| **BERNAL, in his official capacity as** | § | |
| **Acting Chief Patrol Agent, Del Rio** | § | |
| **Sector U.S. Border Patrol** | § | |
| **Defendants.** | § | |

**ORDER**

Pending before the Court is the State of Texas's ("the Plaintiff") Emergency Motion for a

Temporary Restraining Order or Stay of Agency Action ("the Motion") against the United States

Department of Homeland Security ("DHS"); Alejandro Mayorkas, in his official capacity as

Secretary of DHS ("Mayorkas"); United States Customs and Border Protection ("CBP"); United

States Border Patrol ("BP"); Troy A. Miller, in his official capacity as Acting Commissioner for

CBP ("Miller"); Jason Owens, in his official capacity as Chief of BP ("Owens"); and Juan Bernal,

in his official capacity as Acting Chief Patrol Agent of the Del Rio Sector of BP ("Bernal")

(collectively, "the Defendants").  (ECF No. 5.)  As explained below, the Court **GRANTS** the

Motion for a temporary restraining order until the parties have an opportunity to present evidence at a preliminary injunction hearing before the Court.

## II. BACKGROUND

On October 24, 2023, the Plaintiff commenced this civil action against the Defendants when it filed a Complaint. (ECF No. 1.) According to the Plaintiff, this lawsuit was filed because federal officials are allegedly destroying the Plaintiff's property by cutting the Plaintiff's concertina wire located near the United States-Mexico border. (ECF No. 5 at 2; ECF No 5-1.) The Plaintiff believes that this property destruction is intended to allow migrants to enter the country. (ECF No. 5 at 2.)

The Plaintiff contends that since September 20, 2023, this property destruction has accelerated. (ECF No. 5 at 2.) Pictures, video, and declarations from various officials associated with the Plaintiff detail specific instances when the federal government allegedly damaged the Plaintiff's property and consequently allowed migrants to enter. (*See, e.g.*, ECF No. 5-1.) The Plaintiff raises numerous claims against the Defendants, including common law conversion, common law trespass to chattels, and Administrative Procedure Act violations. (ECF No. 1 at 23-28.) The Plaintiff also seeks a preliminary and permanent injunction enjoining the Defendants from interfering with the Plaintiff's property; a stay of agency action; a declaration that Defendant's actions are unlawful; and costs. (*Id.* at 28-29.)

In the Complaint and some documents filed with the Court, the Plaintiff establishes that the wire barrier is on private property with the permission of the owners and/or municipal authority. (ECF No. 1 at ¶¶ 5, 11, 59; ECF No. 3-2 at 9.) Documents executed between the Plaintiff and the landowners provide the Plaintiff with a basis for its presence on the border properties. (ECF No. 3-2 at 9.)

On October 24, 2023, the Plaintiff filed an unopposed motion for leave to exceed the page limits for its motion for a preliminary injunction, along with the preliminary injunction motion. (ECF No. 3.)  On October 27, 2023, the Plaintiff filed the instant Motion.  (ECF No. 5.)  On October 28, 2023, the Plaintiff filed the declaration of another individual associated with the Plaintiff concerning the Defendants allegedly damaging more concertina wires.  (ECF No. 8-1.)

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 65(b) states that a court may issue a temporary restraining order without notice to the adverse party only if the "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b).

Federal Rule of Civil Procedure 65 continues:

> Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record.  The order expires at the time after entry – not to exceed 14 days – that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension.  The reasons for an extension must be entered in the record.  Fed. R. Civ. P. 65(b)(2) (cleaned up); *see also Pomeroy, Inc. v. Norder Opportunity Saver Sys., Inc.*, 2010 WL 11652127, at *4 (W.D. Tex. Feb. 23, 2010).

If the Court issues a temporary restraining order, the nonmovants must receive seven days' notice before the preliminary injunction hearing is held.  Fed. R. Civ. P. 6(c).

To succeed on a motion for a temporary restraining order, the movant must establish four elements: (1) "a substantial likelihood that the movant will prevail on the merits"; (2) "a substantial

threat that irreparable harm will result if the injunction is not granted"; (3) "the threatened injury outweighs the threatened harm to the defendant"; and (4) the injunction "will not disserve the public interest." *Clark v. Pichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citation omitted).  Elements three and four merge "when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435-36 (2009).  The decision whether to grant a temporary restraining order "is within the sound discretion of the district court." *Rockwell*, 2019 WL 2745754, at *2 (citing *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)).  Emergency injunctive relief is an extraordinary remedy that should not be granted when the evidence supporting it fails to support such a finding.  *See Clark*, 812 F.2d at 993 (citations omitted).

## IV. ANALYSIS

The Plaintiff requests "an order temporarily restraining Defendants from damaging, destroying, or otherwise interfering with Texas's concertina wire fence while" the preliminary injunction motion remains pending.  (ECF No. 5 at 8.)  The Court shall grant the temporary relief requested, with one important exception for any medical emergency that mostly likely results in serious bodily injury or death to a person, absent any boats or other life-saving apparatus available to avoid such medical emergencies prior to reaching the concertina wire barrier.

### A. Likelihood of Success on the Merits

The Plaintiff argues that it is likely to succeed on its common law trespass to chattels claim because "[1] the concertina wire is state property; [2] Defendants have exercised dominion over that property absent any kind of exigency; and [3] they have continued to do so even after being put on notice of [the Plaintiff's] interest in the property."  (ECF No. 5 at 5.)

Failure to prove a claim "with certainty . . . does not foreclose" a temporary restraining order.  *Texas v. Seatrain Int'l, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975).  "To assess the likelihood

4

of success on the merits, we look to standards provided by the substantive law." *Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011) (quotation marks and citation omitted).  Under Texas common law, a trespass to chattels is "an injury to, or interference with, possession, unlawfully, with or without the exercise of physical force." *Mountain States Tel. & Tel. Co. v. Vowell Constr. Co.*, 341 S.W.2d 148, 149-50 (Tex. 1960) (citation and quotation marks omitted) (affirming a judgment finding a trespass to chattels where a construction company severed another company's communications cable); *see also Omnibus Int'l, Inc. v. AT & T, Inc.*, 111 S.W.3d 818, 826 (Tex. App. - Dallas 2003) (stating that trespass to chattels applies to use or possession).  "For liability to attach, causing *actual damage* to the property or *depriving the owner of its use for a substantial period* must accompany the wrongful interference." *Omnibus Int'l, Inc.*, 111 S.W.3d at 826 (citing *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex. 1981)).  A "great public calamity" can justify property destruction.  *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980).

Here, the Plaintiff is likely to succeed on its trespass to chattels claim.  First, the Plaintiff established that it owns the concertina wires.  *Mountain States Tel. & Tel. Co.*, 341 S.W.2d at 149-50.  Brian Cooney, a Texas Military Department employee, averred that he has observed Texas Military Department officials "construct, maintain, and repair Texas's concertina wire fence" in the Eagle Pass, Texas area.  (ECF No. 5-1, ¶¶ 1, 3; *see also* ECF No. 3-2 at 15, 23) (Michael Banks, a special adviser on border matters to the Texas governor, averred that he saw federal officials on September 20, 2023 cut "Texas's wire.")).[1]

---

[1] Although Cooney's declaration was one of two sworn declarations attached to the Motion (ECF No. 5-1; ECF No. 8-1), the Plaintiff incorporates the declarations of others by referring to the Plaintiff's motion for a preliminary injunction.  (*See, e.g.*, ECF No. 5 at 5-6.)  Moreover, although Manuel Perez, a Texas Military Department official, submitted a declaration that supports that the Plaintiff owns the wires (ECF No. 3-2 at 4-5), that declaration was unsworn and otherwise failed to include a penalty of perjury statement.  28 U.S.C. § 1746.  Thus, the Court will not rely on that document.

Second, the Plaintiff established that the Defendants "*actual[ly] damage[d]*" the concertina wires. *Omnibus Int'l, Inc.*, 111 S.W.3d at 826. According to Cooney, a Border Patrol agent operating a forklift on October 26, 2023, near Eagle Pass, Texas "inserted pallet forks into the concertina wire barrier, lifted the barrier high enough to pull the fencing stakes that kept the fence in place out of the ground, and held it suspended in the air for approximately 20 minutes," which created a large enough gap for migrants to pass through. (ECF No. 5-1, ¶ 7.) According to Cooney, "[a]fter the last of the migrants passed through the concertina wire that had been raised by . . . the forklift, the BP agent operating it lowered the wire." (*Id.* ¶ 12.) But, Cooney avers, the stakes attached to the concertina wire and that helped keep the wire situated "were not put back into the ground" and consequently, Texas Military Department engineers must repair the concertina wire. (*Id.*; *see also* ECF No. 3-1 at 16-18 (video posted on the website X, formerly known as Twitter, purports to show uniformed individuals in Eagle Pass, Texas cutting concertina wire near a river, and then pulling that wire to form an accessible opening for migrants in that river).)[2] Photos attached to Cooney's declaration appear to confirm his observations. (ECF No. 5-1, ¶ 11; *id.* at 8-9, 11.) Separately, Roberto Ortiz Diaz, who is a Texas Military Department employee, establishes that the Defendants damaged wires on October 27, 2023. (ECF No. 8-1, ¶¶ 1, 6, 10-13.) The Defendants may continue to damage wires, which is especially likely because they damaged more property a mere day after this Motion was filed. (ECF No. 5-1, ¶ 15; ECF No. 8-1; ECF No. 5; *see also* ECF No. 3-2 at 26.)

Third and finally, the Plaintiff established that the Defendants lacked permission to interfere with the wires. According to Cooney, "[n]one of the federal personnel at the scene asked

---

[2] Like the sworn declarations in the Plaintiff's motion for a preliminary injunction, the Plaintiff incorporated by reference this video in its Motion (ECF No. 5 at 5 (citing ECF No. 3-1 at 21-28)), which the Court viewed on the Internet.

for permission from me or, to my knowledge, from other [Operation Lone Star] personnel to move the concertina wire barrier."  (ECF No. 5-1, ¶ 9.)  Cooney also added that as far as he knew, the Texas Military Department did not give permission to BP to move the wire.  (*Id.*; *see also* ECF No. 8-1, ¶ 14.)  Further, no "great public calamity" is apparent on this record to justify property destruction.  *Steele*, 603 S.W.2d at 791.  Cooney further avers that, even though BP had airboats in the water, no migrant was "in distress while they were in the river"; no migrant "appeared to need medical attention"; and no one at the scene called a medical team to help the migrants.  (*Id.* ¶¶ 10-11.)  Diaz also reported a similar incident.  (ECF No. 8-1, ¶¶ 8, 14.)  Therefore, the Plaintiff established that it is likely to succeed on its trespass to chattels claim.  The Court need not analyze the other claims.

**B.  <u>Irreparable Harm</u>**

Harm is irreparable only "if it cannot be undone through monetary remedies."  *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984).  However, the Plaintiff may still establish irreparable harm when its costs are unrecoverable due to the government's sovereign immunity.  *See Wages & White Lion Invs., L.L.C. v. U.S. Food & Drug Admin.*, 16 F.4th 1130, 1142 (5th Cir. 2021); *see also Portée v. Morath*, No. 1:23-CV-551-RP, 2023 WL 4688528, at *5 (W.D. Tex. July 21, 2023) (publication pending) ("[C]laims for money damages against state entities and officials are generally barred by sovereign immunity, which makes Portée's harm irreparable for purposes of seeking preliminary injunctive relief.").

The Plaintiff preliminarily establishes that it would face irreparable harm without a temporary restraining order.  The Plaintiff alleges that by "damaging, destroying, and exercising dominion over state property," the Defendants are causing the Plaintiff to incur "extensive costs." (ECF No. 5 at 6.)  The Plaintiff also claims that the Defendants' actions show that they intend to

prevent the Plaintiff from "maintaining operational control of its own property." (*Id.*) Furthermore, the Plaintiff avers that destroying the concertina wire "irreparably harms Texas because it facilitates increased illegal entry into the State." (*Id.* at 7.) Consequently, the Plaintiff argues that it will continue to incur considerable additional expenses to expand social services, medical care, education, and other government programs, to accommodate the influx of illegal aliens. (*Id.* at 6-7.) To support this assertion, the Plaintiff provides sworn declarations from various Texas state officials, who describe the significant annual cost of providing emergency medical services, social services, and public education to illegal aliens. (*See generally* ECF No. 3-2.)

The Court is mindful, however, that the Defendants enacted an extensive scheme, which includes immigration enforcement and the interdiction of migrants. *Arizona v. United States*, 567 U.S. 387, 394, 401-02 (2012). The question then becomes how much "harm" should a state bear if the Defendants are unable to meet their obligations of securing the border and controlling the flow of migrants into the country. The only "harm" before this Court at the moment is the cost of the destruction of the Plaintiff's property, which is the wire barrier.

The injuries alleged by the Plaintiff are irreparable because they undermine the Plaintiff's control over its property and impose costs, which sovereign immunity precludes the Plaintiff from ever recovering. *Wages & White Lion*, 16 F.4th at 1140-41. A temporary restraining order can prevent such injuries by maintaining the status quo while the parties prepare thorough arguments on the merits of this case. Moreover, "the risk of irreparable harm to the Plaintiff is sufficient to proceed with the temporary restraining order without first giving notice to the Defendants." *Pomeroy, Inc.*, 2010 WL 11652127, at *4. Therefore, the Plaintiff established irreparable harm.

C. **Public Interest**

The Plaintiff argues that the balance of interests favors the Plaintiff for two reasons. First, the Plaintiff asserts that its use of concertina wire deters illegal entries and activities, including human trafficking, drug smuggling, and terrorist infiltration.  (ECF No. 5 at 7-8.) Second, the Plaintiff argues that the Defendants' actions are unlawful, and that even if a lawful basis exists, the Defendants must seek redress "through legal proceedings, not self-help actions." (*Id.*)

Deterring unlawful activity, including illegal entry, is in the public interest. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975) ("[T]he public interest demands effective measures to prevent the illegal entry of aliens at the Mexican border.").  Further, "[t]here is generally no public interest in the perpetuation of unlawful agency action.'" *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (quoting *Texas v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021)).  To the extent an agency's acts facilitate rather than prevent unlawful conduct, as the Plaintiff argues, such acts implicate the "substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022) (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)) (quotations omitted).  The Plaintiff established that the balance of interests favors granting an injunction, but just barely.

The Court recognizes a countervailing public interest, however, in allowing BP agents to address medical emergencies. *See Croy v. United States,* No. DR-22-CV-00005-AM-VRG, 2023 WL 6393888, at *14 (W.D. Tex. Oct. 2, 2023) (discussing U.S. Customs and Border Protection policy requiring "Border Patrol Agents who encounter individuals who are injured . . . to take immediate action to obtain medical attention for the injured party"); *Carcamo-Lopez v. Does 1*

9

*through 20*, 865 F. Supp. 2d 736, 754 (W.D. Tex. 2011).  This Order therefore includes a narrow exception to permit the Defendants to move or cut the concertina wire to aid individuals in medical distress, as noted above.

The Court is also very aware that the Plaintiff claims to have permission to place the wire barrier on the property or properties where the concertina wire was located before the actions of the Defendants and its agents.  The Court is also very aware that the Defendants are charged with protecting the border and may take measures necessary to do so.  The matter needed to be further litigated at a hearing is at the intersection of: the private property rights of the persons consenting to the placement of the concertina wire on their land, the Plaintiff's right to assist private property owners and avoid costs to the Plaintiff; and the Defendants' responsibilities over national security and border security, and its powers to effectuate its duties, up to and including the destruction of private or state property.

## V. CONCLUSION

Accordingly, it is **ORDERED** that the Plaintiff's Emergency Motion for a Temporary Restraining Order or Stay of Agency Action (ECF No. 5) is **GRANTED** on October 30, 2023 at 9:30 a.m.

The temporary restraining order shall last until it expires on November 13, 2023 at 9:30 a.m., unless a further order of this Court extends the time.  For purposes of this Order, the word "property" refers to concertina wire that the Plaintiff installed at the United States- Mexico border in Eagle Pass, Texas prior to this order.

Until November 13, 2023 at 9:30 a.m., the Defendants shall be enjoined from: (1) removing the property from its present location for any reason other than to provide or obtain emergency medical aid, as noted above; (2) concealing the property in any way; (3) offering the property for sale, rent, or use to any person, business, or entity; (4) selling or otherwise transferring the property in whole or in part; (5) encumbering the property in any way; (6) scrapping the property; (7) disposing of the property in any way; (8) disassembling, degrading, tampering with, or transforming the property in any way for any reason other than to provide or obtain emergency medical as noted in this order; and (9) failing to take all steps necessary to protect the property against damage or loss of any kind.

A preliminary injunction hearing shall be scheduled for November 7, 2023, at 2 p.m.

SIGNED and ENTERED on this 30th day of October 2023.

_____
ALIA MOSES
Chief United States District Judge