**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

| | |
|---|---|
| **STATE OF TEXAS**, <br><br> *Plaintiff*, <br><br> **v.** <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*, <br><br> *Defendants*. | Case No. 2:23-cv-00055-AM <br><br> Hon. Alia Moses |

**DEFENDANTS' MOTION TO MODIFY**
**THE COURT'S NOVEMBER 9, 2023 ORDER**

Defendants respectfully move the Court to modify its November 9, 2023 Order (ECF No. 33), which directs the parties to produce two categories of information in the context of the pending preliminary injunction motion. Despite diligent efforts, and for the reasons explained below and in the attached declaration of Marc Bennett Courey, Associate Chief Counsel (Office of Chief Counsel), Defendants will not be able to fully comply with the Court's order for production given the breadth of the order and limited amount of time remaining before the next hearing on the motion. Defendants accordingly request relief from that order of production, while they endeavor in good faith to produce responsive documents.

1.      On October 30, 2023, the Court entered an *ex parte* temporary restraining order ("TRO") enjoining Defendants from, among other things, "disassembling, degrading, tampering with, or transforming [Texas's concertina wire in Eagle Pass, Texas] in any way for any reason other than to provide or obtain emergency [assistance]."

TRO Order, ECF No. 9 at 11. In that order, the Court concluded that Texas was likely to succeed on the merits of its state-law tort claim for trespass to chattels. *Id.* The Court set Texas's Motion for Preliminary Injunction (ECF No. 3-1) for a hearing on November 7, 2023.

2.      Defendants filed their Opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 23), and Texas filed its Reply (ECF No. 27).

3.      The Court held a hearing on Texas's Motion for a Preliminary Injunction (ECF No. 3-1) on Tuesday, November 7. *See* ECF No. 32.

4.      Two days later, on Thursday, November 9, the Court extended its initial TRO by two additional weeks "to allow the Court more time to fully consider the parties' arguments and evidence." ECF No. 33 at 1. In addition, the Court ordered that (1) a second preliminary-injunction hearing be held; (2) that at the second hearing the parties "be joined by individuals with authority to answer and give final consent on any matter"; and (3) that the parties submit supplemental briefs concerning Texas's Administrative Procedure Act (APA) claims, as well as legal definitions of certain words. *Id.* at 1-2.

5.      The Court further ordered the parties to provide to the Court by the day of the second PI hearing:

> (a) any and all documents, including but not limited to reports and emails, among United States Border Patrol, especially the Del Rio Sector agents, regarding or referencing the Plaintiff's concertina wire barriers or other barriers located in Maverick County, Texas, as well as any and all documents which regard or reference impediments to said agents' performance as a result of the barriers; and

> (b) communications, including but not limited to emails, from and including March 6, 2021, through today regarding or referencing the

Plaintiff's and the Defendants' cooperation on implementing, facilitating, managing, maintaining, damaging, destroying, or interfering with the Plaintiff's barriers, specifically the concertina wire barriers, along the Texas-Mexico border.

6.     Producing the first category of documents in the Court's order would require Defendants to search the files of all Border Patrol agents, while particularly emphasizing those in the Del Rio Sector, for references to "Plaintiffs' concertina wire barriers or other barriers located in Maverick County, Texas," presumably including any fencing, buoys or other barriers such as conex boxes installed by Plaintiff, some of which are the subject of other pending litigation. Indeed, it is not clear, but the Court's order could be read to encompass Defendants' own infrastructure, as well as private gates and fences. Identifying the potential custodians of records alone is a significant undertaking. The Court's order also does not contain a temporal limitation for this category of information.

7.     The second category of documents in the Court's order pertains to the parties' cooperation over the course of approximately two and a half years. This information would likely reside in the files of thousands of Border Patrol agents stationed along the U.S.-Mexico border in Texas during that timeframe, as well as others within the Department of Homeland Security (DHS). (As Texas indicated during the PI hearing, it has placed over 100 miles of concertina wire along the border.) Again, to identify potential custodians of records within not just the Border Patrol, but also DHS as a whole, is a significant undertaking by itself.

8.     To identify, collect, upload, search, review, and produce all documents responsive to both ordered productions would take significantly longer than the time frame set by the court. As one example of the complications and time associated with these searches, the terms "cooperate" or "cooperation" are unlikely to appear in most, even relevant documents and therefore will require careful review for responsiveness.

9.     In an effort to comply with both of the document requests, Defendants conducted a preliminary search of the files of seven custodians likely to have relevant documents using 10 relevant search terms (for example, "concertina," "c-wire," and "impede") and going back to only March 2021. Courey Decl. ¶ 8, attached hereto as Exhibit A. That targeted search yielded over 310,000 emails and documents. *Id.* at ¶ 10. A broader search would undoubtedly yield dramatically more. Thus, despite their diligent efforts, it is impossible for Defendants to produce "any and all documents, including but not limited to reports and emails," responsive to the first document request in a matter of days. Order at 2. As the Courey declaration explains, to produce the information responsive to the Court's order requires identification, collection and uploading of information—based on preliminary search results—into the proper tool to review for responsiveness. Courey Decl. ¶¶ 9, 10, 13–14. Responsive information is then logged and redacted for applicable privileges and other appropriate withholdings, and then finally produced. *Id.*

10.     Given the preliminary posture of the litigation, the robust submissions and testimony to date, the burden of the ordered production, and the limited time frame available to perform necessary searches and review, Defendants respectfully request that

they be permitted to produce only responsive documents from the search described in paragraphs 11, 12, and 15 of the Courey Declaration that DHS is able to identify, gather, review, process and produce by the second preliminary injunction hearing.[1]

11.     Defendants recognize that the Court's order requires production of documents during the Court's consideration of the pending preliminary injunction and before the expiration of the temporary restraining order. Defendants respectfully seek clarification whether they will continue to be obligated to produce any remaining responsive materials from the search described in paragraphs 11, 12 and 15 of the Courey Declaration after the second preliminary injunction hearing. Should the Court order continued production, Defendants will work diligently to comply by reviewing and producing documents from that search on a rolling basis.

12.     Defendants also respectfully submit that while they will work diligently to comply with the Court's ruling on this modification motion, they reserve all objections as to the existing order for document production, including that the plaintiff bears the burden of establishing entitlement to the extraordinary relief of a preliminary injunction, *CAE Integrated, LLC v. Moov Techs., Inc.*, 44 F.4th 257, 261 (5th Cir. 2022); that the document requests are overly broad and unduly burdensome as described above; that, to extent there is a reviewable final agency action, this is a record review case under the

---

[1] During the hearing, the Court expressed interest in any reports that Border Patrol agents in Eagle Pass maintain regarding instances where wire is cut. To the extent that these reports are not captured by the search described in paragraphs 11, 12, and 15 of the Courey Declaration, Defendants will make their best efforts to gather, review, and produce available reports to the Court prior to the second hearing.

Administrative Procedure Act where discovery ordinarily is inappropriate, *Medina Cty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) and 5 U.S.C. § 706; and that there are no material issues in dispute that would prevent the Court from determining its jurisdiction to issue the requested injunctive relief, the federal government's sovereignty immunity defense, or other purely legal issues in this case,[2] *see* Defs.' PI Opp'n at 10–23; *see also Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004).

13.     In accordance with Local Rule 7(g), Defendants have conferred with Plaintiff regarding the relief sought in this motion. Counsel for Plaintiff has indicated that Texas opposes this motion "because the scope of the documents to be produced by the hearing in the Court's order is not within our authority to agree to modify."

<u>CONCLUSION</u>

For these reasons, Defendants respectfully request that the Court modify its November 9 Order (ECF No. 33) and limit Defendants' ordered production to responsive documents from the search described in paragraphs 11, 12, and 15 of the Courey Declaration that DHS is able to identify, gather, review, process and produce by the second preliminary injunction hearing. A proposed order is attached.

Dated: November 14, 2023                    Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General

---

[2] Even if the Court credits Texas's assertion about the existence of a Border Patrol "policy," as a legal matter it is still not a reviewable final agency action under the APA. *See* Defs.' PI Opp'n at 21–22.

JAIME ESPARZA
United States Attorney

JEAN LIN
Special Litigation Counsel

/s/ *Christopher A. Eiswerth*
Christopher A. Eiswerth (D.C. Bar 1029490)
Stephen Ehrlich (NY Bar No. 5264171)
Faith E. Lowry (TX Bar No. 24099560)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St., N.W.
Washington, D.C. 20530
Tel: (202) 305-0568 / Fax: (202) 616-8460
christopher.a.eiswerth@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 14, 2023, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/ Christopher A. Eiswerth*
Christopher A. Eiswerth