THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | |
|---|---|
| **STATE OF TEXAS**, <br><br> *Plaintiff*, <br><br> **v.** <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*, <br><br> *Defendants.* | Case No. 2:23-cv-00055-AM <br><br> Hon. Alia Moses |

**DEFENDANTS' NOTICE OF GOOD-FAITH EFFORTS TO COMPLY**

Defendants hereby provide notice of their good-faith efforts to comply with the Court's November 9 Order for the production of documents (ECF No. 33), as modified by the Court's November 15 Order (ECF No. 39), ahead of the November 21, 2023, 12:00 p.m. production deadline. To facilitate the Court's review of the documents, Defendants also describe below the general content of representative responsive documents.

1.      On October 30, 2023, the Court entered an *ex parte* temporary restraining order ("TRO") enjoining Defendants from tampering in any way with the concertina wire Texas placed along a four-mile stretch of the Rio Grande near Eagle Pass, Texas. The only exception is for "any medical emergency that most likely results in serious bodily injury or death to a person, absent any boats or other life-saving apparatus available to avoid such medical emergencies prior to reaching the concertina wire barrier." TRO Order, ECF No. 9.

2.      On November 7, 2023, this Court held a hearing on Texas's motion for preliminary injunction. The Court heard oral arguments as well as testimony from three witnesses.

3.      On November 9, 2023, the Court extended the initial TRO by two additional weeks "to allow the Court more time to fully consider the parties' arguments and evidence." ECF No. 33 at 1. The Court also ordered, among other things, that a second preliminary-injunction hearing be held and that the parties produce the following documents by the day of the second PI hearing:

> (a) any and all documents, including but not limited to reports and emails, among United States Border Patrol, especially the Del Rio Sector agents, regarding or referencing the Plaintiff's concertina wire barriers or other barriers located in Maverick County, Texas, as well as any and all documents which regard or reference impediments to said agents' performance as a result of the barriers; and

> (b) communications, including but not limited to emails, from and including March 6, 2021, through today regarding or referencing the Plaintiff's and the Defendants' cooperation on implementing, facilitating, managing, maintaining, damaging, destroying, or interfering with the Plaintiff's barriers, specifically the concertina wire barriers, along the Texas-Mexico border.

Nov. 9 Order, ECF No. 33.

4.      On November 14, 2023, Defendants moved to modify the Court's order, explaining that it was not possible to comply with the Court's order as written because it would potentially encompass millions of documents, which could not be reviewed and produced on the timeframe called for by the Court. Mot. to Modify ¶ 9, ECF No. 38; Courey Decl. ¶¶ 11, 12, 15, ECF No. 38-1.

5.     Specifically, Defendants explained that in an effort to comply with the Court's November 9 order, Defendants selected seven custodians likely to have responsive documents and effectuated a search of their records. These custodians include the Chief Patrol Agent and Deputy Patrol Agent of the Del Rio Sector, the Patrol Agents in Charge and Deputy Patrol Agents in Charge of the Eagle Pass North and Eagle Pass South Stations, and the Chief of Law Enforcement Operations. Defendants restricted the search to the time period of March 6, 2021 to November 9, 2023, and used ten search terms described in the supporting declaration of the Associate Chief Counsel for the Office of Chief Counsel ("OCC") for the U.S. Customs and Border Protection. Mot. to Modify ¶ 10; Courey Decl. ¶ 8, 11, 12, 15, ECF No. 38-1.[1] The search yielded 310,636 documents (for just these seven custodians based on these ten search terms), which it was estimated would take all of OCC's 321 nationwide employees 13 weeks of full-time work to review, even if it were possible to reassign all 321 employees to work exclusively on this litigation (which it is not). Courey Decl. ¶¶ 9–10. Accordingly, OCC applied certain connectors to narrow the search, which yielded 6,096 documents. *See* Courey Decl. ¶ 12. Defendants believed this narrowed search would allow sufficient time to review potentially

_____

[1] *Cf. Hedgeserv Ltd. v. Sungard Sys. Int'l Inc.*, Case No. 16-CV-05617, 2018 U.S. Dist. LEXIS 250658, *4 (S.D.N.Y. Dec. 28, 2018) ("The parties' familiarity with the business and products at issue, the contents of the documents already produced in discovery, the roles of the various custodians whose documents are being searched, the characteristics of the email system or other database being searched, and the capabilities of the document review systems they are using place them in a much better position than the Court to [craft reasonably tailored discovery searches]").

responsive documents, assert applicable privileges, apply required redactions and withholdings, and produce the documents by the date of the second hearing.

6.      On November 15, the Court granted in part and denied in part the Motion to Modify, and ordered that its November 9 order to produce documents "shall not be modified except to order that all document production cover March 6, 2021 inclusive to November, 9, 2023 inclusive." Nov. 15 Order at 2, ECF No. 39. The Court also ordered that all responsive documents be produced by noon on November 21.

7.      As explained in the attached declarations of Elaine Dismuke, eDiscovery Team Lead with the Office of Information and Technology Enterprise Services, and Kenneth Blanchard, Deputy Directorate Chief of the Strategic Planning and Analysis Directorate, however, it is impossible to comply with the Court's modified order for production of documents. *See generally* Ex. A, Dismuke Decl. (Nov. 20, 2023); Ex. B, Blanchard Decl. (Nov. 20, 2023).[2] A search of just the Chief Patrol Agent and Deputy Patrol Agent for the other four CBP sectors along the U.S.-Mexico border in Texas and the Patrol Agents in Charge and Deputy Patrol Agents in Charge for other 46 component stations along the border in Texas—a subset of the individuals who might be encompassed if the order were interpreted broadly—would mean including more than

---

[2] Defendants also incorporate by reference the Declaration of Marc Bennett Courey, dated November 14, 2023, attached to Defendants' Motion to Modify (ECF No. 38-1).

100 custodians.[3] Even without expanding the search terms and using the same connectors, this type of search is estimated to return terabytes of data. Dismuke Decl. ¶ 17.

8.      Just running the processes necessary to perform the broad searches encompassed by the Court's order would place extreme stress and burdens on CBP's information systems and interfere with other CBP functions. Dismuke Decl. ¶¶ 6–14. Indeed, if the CBP eDiscovery Team were to perform the types of searches necessary to comply with the Court's order as written, it would be unable to service discovery obligations in any of its other 125 open matters, including other civil litigation matters, and any requests from the Office of Professional Responsibility, the CBP FOIA Office, the Department of Homeland-Office of Inspector General, or the SOC (Security Operations Center). *Id*. ¶ 14. Depending on the ultimate scope, it could take between several months and several years to perform the searches necessary to comply with the Court's order and ingest the data, to say nothing of performing the necessary reviews for responsiveness, privilege, and other applicable withholdings and redactions, and ultimately producing the documents. *See* Blanchard Decl. ¶¶ 6–12. Manual searches of physical files and searches of cell phone records would require additional coordination and time. *See id.* ¶ 15.

---

[3]     *See* U.S. Customs and Border Protection, Sectors and Stations, https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors (last accessed Nov. 21, 2023).

9.     Defendants have worked diligently to review the more than 6,000 documents pulled from its search of the seven identified custodians' electronic records, as appropriately narrowed. *See* Courey Decl. ¶¶ 14–15, ECF No. 38-1 (14 OCC attorneys involved in expeditiously reviewing the narrowed universe of documents for responsiveness, privilege, and other applicable withholdings and redactions). Defendants have done so, while attempting to maintain appropriate controls to safeguard privileges and other necessary redactions and withholdings, in the limited time available.[4] *See id.* Having completed this process, Defendants will produce approximately 1,182 documents and 5 videos to the Court.

10.    Defendants produce these documents without waiver of the objections preserved in Defendants' Motion to Modify ¶ 12, as supported by the Courey declaration. ECF No. 38; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(iii); *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) ("a district court must limit otherwise permissible discovery if it determines that 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues'" and "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.") (citations omitted); *Thompson v. Toyota Motor Sales, USA, Inc.*, No. SA-16-CA-00645-DAE, 2017 WL 5244561,

---

[4] Despite their best efforts, given the compressed timeline, it is possible that privileged materials may be inadvertently included in the production. Defendants reserve the right to clawback privileged materials, if any, to the extent they are later identified.

at *2 (W.D. Tex. June 6, 2017) ("A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.") (citing *Samsung Electronics America Inc. v. Yang Kun "Michael" Chung*, 321 F.R.D. 250 (N.D. Tex. 2017)).

11.     Defendants respectfully submit that, while unnecessary to decide Texas's preliminary-injunction motion, the anticipated production could resolve factual questions the Court believes relevant to its decision. Included in the production are documents reflecting that the concertina wire inhibits Border Patrol's ability to patrol the border and inspect, apprehend, and process migrants in this four-mile stretch of the border, and the ways in which Border Patrol has coordinated with Texas about the wire in this area. *See*, *e.g.*, CBPTEX2355-0000001–10 (Presentation by Border Patrol to Texas DPS regarding the concertina wire); CBPTEX2355-0001098 (Border Patrol communicating concerns to Texas personnel in August 2023); CBPTEX2355–0000199 (email dated May 31, 2023, stating that concertina wire "was impeding the Agents['] ability to perform their duties"); CBPTEX2355-0000362 (reflecting coordination between Border Patrol and Texas DPS). And far from showing that Border Patrol cuts Texas's concertina wire as a matter of mere convenience, the documents reflect that Border Patrol has cut the wire as a means of apprehending migrants, often in situations involving medical distress, and often at the invitation of Texas personnel. *See*, *e.g.*, CBPTEX2355-0000123, CBPTEX2355-0000315, CBPTEX2355-0001067, CBPTEX2355-0003168; CBPTEX2355-0001857. The documents further show that Border Patrol routinely informs DPS personnel when it has cut the wire.

*See*, *e.g.*, CBPTEX2355-0001102, CBPTEX2355-0003126, CBPTEX2355-0003128, CBPTEX2355-0003166, CBPTEX2355-00031.

12. Documents in the production also substantiate testimony provided at the first preliminary injunction hearing: that Border Patrol has issued guidance that absent exigent circumstances, agents should alert supervisors (in both Eagle Pass North and Eagle Pass South) so that the supervisors may decide whether to cut the wire (CBPTEX2355-0000072; Tr. 137:23–138:4, 139:17–:19; BeMiller Decl. ¶ 19, ECF No. 23-2); that Border Patrol line agents exercise their discretion and judgment to cut the wire in case of emergencies (*e.g.*, CBPTEX2355-000072; Transcript 140:15–:22; BeMiller Decl. ¶ 19, ECF No. 23-2); that concertina wire increases response time in the event of emergencies (*e.g.*, CBPTEX2355-0000072; Tr. 145:21–:22); that at least one landowner (whose property extends more than half of the 4-mile stretch) is displeased with Texas's maintenance of concertina wire on his property (*e.g.*, CBPTEX2355-0000359–361; Tr. 142:7–:10); and that Texas DPS has interfered with Border Patrol operations by placing dirt around gates used by Border Patrol for ingress and egress (*e.g.*, CBPTEX2355-0000169, CBPTEX2355-0000152–154; Tr. 145:6–:17).

13. As a general matter, the documents reflect that while Border Patrol and DPS have engaged in some coordination about the concertina wire, the relationship has deteriorated over time, driven at least in part by at least one instance in which Texas DPS personnel threatened to criminally charge Border Patrol for cutting the wire and DPS efforts to impede Border Patrol access to certain areas, *see e.g.*, CBPTEX2355–0000189, CBPTEX2355-0000034, CBPTEX2355-0000386, CBPTEX2355-0000443, ultimately leading

to this litigation. Defendants intend to offer a selection of the documents provided to the Court, included those cited here, among the exhibits it will submit at the second preliminary injunction hearing.

14.     Defendants respectfully submit they have made good-faith efforts to comply with the Court's order for production of documents, and that, to the extent the Court believes there are any factual issues relevant to Texas's preliminary-injunction motion, the above information as well as the rest of the documents in the production can resolve them.

Dated: November 21, 2023                  Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney General

                                          JAIME ESPARZA
                                          United States Attorney

                                          JEAN LIN
                                          Special Litigation Counsel

                                          /s/ Faith E. Lowry
                                          Faith E. Lowry (TX Bar No. 24099560)
                                          Christopher A. Eiswerth (D.C. Bar 1029490)
                                          Stephen Ehrlich (NY Bar No. 5264171)
                                          Trial Attorneys
                                          U.S. Department of Justice
                                          Civil Division, Federal Programs Branch
                                          1100 L St., N.W.
                                          Washington, D.C. 20530
                                          Tel: (202) 305-2532 / Fax: (202) 616-8460
                                          faith.e.lowry@usdoj.gov

                                          Robert D. Green (TX Bar No. 24087626)
                                          Assistant United States Attorney
                                          601 N.W. Loop 410, Suite 600
                                          San Antonio, Texas 78216

robert.green3@usdoj.gov
Tel: (210) 384-7362 / Fax: (210) 384-7312

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 21, 2023, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/ Faith E. Lowry*
Faith E. Lowry