UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | |
|---|---|
| THE STATE OF TEXAS,<br><br>    *Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY, *et al.*,<br><br>    *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§      CIVIL ACTION NO. 2:23-CV-00055-AM |

---

**PLAINTIFF'S EMERGENCY MOTION
FOR INJUNCTION PENDING APPEAL**

---

Shortly before midnight on November 29, 2023, when the temporary restraining order protecting Texas's concertina-wire fence was set to expire, this Court entered an order denying a preliminary injunction. ECF 57. The very next morning, Texas noticed an interlocutory appeal from that order to the U.S. Court of Appeals for the Fifth Circuit. *See* 28 U.S.C. § 1292(a)(1). Pursuant to Federal Rule of Appellate Procedure 8(a)(1)(C), Texas now files this emergency motion for an injunction pending appeal.

Texas is entitled to a Rule 8 injunction pending appeal because it can "show (1) a strong likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) that the balance of hardships weighs in their favor if injunctive relief is granted; and (4) that the public interest favors such relief." *Whole Woman's Health v. Jackson*, 13 F.4th 434, 441 (5th Cir. 2021) (per curiam). This Court already found that every preliminary-injunction factor favors Texas. Defendants' pattern of perpetrating unnecessary damage shows that Texas faces real harm during the pendency of its appeal. And Defendants cannot be heard to complain about interim relief pending appeal, having previously asked this Court for it themselves.

**1.** This Court correctly found in its temporary restraining order that Texas is likely to prevail on the merits of its common-law claim for trespass to chattels: Texas owns its concertina-wire fence just like any other proprietor; Defendants have deliberately and repeatedly damaged that fence; and they have claimed authority to do so absent any common-law privilege, like consent or private necessity. ECF 9 at 5–7. At no point in this litigation have Defendants contested *any* of that. *See* ECF 23-1 at 20–23 (making no merits argument at all); *see also* ECF 27-1 at 10. Instead, they openly claim the ongoing power to destroy and tamper with property that belongs to someone else whenever they want and "without restraint." Nov. 7 Tr.207. In its preliminary injunction

2

order, this Court likewise correctly found that: Texas has "direct proprietary interests" in its own property, ECF 57 at 12; Defendants' "continuing or future" interference with that interest can be remedied only by injunctive relief, *id.* at 13 n.7; Texas will suffer irreparable harm absent a preliminary injunction, *id.* at 34; and the public interest continues to favor injunctive relief, *id.*

Despite all that, this Court thought itself obligated to deny a preliminary injunction because Congress's circa-1976 waiver of federal sovereign immunity, codified at 5 U.S.C. § 702, does not specifically reference "common law claims for conversion or trespass to chattels." ECF 57 at 19. Respectfully, that was an error of law. Construing ambiguity in an immunity waiver narrowly does not authorize courts to ignore a waiver's plain and broad text. *See, e.g.*, *United States v. Williams*, 514 U.S. 527, 531–35 (1995) (rejecting government effort to narrow immunity waiver's "broad language"); *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984) (similar); *Sebelius v. Cloer*, 569 U.S. 369, 380–81 (2013) (similar); *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 222 (2008) (construing "any" in immunity waiver to mean "any"). Consider this Court's own citation to *Alabama-Coushatta Tribe v. United States*, 757 F.3d 484 (5th Cir. 2014). *See* ECF 57 at 15–16. The plaintiff in that case pressed a "common law" claim "for breach of fiduciary duty." *Alabama-Coushatta*, 757 F.3d at 489. Tellingly, the Fifth Circuit did not deem § 702's waiver inapplicable just because it did not reference "common law claims for [breach of fiduciary duty]." Instead, the waiver was held not to apply because the plaintiff had identified no agency action at all. *Id.*

To affirm this Court's order would be to put the Fifth Circuit squarely at odds with the D.C. Circuit over the meaning of the Administrative Procedure Act. In *Perry Capital LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017), the D.C. Circuit rejected the very argument Defendants press here, namely, "that § 702 does not waive [their] immunity from suit for state law claims."

*Id.* at 620; *see also Trudeau v. FTC*, 456 F.3d 186 (D.C. Cir. 2006) ("There is nothing in the language of the second sentence of § 702 that restricts its waiver to suits brought under the APA."). Moreover, by suggesting that the Federal Tort Claims Act's provision of "a separate … remedy" (*i.e.*, money damages) impliedly precludes injunctive relief for state-law tort claims, ECF 57 at 19, this Court invites the Fifth Circuit to part ways with both the Seventh Circuit and the Second Circuit, which have held just the opposite. *See Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 775 (7th Cir. 2011); *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 727 (2d Cir. 1983); *see also* ECF 30 at 12 (noting Defendants' position, which this Court adopted, is in tension with *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 222 (2012)).

This outcome-determinative error of law as to § 702's broad waiver of federal sovereign immunity gives Texas a strong likelihood of success in the Fifth Circuit, which is "always chary to create a circuit split." *Alfaro v. Comm'r*, 349 F.3d 225, 229 (5th Cir. 2003); *see also, e.g.*, *Curr-Spec Partners, L.P. v. C.I.R.*, 579 F.3d 391, 398 n.37 (5th Cir. 2009) (same); *Gahagan v. CIS*, 911 F.3d 298, 304 (5th Cir. 2018) (same); *TEA v. DOE*, 992 F.3d 350, 358 (5th Cir. 2021) (same); *Martinelli v. Hearst Newspapers, L.L.C.*, 65 F.4th 231, 245 (5th Cir. 2023) (same); *but see* ECF 57 at 18 n.9 (reasoning that "the D.C. Circuit, as well as the Second and Seventh Circuits, are not binding on this Court"). At the very least, this Court should grant an injunction pending appeal so that the Fifth Circuit has time to decide whether it welcomes such open disagreement with sister circuits.

**2.**   The Court's determination that there was insufficient evidence of a policy that constituted the final agency action necessary to be reviewable under the APA, ECF 57 at 29–33, was also incorrect, for the reasons it articulated in previous briefing. *See* ECF 3-1 at 35; ECF 30 at 16–20; ECF 48 at 21–25. This determination made it unnecessary for the Court to address the

4

merits of Plaintiff's APA claims—arbitrary-and-capricious decisionmaking, failure to follow the required procedures under notice-and-comment rulemaking, and agency action contrary to law or exceeding statutory authority—which are likely to succeed on the merits. *See* ECF 3-1 at 32–39; ECF 30 at 16–23; ECF 48 at 26–28.

**3.** The Court also rejected that Plaintiff had demonstrated a likelihood of success on its *ultra vires* claim. ECF 57 at 33–34. But this was in tension with the Court's extensive findings elsewhere that Defendants had no justification for cutting Texas's wire fence. ECF 57 at 21–29. Plaintiff's previous briefing showing a likelihood of success on the merits of its *ultra vires* claim— which is similar to its contrary-to-law APA claim but does not require final agency action—was not addressed. ECF 3-1 at 39–42; ECF 30 at 21–23; ECF 48 at 11–21, 26.

**4.** There can be no doubt that Texas will suffer irreparable harm absent an injunction pending appeal. This Court already found that Texas would face irreparable harm absent a temporary restraining order, which has protected its concertina-wire fence from Defendants' lawless and destructive behavior since October 30, 2023. ECF 9 at 7–8. This Court reiterated just yesterday that Texas continues to face such harm absent a preliminary injunction. ECF 57 at 34. And it recognized that an injunction is "the only appropriate remedy" for "the prospect of continuing or future harm." *Id.* at 13 n.7. That prospect of future harm is real here—as evidenced by Defendants' "culpable and duplicitous conduct" during this litigation. *Id.* at 6.

After Texas moved for a preliminary injunction, Defendants escalated matters by "trading bolt cutters for an industrial-strength telehandler forklift to dismantle Texas's border fence." ECF 5 at 2. Then they did the same thing just 20 minutes after Texas moved for a temporary restraining order. ECF 8 at 3–4. They even had the audacity to suggest that ripping another sovereign's fence

out of the ground and smashing it into a pulverized mass were merely courteous efforts "to minimize damage." ECF 23-1 at 16–17. Once this Court entered its temporary restraining order, Defendants steadfastly refused to agree to extend it, *see* Nov. 21 Tr., even as they complained that they lacked sufficient time to comply with the Court's document-production order, ECF 38 at 4; ECF 43 at 4. Given that the temporary restraining order carved out an exception for medical exigency, the inescapable conclusion is that Defendants are hell-bent on breaking things whenever they deem it convenient to do so. Nov. 7 Tr. 51, 56–57, 209. When Texas soldiers have made efforts to simply document this destruction, CBP agents have told them to "back the f--k off," ECF 3-1 at 26 n.55, and claimed they are "not authorized to take any pictures," ECF 5-1 at 6—all in an effort to shield their misconduct from public view.

Defendants have made their intentions clear. Allowing such an ongoing abuse of power certainly harms Texas. But more than that, it effectively invites Defendants to continue their destructive behavior more broadly by declaring open season on the property rights of any person or entity with land or chattels near the southern border.

**5.** Defendants oppose this motion. But they have no basis to do so. After all, they preemptively asked this Court to stay any preliminary injunction pending resolution of their anticipated appeal to the Fifth Circuit. *See* Nov. 7 Tr.232–33; *see also* ECF 57 at 26 n.12 (noting unavailability of Nov. 27 Tr.). That was back when Defendants worried—with good reason—that they were going to lose. Now, armed with an order from this Court denying the preliminary injunction, Defendants should not be heard to object to Texas's plea for the sort of interim relief they previously asked of this Court. *See* 18B Wright & Miller, Fed. Prac. & Proc. § 4477 (describing equitable estoppel and justiciable estoppel as aiming "to prevent a party from 'playing fast and

loose' with the courts" by changing its position). It certainly would be "unseeml[y]" for Defendants to claim that interim relief is inappropriate only now that the shoe is on a different foot than they anticipated. *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011).

**6.** Finally, the public interest favors an injunction pending appeal for the reasons given by this Court twice before. ECF 9 at 7–8; ECF 57 at 34. As this Court correctly found, Defendants are "begetting life-threatening crises for aliens and agents," as well as for the many Texans victimized by human trafficking and deadly fentanyl, with their "utter failure … to deter, prevent, and halt unlawful entry into the United States." ECF 57 at 7, 27–28. And Defendants' destruction of Texas's property was rightly condemned from the bench just a few days ago: "From the Court's point of view, you're cutting the wire to not do your job." *See* ECF 57 at 26 n.12 (noting unavailability of Nov. 27 Tr.). The public interest is hardly served by allowing Defendants to continue their lawless, dangerous, and destructive practices while the Fifth Circuit hears Texas's appeal. *See, e.g.*, *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 195 (5th Cir. 2023) ("It is of highest public importance that federal agencies follow the law.").

\*     \*     \*

The State of Texas appreciates this Court's careful and ongoing attention to the parties' arguments and evidence adduced at the preliminary-injunction stage. *See* ECF 57 at 32 n.15. And it recognizes that, rather than engage on the merits of Texas's common law claims, Defendants repeatedly injected various justiciability questions that this Court was forced to answer on a compressed timetable. *See* ECF 23-1 at 18–23; Nov. 7 Tr.38–46, 55–57; ECF 47 at 8–14. That time crunch was not merely a function of the natural expiration of the temporary restraining order, but also a consequence of Defendants' obstinate refusal to agree to extend that order to allow for more

considered adjudication—even as they complained that this Court had not given them enough time to comply with its production demand. Now, Texas must seek relief on appeal without access to the documents that Defendants produced and on which this Court has relied *in camera*, ECF 57 at 4–6—even after this Court granted Defendants a gracious extension, ECF 46 at 1, and warned them of contempt sanctions for their pre-announced refusal to comply, Nov. 21 Tr. In addition to allowing the Fifth Circuit to decide whether to make this Circuit the only one to read § 702 contrary to its plain text, entering an injunction pending appeal would also allow this Court the time for considered decisionmaking that Defendants refused to help provide.

Accordingly, Texas respectfully requests that this Court grant its emergency motion and enter the proposed order pending appeal. Given the State's ability to prepare this motion less than 24 hours after this Court entered its order denying a preliminary injunction, it would be reasonable to require any response from Defendants by 6 PM on Friday, December 1, 2023. In light of Defendants' demonstrated plans to continue inflicting immediate and irreparable harm on the State by destroying its property anytime an alien manages to cross the international boundary near Eagle Pass, the State intends to seek similar emergency relief from the Fifth Circuit at **9 AM on Monday, December 4, 2023**, absent a decision from this Court. *See* Fed. R. App. Proc. 8(a)(2).

Dated: November 30, 2023.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

*/s/ Ryan D. Walters*
**RYAN D. WALTERS**
Chief, Special Litigation Division
Texas Bar No. 24105085

**BRENT WEBSTER**
First Assistant Attorney General

**DAVID BRYANT**
Special Counsel
Texas Bar No. 03281500

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**MUNERA AL-FUHAID**
Special Counsel
Texas Bar No. 24094501

**RALPH MOLINA**
Deputy Attorney General for Legal Strategy

**HEATHER L. DYER**
Special Counsel
Texas Bar No. 24123044

**ROBERT HENNEKE**
Texas Bar No. 24026058
Texas Public Policy Foundation
901 Congress Ave.
Austin, Texas 78701
(512) 472-2700
rhenneke@texaspolicy.com

Office of the Attorney General
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1706
Ryan.Walters@oag.texas.gov
David.Bryant@oag.texas.gov
Munera.Al-Fuhaid@oag.texas.gov
Heather.Dyer@oag.texas.gov

**COUNSEL FOR PLAINTIFF**

### CERTIFICATE OF CONFERENCE

I certify that on November 30, 2023, I contacted counsel for Defendants via email regarding this motion. Counsel for Defendants Jean Lin stated that they oppose this motion.

*/s/Ryan D. Walters*
RYAN D. WALTERS

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 30, 2023, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/Ryan D. Walters*
RYAN D. WALTERS