THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | |
|---|---|
| **STATE OF TEXAS**, <br><br>                                          *Plaintiff*, <br><br>     **v.** <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*, <br>                                          *Defendants*. | Case No. 2:23-cv-00055-AM <br><br> Hon. Alia Moses |

**DEFENDANTS' OPPOSITION TO TEXAS'S EMERGENCY MOTION FOR
INJUNCTION PENDING APPEAL**

The Court properly denied Texas's motion for a preliminary injunction on the basis that Texas's state law claims are jurisdictionally barred by sovereign immunity and that the State has failed to demonstrate a substantial likelihood of success on the merits of its Administrative Procedure Act ("APA") and *ultra vires* claims. *See* Mem. Op. & Order, ECF No. 57 (Nov. 29, 2023) ("Order"). Texas's emergency motion for an injunction pending appeal essentially seeks the same relief that the Court has just denied and repeats the same arguments that have already been rejected. *See* ECF No. 59 (Nov. 30, 2023) ("Mot."). Texas again fails to carry its heavy burden of persuasion. The Court should deny this motion as well given Texas's failure to establish its entitlement to the "extraordinary and drastic remedy" of an injunction. *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008).

I.      **The Court Properly Held That It Lacks Jurisdiction Over Texas's State Law Tort Claims**

Contrary to Texas's assertions (at 3), the Court did not commit "an error of law" when it held that "sovereign immunity presents a jurisdictional barrier to the Plaintiff's request for injunctive relief under its state law claims." Order at 13. As the party seeking to invoke the jurisdiction of a federal court, Texas bears the burden of showing that Congress waived sovereign immunity for its state law claims. *Id.* at 19. *Gaar v. Quirk*, 86 F.3d 451, 453 (5th Cir. 1996). Unlike other statutes such as the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), which has opened up the federal government to state tort law claims under carefully circumscribed limitations, 5 U.S.C. § 702 does not explicitly waive sovereign immunity for state tort law claims. Any ambiguity in a purported waiver is construed in favor of the United States. Order at 19 (citing, among others, *Lane v. Peña*, 518 U.S. 187, 192 (1996)). Texas has not presented any binding precedent for the proposition that Section 702 authorizes state tort law claims against the federal government. And its suggestion that the Court's decision is an outlier does not withstand scrutiny.

As an initial matter, Texas misreads *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484 (5th Cir. 2014). *See* Mot. at 3 (citing Order at 15-16). The "claim for breach of fiduciary duty" in that case was explicitly based on "*federal* common law" and the *federal* Nonintercourse Act, 25 U.S.C. § 177—not state law. *Ala.-Coushatta Tribe*, 757 F.3d at 489-90 (emphasis added). And in explaining the scope of Section 702's waiver of sovereign immunity for non-statutory causes of action, the Fifth Circuit explicitly limited

2

it to those "against federal agencies arising under 28 U.S.C. § 1331," *i.e.*, those based on "the Constitution, laws, or treaties of the United States." *Ala.-Coushatta Tribe*, 757 F.3d at 488.[1] The same is not true of Texas's tort claims here.

Nor is the Court inviting a circuit split as Texas claims. Mot. at 3-4. The Second and Seventh Circuits have not held that Section 702 waives sovereign immunity for state law tort claims. Rather, *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 723 (2d Cir. 1983), involved a federal statutory claim, and *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 776 (7th Cir. 2011), concerned a federal common law claim for nuisance. One D.C. Circuit decision did say that the "argument that § 702 does not waive its immunity from suit for state law claims is foreclosed by our precedent," *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017), but the cases cited addressed only federal constitutional and statutory claims, *see Trudeau v. FTC*, 456 F.3d 178, 188 (D.C. Cir. 2006), and seemingly federal common law claims regarding security clearances, *see U.S. Info. Agency v. Krc*, 989 F.2d 1211, 1216-17 (D.C. Cir. 1993). And other judges on the D.C. Circuit have rejected the idea that "state law [could] be used as a basis for seeking injunctive or declaratory relief against the United States" under the APA." *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 854 (D.C. Cir. 2010) (en banc) (Kavanaugh, J., joined by

---

[1] Texas cites numerous cases for the unobjectionable principle that, even when construing immunity waivers, the Court cannot "ignore a waiver's plain and broad text." Mot. at 3 (citing, among others, *United States v. Williams*, 514 U.S. 527, 531-35 (1996)). But the cases do not involve Section 702 and do not help resolve any ambiguity here.

Sentelle, Ginsburg, Rogers, J.J., concurring) (citing *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 255 (5th Cir. 2006)).[2]

In any event, even if Section 702 encompassed some state law, it does not encompass state *tort* law. Section 702 does not apply when "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought"; thus, even where a suit "fits within the APA's general waiver" of immunity in § 702, where a separate federal statute "specifically authorizes" a type of action, subject to exceptions, "a plaintiff cannot use the APA to end-run the [federal statute's] limitations." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216 (2012) (addressing the Quiet Title Act). Here, the FTCA provides "the exclusive remedy for compensation for a federal employee's tortious acts committed in the scope of employment," *McGuire v. Turnbo*, 137 F.3d 321, 324 (5th Cir. 1998), and Texas cannot evade the FTCA's limitations by using the APA to bring a state tort action—the same "kind of grievance" regulated by the FTCA, *Match-E-Be-Nash-She-Wish*, 567 U.S. at 217.

## II.   The Court Properly Held That Texas Is Unlikely To Succeed On The Merits Of Its APA And *Ultra Vires* Claims

The Court concluded that Texas has "fall[en] short of demonstrating the existence of a final agency action"—a prerequisite to judicial review under the APA. Order at 32.

---

[2] Even if Section 702 waived sovereign immunity for state law claims, Texas's claims would still fail under the Supremacy Clause. Opp. at 12–15. The Supreme Court has long held that states cannot control the federal government's operations. *See, e.g.*, *United States v. Washington*, 142 S. Ct. 1976, 1984 (2022) (collecting cases); *see also Texas v. Kleinert*, 855 F.3d 305, 314-15 (5th Cir. 2017); *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 758 (9th Cir. 2022). And Texas fails to cite any case suggesting that a State could use its tort law to control federal officials in the performance of their duties.

The State submitted a 29-page complaint, 91 pages of briefing, 92 pages of appendices, 76 exhibits, and live witness testimony, *see, e.g.*, ECF Nos. 1, 3-1, 3-2, 5, 5-1, 8, 8-1, 30, 34, 48, none of which shows that Defendants have the policy that Texas claims to exist or that any policy qualifies as final agency action under *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *see* Opp. to Mot. for Prelim. Inj. At 19-22, ECF No. 23-1; Defs.' Supp. Br. at 11-14, ECF No. 47. Indeed, Defendants' evidence on the lack of the purported policy is uncontroverted. Declaration of Chief of Law Enforcement Operations David BeMiller ¶ 17, ECF No. 23-2; Prelim. Inj. Hr'g Tr. at 186-87, ECF No. 37 (Nov. 7, 2023) (Chief BeMiller testimony); *accord* Hr'g Tr. at 138 (Agent Trevino testimony). Texas's motion merely cites some of the State's prior submissions. *See* Mot. at 4-5. That is insufficient to justify an injunction pending appeal. *See MWK Recruiting, Inc. v. Jowers*, 2019 WL 7759522, at *2 (W.D. Tex. Dec. 11, 2019) ("A party that merely repeats arguments the Court has already considered and rejected fails to meet its burden of showing that the Court should exercise its discretion." (citing *Karaha Bodas Co. v. Perusahaan Minyak Dan Gas Bumi Nebara*, 264 F. Supp. 484, 487 (S.D. Tex. 2002))), *vacated on other grounds*, 833 F. App'x 560 (5th Cir. 2020). Even then, Texas's APA claims fail for other threshold reasons, *see* Opp. at 16-19; Defs.' Supp. Br. at 9-11, and on the merits. *See* Opp. at 23-29; Defs.' Supp. Br. at 14-20.

Likewise, the Court's rejection of Texas's *ultra vires* claim is neither "in tension" with other portions of the Order, Mot. at 5, nor flawed. As the Court noted, Texas must show that Defendants acted "without any authority whatsoever" to succeed on an *ultra vires* claim. Order at 33-34 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)). But Texas cannot make such a showing when its own witness acknowledged

that Defendants have authority to remove obstacles to apprehending migrants at least in certain circumstances, Hr'g Tr. at 110-11, ECF No. 37, and to cut the wire in medical emergencies, *id.* at 109; *see also id.* at 28 (Texas's counsel noting "no objection to someone destroying Texas' property if it is necessary to save someone's life or [prevent] serious bodily injury"). And in any event, Defendants acted consistent with their statutory authority when cutting or moving the wire. *See* Opp. at 23-25; Defs.' Supp. Br. at 14-17.[3]

### III.   Texas Fails To Show That It Would Suffer Irreparable Harm, And the Balance of Equities Tips Against The Issuance Of An Injunction

Texas has not shown it will suffer irreparable harm pending its appeal of the Court's order. And given the potential availability of compensation for loss of personal property, *see* Order at 13 (citing Federal Tort Claims Act); Opp. at 29-30 (citing, among others, 19 U.S.C. § 1630(a), granting DHS authority to settle claims for damage to property), Texas has not shown that it lacks an adequate remedy at law for future property damage, *see* Opp. at 29 (citing *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023); *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012)).

The balance of equities and public interest weigh heavily against an injunction pending appeal. Throughout this litigation, Texas has made clear that its placement of concertina wire is part of an effort to control immigration. *See, e.g.*, Mot. for Prelim. Inj. at 14, ECF No. 3-1 (noting that Texas installed wire "to stop illegal crossings" and "to deter

---

[3] Texas is also unlikely to succeed on its appeal because Congress has barred lower federal courts from "enjoin[ing] or restrain[ing] the operation" of certain provisions of federal immigration law, including 8 U.S.C. § 1225, which the State's requested relief would undoubtedly do, *id.* § 1252(f)(1); *see, e.g.*, Opp. at 10-12 (citing *Garland v. Aleman Gonzalez*, 596 U.S. 543, 551 (2022)); Defs.' Supp. Br. at 4-9 (same).

entry at the illegal crossing point"); Declaration of Michael Banks ¶ 9, ECF No. 3-2 (advised "placement of concertina wire to deter illegal and dangerous crossings"); Hr'g Tr. at 7, ECF No. 37 ("Texas … is placing the wire in order to deter migrants from ... crossing, and to channel them into the ports of entry so that there would be orderly migration."). However, the Constitution and Congress have given that responsibility to the federal government—not Texas—and even assuming federal agents have no objection to a state's border-security measures in general, they have to be able to carry out their duties to enforce immigration law without interference from such measures. *See, e.g.,* Order at 21 (citing *Arizona v. United States,* 567 U.S. 387, 394-95 (2012)). Violation of the Supremacy Clause constitutes per se irreparable harm to the federal government. *See United States v. Texas,* 557 F. Supp. 3d 810, 820-21 (W.D. Tex. 2021) (citing, among others, *Tex. Midstream Gas. Servs., LLC v. City of Grand Prairie,* 608 F. 3d 200, 206 (5th Cir. 2010)).

Texas's requested injunction would also increase the chances of harm to migrants. Specifically, it would prevent Border Patrol from being proactive to avert emergency situations before they arise. Given Texas's own acknowledgement that "human life is paramount," Hr'g Tr. at 28, ECF No. 37, and that "[p]rotection of life is first," *id.* at 79, it is difficult to understand how insignificant costs in Operation Lone Star's multi-billion-dollar budget override those interests. *See* Defs.' Supp. Br. at 15 n.4.

## IV. Texas's Other Arguments Do Not Justify An Injunction Pending Appeal

Texas's other, miscellaneous complaints are insufficient to justify an injunction pending appeal. To start, Defendants are not opposing relief they previously requested for themselves. *See* Mot. at 6. Defendants asked the Court to stay any expansion of the

TRO's scope in any preliminary injunction "for seven days, so [they] may consider whether to seek further relief from the Fifth Circuit." Hr'g Tr. at 232, ECF No. 37. Texas has already made the decision to seek further relief from the Fifth Circuit, *see* Notice of Appeal, ECF No. 58, and thus has no need for what Defendants requested in anticipation of a preliminary injunction. In any event, as explained above, the cost to Texas of having to repair cut wire are significantly less weighty than the harms to the federal government from an injunction impairing its ability to enforce the immigration laws and prevent loss of life. Moreover, Defendants were seeking the restoration of the status quo—not a limitation on the other party's conduct, *see Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1194 (5th Cir. 1975) ("[T]he status quo to be preserved is the last uncontested status which preceded the pending controversy.").

Texas is also wrong to suggest that it "must seek relief on appeal without access to the documents that Defendants produced and on which this Court has relied *in camera*." Mot. at 8. The Court expressly noted that it did not "rely[] on any particular document in [its] order," Order at 6 n.1, and it decided Texas's motion on legal grounds. Indeed, Texas never requested discovery, and the documents produced by the parties to the Court for *in camera*, *ex parte* review were not part of the record.

Finally, Texas has no grounds whatsoever to deride Defendants for declining to extend the TRO. *See generally* Opp. at 10-22. Rule 65(b)(2) plainly leaves the decision to the "adverse party" whether to "consent[] to a longer extension" of a TRO beyond 28 days, and Texas cites no case suggesting otherwise.

## CONCLUSION

Texas's emergency motion for an injunction pending appeal should be denied.


Dated: December 1, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAIME ESPARZA
United States Attorney

JEAN LIN
Special Litigation Counsel

/s/ *Christopher A. Eiswerth*
Christopher A. Eiswerth (D.C. Bar No. 1029490)
Stephen Ehrlich (NY Bar No. 5264171)
Faith E. Lowry (TX Bar No. 24099560)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St., N.W.
Washington, D.C. 20530
Tel: (202) 305-0568 / Fax: (202) 616-8460
christopher.a.eiswerth@usdoj.gov

Robert D. Green (TX Bar No. 24087626)
Assistant United States Attorney
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
robert.green3@usdoj.gov
Tel: (210) 384-7362 / Fax: (210) 384-7312

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and accurate copy of the foregoing document to be filed electronically (via CM/ECF) on December 1, 2023, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/ Christopher A. Eiswerth*
Christopher A. Eiswerth