# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# DEL RIO DIVISION

| | |
|---|---|
| **THE STATE OF TEXAS,** § § | |
| *Plaintiff,* § § | |
| v. § § | CIVIL ACTION NO. 2:23-CV-00055-AM |
| **U.S. DEPARTMENT OF HOMELAND SECURITY,** *et al.*, § § § | |
| *Defendants.* § | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

Defendants' opposition (ECF 60) demonstrates that it remains unchastened by this Court's excoriation of their conduct in Eagle Pass, *see* ECF 57 at 20–29. The Court should grant Plaintiff the State of Texas injunctive relief pending their appeal in the Fifth Circuit. Plaintiff reiterates its request that the Court rule on its motion by **9 AM on Monday, December 4, 2023.**

**1.** It is ironic for Defendants to suggest that Texas's motion merely "repeats the same arguments that have already been rejected." ECF 60 at 1. While purporting to defend this Court's order denying Plaintiffs' motion for a preliminary injunction, it is Defendants who contest countless holdings by this Court rejecting arguments of their own. They continue to quibble with the Court's consistent determination that Plaintiff is suffering irreparable injury and that the balance of equities and public interest are in its favor. *Compare* ECF 60 at 6–7, *with* ECF 57 at 34. They maintain that an injunction "would prevent Border Patrol from being proactive to avert emergency situations before they arise," ECF 60 at 7, even though the Court's order explicitly rejects this notion by holding that "the very emergencies the Defendants assert make it necessary to cut the wire are of their own creation," and that the claimed "prevention of possible future exigencies rests on far more dubious grounds as a justification for destroying the use of private property than the need to address actual, ongoing crises." ECF 57 at 9, 29. They endeavor to backfill their two-paragraph throwaway argument on intergovernmental immunity (ECF 23-1 at 22-23), even though this Court essentially rejected it by holding that Defendants' "destruction of … property" that is not theirs cannot be justified based on "statutory duties they are so obviously derelict in enforcing" given their "utter failure … to deter, prevent, and halt unlawful entry into the United States." *Compare* ECF 60 at 4 n.2, *with* ECF 57 at 28. Defendants simply cannot take

"yes" for an answer from this Court—they are incapable of mending their ways, further demonstrating the need for judicial relief.

**2.** Texas, unlike Defendants, does not even ask this Court to revisit the central issue on which it parted ways with the State. To be clear, Texas believes this Court's interpretation of the broad waiver of sovereign immunity in 5 U.S.C. § 702 is mistaken. And the State is confident that it will be vindicated in that view on appeal. But Texas has not asked this Court to reverse its own view on that matter. Instead, as the Court can see from Texas's proposed order (ECF 59-1 at 1), the State has simply asked this Court to deem an injunction pending appeal appropriate given that its outlier holding—admittedly departing from at least three federal circuits (ECF 57 at 18 n.9)—was the only thing that stood in the way of relief given Texas's successful showing on every preliminary injunction factor.

To the extent this Court wishes to revisit the sovereign immunity waiver, Defendants' arguments merely highlight why this Court's reading of § 702 was mistaken. First, Defendants mischaracterize the caselaw on the applicability to state-law tort claims of the waiver of sovereign immunity in 5 U.S.C. § 702. They maintain that the Federal Tort Claims Act (FTCA) provides the exclusive remedy for a federal employee's tortious acts, so "even if Section 702 encompassed some state law, it does not encompass state *tort* law." ECF 60 at 4. But the Supreme Court made clear that the FTCA's remedy does *not* impliedly preclude another simply because a plaintiff's claim deals with a similar subject matter. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 223 (2012) ("similar subject matter"—*i.e.*, torts—"is not itself sufficient" to "trigger a remedial statute's preclusive effect"). And the very case Defendants cite attests that the FTCA provides "the exclusive remedy for *compensation* for a federal employees'

3

tortious acts." *McGuire v. Turnbo*, 137 F.3d 321, 324 (5th Cir. 1998) (emphasis added). That remedy for compensation, *i.e.*, monetary damages, cannot serve to preclude § 702's waiver for "relief other than money damages," as is sought here. *See Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 222 (no implied remedial preclusion where plaintiff "is bringing a different claim, *seeking different relief*, from the kind the [FTCA] addresses"). And this Court already found that "compensation for past injury cannot adequately redress the prospect of continuing or future harm" caused by Defendants' interference with state property; instead, "the only appropriate remedy would be injunctive relief." ECF 57 at 13 n.7.

On whether § 702's waiver applies to nonmonetary relief for state-law claims at all, Defendants also mischaracterize the caselaw. First, they rely on a concurring opinion from another circuit, which is binding nowhere, ECF 60 at 3–4 (citing *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 854 (D.C. Cir. 2010) (en banc) (Kavanaugh, J. concurring))—and indeed has been rejected by the binding caselaw within that very circuit. *See Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 617–18, 620 (D.C. Cir. 2017) (finding state-law tort claim for breach of fiduciary duty against U.S. Department of Treasury fell within § 702's waiver of sovereign immunity). Defendants attempt to undermine *Perry Capital* by asserting that "the cases [it] cited addressed only federal constitutional and statutory claims, *see Trudeau v. FTC*, 456 F.3d 178, 188 (D.C. Cir. 2006), and seemingly federal common law claims regarding security clearances, *see U.S. Info. Agency v. Krc*, 989 F.2d 1211, 1216–17 (D.C. Cir. 1993)." ECF 60 at 3. But *Krc* Did not involve federal common law claims, but "a (presumably) state tort claim against the Government." *Perry Capital*, 864 F.3d at 62 (citing *Krc*, 989 F.2d at 1216). In any event, the D.C. Circuit is not alone. The Third Circuit, too, has permitted a plaintiff—indeed, a group of *States*—to press state-law claims against the

4

federal government using the waiver in § 702. *See Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 400–01 (3d Cir. 2012). Two precedential opinions supporting Texas's view is two more than Defendants have ever identified for their position.

    **3.**    On whether there exists a policy sufficient for final agency action to review Plaintiff's claims under the Administrative Procedure Act (APA), Defendants claim that their "evidence on the lack of the purported policy is uncontroverted." ECF 60 at 5. But the Court's order cited repeated instances of Defendants "reiterat[ing] the same policy in identical terms" from June 30, 2023, through after the Court entered the TRO, ECF 57 at 30 n.14. and explained that "[r]egular and frequent occurrence of the incidents in question between September 20, 2023, and the entering of the TRO, regardless of exigency, and the fact of communications between lower- and higher-ranking DHS officers regarding wire-cutting in the Del Rio Sector raise the possibility that an unwritten 'policy, practice, or pattern' exists." ECF 57 at 30–31. Respectfully, the Court should determine that Plaintiff has shown a likelihood of success on the issue of the existence of final agency action and on the merits of its APA claims. *See* ECF 59 at 4–5; *see also* ECF 57 at 32 n.15 ("The Court continues to review the numerous documents provided by the parties and may supplement the factual findings in this Order in light of new information discovered through this review process.").

    **4.**    Finally, on the *ultra vires* claim, Defendants state that "Texas cannot make such a showing [of *ultra vires* action] when its own witness acknowledged that Defendants have authority to remove obstacles to apprehending migrants at least in certain circumstances." ECF 60 at 5–6. This is a non-sequitur: that some agency action may be lawful in some hypothetical circumstances does not defeat an *ultra vires* claim—that a federal officer has a general power to arrest in some

circumstances does not defeat an *ultra vires* claim where the officer arrested a paramour for revenge. *See Apter v. HHS*, 80 F.4th 579, 588 (5th Cir. 2023) (even where agency had statutory authority to communicate with the public, the lack of express authority for the agency to issue medical advice allowed *ultra vires* claim). Texas's agents cut c-wire fencing only when necessary to address a medical emergency—whereas Defendants claim the authority to damage that property "without restraint." Nov. 7 Tr.207. Even if that were not the case, Defendants' argument about different agents' handling of the same property misses the most elementary tenet of property law: Texas agents, of course, may do what they please with *Texas property*. If someone decided to remove some paneling from the side of his home, that would not give his neighbor license to walk over and start ripping off the rest.

  This is especially so where the record shows none of those hypothetical circumstances were present—as this Court has determined. *See* ECF 57 at 21–29; *id*. at 27 ("The Defendants cannot justify their wire-cutting based on purported 'apprehension' and 'detention' of migrants after they cross through the fence"); *id*. ("the Defendants apparently seek to establish an unofficial and unlawful port of entry stretching from wherever they open a hole through the Plaintiff's fence to the makeshift processing center they established on private land a mile or more away."); *id*. at 28 ("Defendants cannot claim the statutory duties they are so obviously derelict in enforcing as excuses to puncture the Plaintiff's attempts to shore up the Defendants' failing system. Nor may they seek judicial blessing of practices that both directly contravene those same statutory obligations and require the destruction of the Plaintiff's property. Any justifications resting on the Defendants' illusory and life-threatening 'inspection' and 'apprehension' practices, or lack thereof, fail."); *id*. at 29 ("given the greater potential for abuse, prevention of possible future

exigencies rests on far more dubious grounds as a justification for destroying the use of private property than the need to address actual, ongoing crises.").

Dated: December 2, 2023.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**RALPH MOLINA**
Deputy Attorney General for Legal Strategy

**ROBERT HENNEKE**
Texas Bar No. 24026058
Texas Public Policy Foundation
901 Congress Ave.
Austin, Texas 78701
(512) 472-2700
rhenneke@texaspolicy.com

Respectfully submitted.

*/s/ Ryan D. Walters*
**RYAN D. WALTERS**
Chief, Special Litigation Division
Texas Bar No. 24105085

**DAVID BRYANT**
Special Counsel
Texas Bar No. 03281500

**MUNERA AL-FUHAID**
Special Counsel
Texas Bar No. 24094501

**HEATHER L. DYER**
Special Counsel
Texas Bar No. 24123044

Office of the Attorney General
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1706
Ryan.Walters@oag.texas.gov
David.Bryant@oag.texas.gov
Munera.Al-Fuhaid@oag.texas.gov
Heather.Dyer@oag.texas.gov

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 2, 2023, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/Ryan D. Walters*
**RYAN D. WALTERS**