UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| **THE STATE OF TEXAS,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:23-CV-00055-AM** |
| | § | |
| **U.S. DEPARTMENT OF HOMELAND** | § | |
| **SECURITY**, *et al.*, | § | |
| *Defendants*. | § | |
| | § | |

**JOINT BRIEF ON FACTUAL ISSUES
TO BE DETERMINED ON REMAND**

Plaintiff and Defendants submit this Joint Brief in response to the Court's Order of January 29, 2024 (ECF No. 78), which directs that the "parties file an e-brief of no more than 10 pages that identifies the factual issues for which the Fifth Circuit Court of Appeals requests factual findings."

**Plaintiff's Identification of Factual Issues for Remand**

This Court made extensive findings in its Order dated November 29, 2023. The Court concluded that: Texas has "direct proprietary interests" in its property near Eagle Pass, ECF 57 at 12; Defendants' "destruction of . . . property" that is not theirs cannot be justified based on "statutory duties they are so obviously derelict in enforcing," *id.* at 28; injunctive relief is "the only appropriate remedy" for Defendants' "continuing or future" interference with Texas's property, *id.* at 13 n.7; Texas will suffer irreparable harm absent an injunction, given Defendants' "culpable and duplicitous conduct," *id.* at 6, 34; and the public interest favors an injunction because Defendants' destruction of property "provide[s] ample incentive" for dangerous crossings and criminal evasion, *id.* at 27-28, 34.

The Court also found that the "evidence amply demonstrates the utter failure of the Defendants to deter, prevent, and halt unlawful entry into the United States." *Id.* at 28. To the

1

extent Defendants decide to perform the statutory duties they are presently ignoring, this Court observed, "Border Patrol agents already possess access to both sides of the fence," negating any need to destroy Texas' property. *Id.* at 24. The Court also identified Defendants' "cynical" and "disingenuous" argument that "the wire hinders Border Patrol from performing its job, while also asserting the wire helps" when federal officials use the *same* wire elsewhere. *Id.* at 10. It found, in any event, that the wire fencing *is* "an effective" deterrent. *Id.* at 8. Finally, this Court made credibility findings about the testifying federal officials, documenting their "totally uncorroborated" assertions and their "evasive answers and demeanor." *Id.* at 9 n.4.

On appeal, the United States has portrayed the Court's detailed fact findings as "plainly erroneous" and even attempted to recast them as mislabeled "*legal* conclusions." *See* Reply in Support of Application to Vacate the Injunction Pending Appeal at 7-10, *DHS v. Texas*, No. 23A607 (U.S. Jan. 10, 2024); Brief for Appellees at 19-24, *Texas v. DHS*, No. 23-50869, ECF 113 (5th Cir. Jan. 26, 2024). While their emergency application was pending before the Supreme Court of the United States, Defendants also sought to inject new factual developments that supposedly "changed the situation." *See* Supplemental Memorandum at 1, *DHS v. Texas*, No. 23A607 (U.S. Jan. 12, 2024) [*First Supplemental*]; Second Supplemental Memorandum at 1, *DHS v. Texas*, No. 23A607 (U.S. Jan. 15, 2024) [*Second Supplemental*]. Defendants suggested that Texas had: restricted Defendants' access to patrol 2.5 miles of the border, First Supplemental at 2-3; Second Supplemental at 2-3; inhibited Defendants from carrying out their statutory duties to monitor and patrol, First Supplemental at 3, Second Supplemental at 4-5; prevented federal officials from entering Shelby Park even to respond to emergency situations, First Supplemental at 4-5, Second Supplemental at 2; and caused the tragic death of three people in the Rio Grande, ECF 77 at 3, Second Supplemental at 3.

Before this Court entered its temporary restraining order, Defendants had essentially converted Shelby Park—a municipal park in Eagle Pass located *directly beneath* two lawful ports of entry—into "an unofficial and unlawful port of entry" to stage thousands of aliens illegally crossing the border. ECF 57 at 8-10, 27. Later in 2023, however, Defendants communicated to

2

Texas that Defendants would withdraw from Shelby Park. Defendants further indicated that they would *not* be present to monitor or administer aid unless Texas called for help, and Defendants voluntarily reduced their boating operations there. *See* State of Texas's Response to First Supplemental at 2-5, *DHS v. Texas*, No. 23A607 (U.S. Jan. 13, 2024) [*First Supplemental Response*].

On January 10, 2024, after Defendants had abandoned the area, Texas took certain steps pursuant to state law to prevent Shelby Park from again being converted into an unlawful port of entry. Specifically, Texas personnel acted under the Texas Disaster Act*, see* Tex. Gov. Code §418.017, to secure the perimeter of a 1-mile stretch of municipal land, stretching from an area just north of the Shelby Park boat ramp to an area just south of the international railway bridge. Before doing so, the Operation Lone Star Commander, Colonel Fletcher, contacted federal personnel informing them that Texas was acting to prevent unlawful staging activities and restore the park's use for public recreation, but that federal personnel would still have access to the area, including to access their equipment and respond to medical emergencies. Defendants did not indicate to Colonel Fletcher that they required access to the Shelby Park boat ramp or that they would be unable to patrol along the river. "[T]he first time that Texas learned of Defendants' claim" to the contrary was upon reading their late-night filing in the Supreme Court on January 12th. First Supplemental Response at 4.

Texas acted immediately to clarify that Defendants have access to the boat ramp. But both before and after January 10th, Defendants have had access to the area, including to fulfill the statutory obligations they have so far neglected. Because Shelby Park's boat ramp is *not* the only ramp "with access to the relevant portion of the river," Defendants have never been unable to access this stretch of the River and have even launched boats elsewhere. *Contra* First Supplemental at 4. Because Defendants have unobstructed long-range surveillance immediately north, south, and above Shelby Park, they have never been "without any ability to view the border." *Contra id.* at 5. And because Defendants have multiple access points to the patrol road south of Shelby Park— including the portion of that road where the property damage at issue here occurred—they are still

"able to drive trucks" on land "for patrolling, deploying surveillance equipment, and responding to emergencies." *Contra* First Supplemental at 3; Second Supplemental at 4-5.

While their emergency application was pending before the Supreme Court, Defendants in this case levelled public allegations about the Plaintiff in this case, claiming that Texas on January 12 denied Border Patrol entry to Shelby Park to rescue migrants in distress in the river who eventually drowned in the Rio Grande. ECF 77 at 3. In their Supreme Court briefing, Defendants refused to disavow this accusation—even after it was proven false. Second Supplemental at 3. In fact, the evidence will show that Border Patrol agents (who arrived at the Shelby Park gate without rescue equipment) never indicated there was an ongoing emergency. Instead, they informed Texas personnel that three individuals had already drowned on the Mexican side of the river and that Mexican officials had the situation under control. Border Patrol personnel already *inside* of Shelby Park never expressed any need for additional personnel to perform operations in the area.

The deaths on January 12 are tragic and prompt this Court's own question to Defendants: "Why make [aliens] undertake the dangerous task of crossing the river?" ECF 54 at 9. The developments in Shelby Park confirm this Court's conclusion that Texas's wire fencing is an effective deterrent against the illegal and dangerous crossings that Defendants' conduct is attracting. ECF 54 at 8-9, 27-28. Since Texas took control of the Park that Defendants had abandoned, illegal crossings have decreased dramatically: In December 2023, before Texas moved into Shelby Park, the Del Rio sector saw 71,048 apprehensions. In January 2024, after Texas moved into Shelby Park, the Del Rio sector saw 16,709 apprehensions—a 76% decrease in just *one month*.

As Texas previously noted, the Fifth Circuit has left the "the form of the proceedings to the district court's wise discretion" and invited this Court to consider not only the "strenuously disputed" issues that Defendants injected into this case but also "any other matters the district court deems relevant." Texas respectfully suggests it would assist the Fifth Circuit for this Court to address the following additional factual issues on remand:

a)  Defendants' use of the Shelby Park area from September 1, 2023, through January 2024;

b) Texas's actions in taking control of municipal park land under state law in January 2024 and thereafter;

c) the details of the physical area that Texas has secured in Shelby Park;

d) Defendants' access to the Rio Grande both before and after January 10th, including access to boat ramps in the area;

e) Defendants' ability to surveil and patrol the border near Shelby Park, including the area south of the Park, where Defendants damaged the property at issue in this case;

f) Defendants' ability to respond to medical emergencies in the vicinity of Shelby Park, including on January 12th;

g) the public accusations concerning events on January 12th near Shelby Park that Defendants levelled against Texas but never corrected; and

h) the reduction in illegal crossings in the Eagle Pass area since Texas took control of Shelby Park.

Defendants largely agree, but suggest this Court should ignore the last two items. With respect to issue (g), Defendants claim that "[i]t was appropriate for Defendants to inform the Supreme Court" of unsubstantiated allegations, but that those very same allegations are somehow now "no longer relevant to the issues before the Fifth Circuit or this Court." *Infra* at 7. The truth is those allegations were not relevant even when first raised, yet Defendants injected them into this case nonetheless. *See* Second Supplemental at 5 (conceding the issues Defendants raised were "not presented"); State of Texas's Response to Second Supplemental at 1-2, *DHS v. Texas*, No. 23A607 (U.S. Jan. 17, 2024). It is no response for Defendants to observe that Texas points to "its own Notice of Remand" to recount those allegations. *Infra* at 8. If Defendants mean to suggest the allegations they levelled publicly are somehow exogenous to this dispute, it bears repeating what happened: *Defendants in this case* (CBP and DHS) made public allegations about *the Plaintiff in this case* (the State of Texas) in statements to the press, *while this dispute was pending* before the Supreme Court, then *refused to correct them* in their filings. *See, e.g.*, Second Supplemental at 3. If anything, the fact that it took the Supreme Court three weeks to rule on Defendants' "emergency" application is evidence that those allegations affected that Court's deliberations. The hope of affecting those deliberations is the likeliest reason for Defendants to raise those issues in the first place, given Defendants conceded they were irrelevant. Second Supplemental at 5.

The notion that Defendants should get a pass now by urging this Court to ignore that entire episode is a non-starter. That truth *is* relevant to the proceedings before this Court. In balancing the equities, federal courts may consider traditional equitable factors like a party's bad-faith behavior. *See, e.g., Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018); *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1100 (5th Cir. 2023); *Ramirez v. McCraw*, 715 F. App'x. 347, 350-51 (5th Cir. 2017 (per curiam). This Court's finding that Defendants made "cynical" and "disingenuous" arguments during the preliminary-injunction hearing, unfortunately, continued into January of 2024, both in false statements tending to prejudice the public nationwide against Texas and in the United States Supreme Court. Texas respectfully suggests that justice requires the truth be known.

With respect to issue (h), Texas intends to present evidence on remand that illegal crossings (between ports of entry) reached all-time highs in December 2023 nationwide and were at high levels in the Shelby Park area, and that after Texas took control of a municipal park pursuant to Texas law in January 2024, such illegal crossings at Shelby Park dropped significantly. This evidence is relevant because Defendants argue that Texas's control of Shelby Park somehow prevents them from performing their lawful mission—which is the prevention of illegal immigration.

It is relevant to show that Texas's actions at Shelby Park have in fact furthered the accomplishment of the common goal of both the Border Patrol and Texas law enforcement: the prevention of illegal crossings and criminal activity that harms citizens and communities in Texas and nationwide. In the briefs for the interlocutory appeal, both Texas and Defendants argue the equities of the parties and the public interest. Appellant's Brief at 37-42; Appellees' Brief at 46-51; Appellant's Reply Brief at 21-24. This evidence is highly relevant to Texas' contention that such an injunction is equitable, will not cause harm, and is in the public interest.

### Defendants' Response and Identification of Factual Issues for Remand

The Fifth Circuit currently has jurisdiction over Texas's interlocutory appeal of the Court's denial of Texas's motion for preliminary injunction. 28 U.S.C. § 1292(a). After the Supreme Court vacated the injunction pending appeal entered by the Court of Appeals, *see* Order,

*Dep't of Homeland Sec. v. Texas*, No. 23A607 (U.S. Jan. 22, 2024), the question before the Fifth Circuit panel is whether this Court abused its discretion in concluding on November 29, 2023 that Texas had not carried its burden to obtain the extraordinary remedy of a preliminary injunction. *See* ECF No. 57; *CAE Integrated, LLC v. Moov Techs., Inc.*, 44 F.4th 257, 261 (5th Cir. 2022). Any additional fact finding should be limited to issues relevant to that question.

The Court of Appeals identified various factual disputes in the parties' briefing that could be within the scope of the limited remand. Those disputes fall in two categories. First, the parties continue to have certain disputes that pre-date November 29, 2023, such as the extent to which Texas's erection of concertina wire impedes Border Patrol from carrying out its statutory duties and certain characteristics of the topography around Shelby Park. So long as Texas is not relieved of its burden of persuasion, these issues are within the scope of the limited remand and likely relevant to the pending appeal.

Second, the parties dispute various issues that have arisen since the Court's November 29 order. Most significantly, the parties do not agree regarding the extent of Texas's actions since January 10, 2024 to obstruct Border Patrol from performing its statutory duties in the Shelby Park area. It was appropriate for Defendants to inform the Supreme Court immediately that Texas had altered the circumstances under which the Fifth Circuit had issued the injunction pending appeal, including circumstances relevant to the emergency exception the parties agreed that injunction contained. But any factual disputes about the precise access denied to federal agents in Eagle Pass while the Fifth Circuit's now-vacated injunction was in place—even if they are potentially within the limited remand—are no longer relevant to the issues before the Fifth Circuit or this Court. The Supreme Court vacated the injunction despite any factual disputes. And the question now is whether Border Patrol's current access to the Shelby Park area has changed in ways that alter the propriety of prospective injunctive relief. As the federal government has already shown—and will further demonstrate if necessary—the increased hindrances that Texas has placed between Border Patrol and the border further demonstrates that injunctive relief against the United States is inappropriate.

7

In addition to the matters (a)-(f) listed in the Texas's section above, it is Defendants' position that the matters on remand also include the following: As to (a) in Plaintiff's list, Defendants' *access* to the Shelby Park area; As to (b), Texas's actions to take control of *non-municipal land* in the Shelby Park area; As to (e), Defendants' ability to perform other duties including *apprehension* and *processing* of migrants; And as to (f) Defendants' ability to *access* the Shelby Park area on January 12, 2024. *See* Fifth Circuit's Remand Order, n.1.

Beyond the issues that may be within the scope of the limited remand, Texas asks the Court to consider other matters outside the limited remand and irrelevant to the pending appeal—namely items (g) and (h) on Texas's proposed list. These matters should not be included in the March 4-5 hearing.

As to (g), Texas presents this additional "factual dispute" by relying predominantly on extrajudicial statements, not Defendants' filings. Indeed, Defendants' filing in the Supreme Court accurately portrayed DHS's understanding of the facts, which had been evolving prior to the filing. Because the purported "public accusations" attributed to Defendants and described in Texas's Notice of Limited Remand, ECF No. 77 at 3, were not presented to the Supreme Court, they are not among the "strenuously disputed factual issues" for which the Fifth Circuit has requested findings. Remand Order at 2. Nor are anonymous statements attributed to Defendants, which post-date the Court's order denying the preliminary injunction, independently relevant to the interlocutory appeal.

As to (h) regarding any **"**reduction in illegal crossings in the Eagle Pass area since Texas took control of Shelby Park," it is beyond the scope of the limited remand.  To the extent Texas seeks to show that its seizure of the Shelby Park area has effectively reduced irregular migration, that has no bearing on the interlocutory appeal before the Court of Appeals. It is also inappropriate for the Court to resolve this factual issue because there is no legal claim concerning such seizure.

Dated: February 15, 2024.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy Attorney General for Legal Strategy

**RYAN D. WALTERS**
Chief, Special Litigation Division
Texas Bar No. 24105085

**ROBERT HENNEKE**
Texas Bar No. 24046058
Texas Public Policy Foundation
901 Congress Ave.
Austin, Texas 78701
(512) 472-2700
rhenneke@texaspolicy.com

Respectfully submitted,

*/s/ Ryan Kercher*
**RYAN KERCHER**
Deputy Chief, Special Litigation Division
Texas Bar No.

**DAVID BRYANT**
Special Counsel
Texas Bar No. 03281500

**HEATHER L. DYER**
Special Counsel
Texas Bar No. 24123044

**MUNERA AL-FUHAID**
Special Counsel
Texas Bar No. 24094501

Office of the Attorney General
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1706
Ryan.Walters@oag.texas.gov
Ryan. Kercher@oag.texas.gov
David.Bryant@oag.texas.gov
Munera.Al-Fuhaid@oag.texas.gov
Heather.Dyer@oag.texas.gov

**COUNSEL FOR PLAINTIFF**
**STATE OF TEXAS**

Dated: February 15, 2024

Respectfully submitted,

Brian M. Boynton
Principal Deputy Assistant Attorney General

JAIME ESPARZA
United States Attorney

JEAN LIN
Special Litigation Counsel

*/s/Christopher A. Eiswerth*
Christopher A. Eiswerth (D.C. Bar 1029490)
Stephen Ehrlich (NY Bar No. 5264171)
Faith E. Lowry (TX Bar No. 24099560)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St., N.W.
Washington, D.C. 20530
Tel: (202) 305-0568 / Fax: (202) 616-8460
christopher.a.eiswerth@usdoj.gov

Robert D. Green (TX Bar No. 24087626)
Assistant United States Attorney
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
Tel: (210) 384-7362 / Fax: (210) 384-7312
robert.green3@usdoj.gov

**Counsel for Defendants**