UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 2:23-CV-00055-AM |
| v. | § | |
| | § | |
| U.S. DEPARTMENT OF HOMELAND | § | |
| SECURITY, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

---

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

TABLE OF CONTENTS

Table of Contents ........................................................................................................... ii

Argument ......................................................................................................................... 1

   I.  At the Pleadings Stage, Defendants Cannot Introduce Disputed Facts in Support of Their Motion or Fault Texas for a Supposed Lack of Evidentiary Support ...................................... 1

   II. Defendants Conflate the Standards Governing a Motion to Dismiss under Rule 12(b) and a Motion for a Preliminary Injunction Under Rule 65. ........................................................ 3

   III.     Texas Has Pled Valid Claims for Conversion or Trespass to Chattels. ........................... 5

     A. Defendants nowhere contest Texas's allegations or this Court's legal conclusions supporting Texas's state-law claims ...................................................................... 5

     B. Congress waived the United States' sovereign immunity for Texas's state-law claims. ..... 7

     C. Texas's state-law claims are not barred by intergovernmental immunity ......................... 12

     D. The Court should not entertain Defendants' Supremacy Clause and preemption arguments, which fail in any event. ....................................................................................... 13

   IV.     Texas Has Pled Valid Claims that Defendants Violated the APA. ............................... 15

     A. Texas has adequately alleged final agency action. ............................................ 15

     B. Destruction of Texas's fence is not committed to agency discretion by law. .................... 18

     C. Texas has pled violations of the APA. .......................................................... 19

   V. Texas Has Pled a Valid *Ultra Vires* Claim. ................................................................ 21

   VI.     There Is No Statutory Bar to Injunctive Relief Here. ................................................ 22

Conclusion ..................................................................................................................... 25

Certificate of Service ...................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Bain,*
    697 F.2d 1213 (4th Cir. 1982) .................................................................................2

*All. for Hippocratic Med. v. FDA,*
    78 F.4th 210 (5th Cir. 2023) ...........................................................................6, 24

*Alli v. Decker,*
    650 F.3d 1007 (3d Cir. 2011) ............................................................................. 24

*Almaguer v. Chacon,*
    No. DR-04-cv-023, 2006 WL 8433819 (W.D. Tex. Sept. 5, 2006) ...........................2

*Am. Trucking Ass'ns v. City of Los Angeles,*
    569 U.S. 641 (2013) ........................................................................................12

*Amadei v. Nielsen,*
    348 F. Supp.3d 145 (E.D.N.Y. 2018) .................................................................17

*Apter v. HHS,*
    80 F.4th 579 (5th Cir. 2023) ......................................................... 7, 8, 21, 22

*Arizona v. Navajo Nation,*
    599 U.S. 555 (2023) ........................................................................................10

*Arizona v. United States,*
    567 U.S. 387 (2012) ........................................................................................13

*Arnold v. Williams,*
    979 F.3d 262 (5th Cir. 2020) ..............................................................................1

*Bhd. of Locomotive Eng'rs & Trainmen v. FRRA,*
    972 F.3d 83 (D.C. Cir. 2020) ......................................................................17, 19

*Biden v. Texas,*
    597 U.S. 785 (2022) ........................................................................... 15, 23, 24

*Blagojevich v. Gates,*
    519 F.3d 370 (7th Cir. 2008) ..............................................................................8

*Bostock v. Clayton County,*
    140 S. Ct. 1731 (2020) ......................................................................................9

*Cedar Point Nursery v. Hassid*,
    141 S. Ct. 2063 (2021) ........................................................................................10

*Croy v. United States*,
    --- F. Supp. 3d ---, 2023 WL 6393888 (W.D. Tex. 2023) (Moses, C.J.) ..................13

*Data Mktg. P'ship v. DOL*,
    45 F.4th 846 (5th Cir. 2022) .................................................................................15

*De La Mota v. U.S. Dep't of Educ.*,
    No. 02-cv-4276, 2003 WL 21919774 (S.D.N.Y. Aug. 12, 2003) ...........................17

*Dep't of Army v. Blue Fox, Inc.*,
    525 U.S. 255 (1999) ...............................................................................................8

*Dep't of Com. v. New York*,
    139 S. Ct. 2551 (2019).........................................................................................18

*Dep't of Com. v. New York*,
    139 S. Ct. 2552 (2019).........................................................................................19

*Dep't of Revenue v. Kentucky*,
    553 U.S. 328 (2008) .............................................................................................12

*Department of Agriculture v. Kirtz*,
    144 S. Ct. 457 (2024) ...........................................................................................11

*DGG Grp., LLC v. Lockhart Fine Foods, LLC*,
    No. A-20-cv-330, 2020 WL 2475821 (W.D. Tex. May 13, 2020) .............................3

*DHS v. Regents of Univ. of Cal.*,
    140 S. Ct. 1891 (2020).........................................................................................18

*United States ex rel. Drury v. Lewis*,
    200 U.S. 1 (1906) .................................................................................................12

*Escobar v. City of Del Rio*,
    No. DR-20-cv-0031, 2023 WL 6465132 (W.D. Tex. Oct. 2, 2023) (Moses, J.) .......3

*Ferguson v. Texas Farm Bureau Bus. Corp.*,
    No. 6:17-cv-00111, 2017 WL 7053927 (W.D. Tex. July 26, 2017)...........................3

*Fort Leavenworth Ry. v. Lowe*,
    114 U.S. 525 (1885) .............................................................................................12

*Future Proof Brands, LLC v. Molson Coors Beverage Co.*,
    No. A-20-cv-00144, 2020 WL 13883302 (W.D. Tex. Dec. 15, 2020) ......................3

iv

*Garland v. Aleman Gonzalez,*
   596 U.S. 543 (2022) ...............................................................23, 24

*George v. SI Grp., Inc.,*
   36 F.4th 611 (5th Cir. 2022) ....................................................1, 2

*GLO v. Biden,*
   71 F.4th 264 (5th Cir. 2023) .........................................................2

*Gomez v. Trump,*
   485 F.Supp.3d 145 (D.D.C. 2021) ...............................................15

*Gonzalez v. DHS,*
   508 F.3d 1227 (9th Cir. 2007) .....................................................24

*Grand Canyon Tr. v. Pub. Serv. Co. of N.M.,*
   283 F.Supp.2d 1249 (D.N.M. 2003) ...........................................18

*Guerrero-Lasprilla v. Barr,*
   140 S. Ct. 1062 (2020) ................................................................19

*Hall v. Virginia,*
   105 S.E. 551 (Va. 1921) ...............................................................12

*Her Majesty the Queen in Right of Ontario v. EPA,*
   912 F.2d 1525 (D.C. Cir. 1990) ...................................................17

*J&J Sports Prods., Inc. v. Sw. Texas Ent., Inc.,*
   No. DR-17-cv-045, 2019 WL 1313474 (W.D. Tex. Jan. 23, 2019) ............................................3

*Johnson v. Maryland,*
   254 U.S. 51 (1920) .......................................................................12

*Jones v. Wells Fargo Bank, N.A.,*
   No. 5-14-cv-943, 2015 WL 12734177 (W.D. Tex. Jan. 21, 2015) ...........................................24

*Labrador v. Poe,*
   144 S. Ct. 921 (2024) (Kavanaugh, J., concurring) .....................11

*Lamie v. U.S. Trustee,*
   540 U.S. 526 (2004) .......................................................................9

*Lone Star Fund V (U.S.), L.P. v. Barclay's Bank, PLC,*
   594 F.3d 383 (5th Cir. 2010) .....................................................2, 3

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
   567 U.S. 209 (2012) ...............................................................10, 11

*McGuire v. Turnbo,*
   137 F.3d 321 (5th Cir. 1998) ........................................................................ 11

*Mexican Gulf Fishing Co. v. United States Dep't of Com.,*
   60 F.4th 956 (5th Cir. 2023) ....................................................................... 21

*Michigan v. EPA,*
   135 S. Ct. 2699 (2015) ...........................................................................10, 20

*Monroe v. Pape,*
   365 U.S. 167 (1961) ..................................................................................... 22

*Mountain States Tel. & Tel. Co. v. Vowell Constr. Co.,*
   341 S.W.2d 148 (Tex. 1960) .........................................................................5

*Navajo Nation v. U.S. Dep't of Interior,*
   26 F.4th 794 (9th Cir. 2022) .......................................................................10

*New Hampshire v. Maine,*
   532 U.S. 742 (2001) .....................................................................................14

*Nielsen v. Preap,*
   139 S. Ct. 954 (2019) .................................................................................. 24

*North Carolina v. Ivory,*
   906 F.2d 999 (4th Cir. 1990) ......................................................................12

*Novedea Sys., Inc. v. Colaberry, Inc.,*
   No. 6:20-cv-180, 2020 WL 9211073 (E.D. Tex. Dec. 11, 2020) ............. 24

*Nunez v. CitiMortgage, Inc.,*
   606 F. App'x 786 (5th Cir. 2015) .................................................................1

*OnPath Fed. Credit Union v. United States Dep't of Treasury, Cmty. Dev. Fin.
Institutions Fund,*
   73 F.4th 291 (5th Cir. 2023) ...................................................................... 20

*Pan Am. Petrol. Corp. v. Long,*
   340 F.2d 211 (5th Cir. 1964) ........................................................................5

*Perry Capital LLC v. Mnuchin,*
   864 F.3d 591 (D.C. Cir. 2017) .....................................................................8

*Pickett v. Texas Tech Univ. Health Sci. Ctr.,*
   37 F.4th 1013 (5th Cir. 2022) .......................................................................2

*Puerto Rico v. United States*,
   490 F.3d 50 (1st Cir. 2007) ................................................................................8

*R.I.L-R v. Johnson*,
   80 F.Supp.3d 164 (D.D.C. 2015) .......................................................................18

*Rosa v. McAleenan*,
   No. 1:19-cv-00138, 2019 WL 5191095 (S.D. Tex. Oct. 15, 2019) (Rodriguez, J.) ...................17

*In re S. Scrap Material Co., LLC*,
   541 F.3d 584 (5th Cir. 2008) ..............................................................................1

*Sanchez v. United States*,
   803 F. Supp. 2d 1066 (C.D. Cal. 2011) ...............................................................12

*Schenck v. Pro-Choice Network of W. N. Y.*,
   519 U.S. 357 (1997)..........................................................................................22

*SEC v. First Fin. Grp. of Tex.*,
   645 F.2d 429 (5th Cir. Unit A May 1981) ...........................................................4

*South Carolina v. Baker*,
   485 U.S. 505 (1988)..........................................................................................12

*Sprint Nextel Corp. v. FCC*,
   508 F.3d 1129 (D.C. Cir. 2007)..........................................................................20

*State v. Cemex Constr. Materials S., LLC*,
   350 S.W.3d 396 (Tex. App.–El Paso 2011, pet. granted, judgm't vacated
   w.r.m.)..............................................................................................................5

*Texas v. Biden*,
   646 F. Supp. 3d 753 (N.D. Tex. 2022)...............................................................24

*Texas v. Biden* (*MPP*),
   20 F.4th 928 (5th Cir. 2021), *rev'd on other grounds*, 597 U.S. 785 (2022) ...............19

*Texas v. DHS (Motions Panel Opinion)*,
   88 F.4th 1127 (5th Cir. 2023), *vacated without discussion sub nom DHS v. Texas*,
   144 S. Ct. 715 (2024) ................................................................................ *passim*

*Texas v. United States*,
   40 F.4th 205 (5th Cir. 2022) .............................................................................20

*Texas v. United States*,
   50 F.4th 498 (5th Cir. 2022) .......................................................................20, 24

*Texas v. United States,*
    555 F. Supp. 3d 351 (S.D. Tex. 2021), *appeal dismissed,* No. 21-40618, 2022
    WL 517281 (5th Cir. Feb. 11, 2022) ........................................................................... 20

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015) ...................................................................................... 18

*Trudeau v. FTC,*
    456 F.3d 178 (D.C. Cir. 2006) (Garland, J.) ............................................................ 7, 9

*U.S. Gypsum Co. v. Muszynski,*
    161 F. Supp. 2d 289 (S.D.N.Y. 2001) (Rakoff, J.) ................................................. 16, 17

*United States v. Washington,*
    596 U.S. 832 (2022) .................................................................................................... 12

*United States v. Williams,*
    514 U.S. 527 (1995) ...................................................................................................... 9

*Univ. of Tex. v. Camenisch,*
    451 U.S. 390 (1981) ...................................................................................................... 4

*Velesaca v. Decker,*
    458 F.Supp.3d 224 (S.D.N.Y. 2020) ......................................................................... 17

*Venetian Casino Resort, LLC v. EEOC,*
    530 F.3d 925 (D.C. Cir. 2008) ................................................................................... 17

*Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.,*
    16 F.4th 1130 (5th Cir. 2021) ..................................................................................... 20

*West Virginia v. EPA,*
    142 S. Ct. 2587 (2022) ................................................................................................ 14

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.,*
    139 S. Ct. 361 (2018) ................................................................................................... 18

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001) ..................................................................................................... 15

*Wilkie v. Robbins,*
    551 U.S. 537 (2007) ..................................................................................................... 12

*Zapata v. Ford Motor Credit Co.,*
    615 S.W.2d 198 (Tex. 1981) ......................................................................................... 5

**Statutes**

5 U.S.C. § 551(4) ...................................................................................................................... 19

5 U.S.C. section 701 ................................................................................................................... 9

5 U.S.C. § 701(a)(2) ............................................................................................................. 18, 19

5 U.S.C. § 702 ......................................................................................................... 7, 8, 10, 11

6 U.S.C. §§ 202(5), 211(c)(2), (5), (6), (8), (e)(3) ............................................................... 22

8 U.S.C. § 1225 and § 1226 ..................................................................................................... 14

8 U.S.C. § 1252(f)(1) .............................................................................................. 22, 23, 24, 25

8 U.S.C. § 1357(a)(3) ................................................................................................................ 14

90 Stat. 2721 (1976) .................................................................................................................. 7

TEX. PENAL CODE § 9.22 ........................................................................................................ 18

**Other Authorities**

Federal Rule of Evidence 201 ................................................................................................... 2

H.R. Rep. No. 94-1656 ............................................................................................................ 10

RICHARD FALLON ET AL., HART & WECHSLER'S THE FEDERAL COURTS AND THE
FEDERAL SYSTEM 902 (7th ed. 2015). Section 702's ............................................................ 7

Rule 12 ...................................................................................................................................... 22

Rule 12(b) ................................................................................................................................... 3

Rule 12(b)(1) .............................................................................................................................. 2

Rule 12(b)(6) .................................................................................................................... 1, 2, 3

Rule 12(b)(6) and Rule 56 ......................................................................................................... 2

Rule 65 ....................................................................................................................................... 3

18B WRIGHT & MILLER, FED. PRAC. & PROC. § 4477.1 (3d ed.) .................................... 13

**ARGUMENT**

## I. At the Pleadings Stage, Defendants Cannot Introduce Disputed Facts in Support of Their Motion or Fault Texas for a Supposed Lack of Evidentiary Support.

At the outset, Defendants misuse their motion to dismiss by failing to focus their arguments on Texas's complaint. At some points, Defendants rely on later evidence that they also mischaracterize to support their motion. ECF 102 at 18[1] (pointing to "witness testimony" and "oral argument"); *id*. at 23–24 (pointing to "the record developed in this case"); *infra* at 2 n.1. At other points, they fault Texas for lacking certain evidence to support its claims. ECF 102 at 21-22 (pointing to this Court's conclusions about the evidentiary burden at the preliminary injunction stage); *id*. at 24 (arguing Texas "has not come forward with evidence" supporting its APA claims). They do so even though they have thus far refused to comply fully with this Court's discovery orders. *See* ECF 38 (Defendants refusing to comply with discovery order); ECF 100 at 194 (this Court explaining that "everybody needs to finish complying with that document production in full"). It is basic law that, when ruling on a motion contesting the sufficiency of a complaint, this Court must take the complaint's factual allegations as true. *See George v. SI Grp., Inc.,* 36 F.4th 611, 620 (5th Cir. 2022) (it would be improper "to require data, to rely on testimony, and to cite the failure to produce evidence at this Rule 12(b)(6) stage.").

"To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nunez v. CitiMortgage, Inc.*, 606 F. App'x 786, 788 (5th Cir. 2015) (internal quotation marks omitted). "A claim is facially plausible if the plaintiff alleges facts that, accepted as true, allow a court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

---

[1] References to pagination for documents filed on this Court's electronic docket are to the stamped page numbers in the header of those filings.

The Rule 12(b)(6) "standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC,* 541 F.3d 584, 587 (5th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). The plaintiff's allegations must merely "be enough to raise a right to relief above the speculative level," as "the complaint may survive a motion to dismiss even if recovery seems very remote and unlikely." *Innova,* 892 F.3d at 726 (citing *Twombly,* 550 U.S. at 555–56) (internal quotation marks omitted). In general, then, "[t]he court's review is limited to the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclay's Bank, PLC,* 594 F.3d 383, 387 (5th Cir. 2010).[2]

Likewise, "there are limits to a district court's ability to resolve fact disputes on a Rule 12(b)(1) motion." *Pickett v. Texas Tech Univ. Health Sci. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022). If it is impossible to extricate jurisdiction from merits, the court should decline to resolve disputed factual issues. *Id.* Here, Defendants have arguably raised merits defenses under the guise of a jurisdictional attack. Defendants claim that: (1) Border Patrol agents only "cut or moved the wire to carry out their statutory duties"; (2) Border Patrol denies the existence of any final agency action; and (3) Border Patrol agents "do not cut the wire except when faced with exigent circumstances." ECF No. 102 at 18, 23, 24. Accordingly, because "the jurisdictional facts are intertwined with the facts central to the merits of the dispute … the entire factual dispute is appropriately resolved only by proceeding on the merits." *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). A contrary holding

---

[2] There are limited exceptions for "either (a) a document attached to the Rule 12(b)(6) motion, referred to in the complaint, and central to the plaintiff's claim; or (b) a matter subject to judicial notice under Federal Rule of Evidence 201." *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022). Neither of these applies here. Defendants attach no document to their motion to dismiss. And the only matter they ask this Court to take judicial notice of is witness testimony that they proceed to mischaracterize. *Compare* ECF 102 at 26 (claiming Banks testified that Border Patrol may destroy property simply "to apprehend a migrant"), *with* ECF 37 at 111 (Banks testified about authority to cut locks on gates "[i]f there's an emergent need"); *see Almaguer v. Chacon*, No. DR-04-cv-023, 2006 WL 8433819, at *5 n.11 (W.D. Tex. Sept. 5, 2006) (refusing at the motion-to-dismiss stage to take judicial notice of witness testimony "subject to reasonable dispute"), *adopted* 2006 WL 8433822 (W.D. Tex. Sept. 15, 2006) (Moses, J.).

would deprive plaintiffs of the protections provided by both Rule 12(b)(6) and Rule 56. *Id.* at 412–13; *see also GLO v. Biden*, 71 F.4th 264, 272–73 (5th Cir. 2023).

This Court should therefore reject Defendants effort to evade Texas's claims both on merits and non-merits grounds by appealing to disputed facts and burdens of proof. "[T]o weigh evidence at the 12(b)(6) stage … is wholly improper under the 12(b)(6) framework." *Ferguson v. Texas Farm Bureau Bus. Corp.*, No. 6:17-cv-00111, 2017 WL 7053927, at *5 (W.D. Tex. July 26, 2017), *adopted*, No. 6:17-cv-111, 2018 WL 1392703, at *2 (W.D. Tex. Mar. 20, 2018). And "an opposing party's version of the facts contradicting the complaint's allegations" may not be considered at this stage. *J&J Sports Prods., Inc. v. Sw. Texas Ent., Inc.*, No. DR-17-cv-045, 2019 WL 1313474, at *4 n.1 (W.D. Tex. Jan. 23, 2019), *adopted*, 2019 WL 2656255 (W.D. Tex. Mar. 27, 2019) (Moses, J.).

Taking Texas's allegations as true, Texas has plausibly alleged its state- and federal-law claims, over which this Court may exercise jurisdiction. The Court should deny Defendants' motion.

## II.  Defendants Conflate the Standards Governing a Motion to Dismiss under Rule 12(b) and a Motion for a Preliminary Injunction Under Rule 65.

The standard to survive "a motion to dismiss is different—and *exceedingly easier* to meet—than the standard to obtain a preliminary injunction." *Future Proof Brands, LLC v. Molson Coors Beverage Co.,* No. A-20-cv-00144, 2020 WL 13883302, at *3 (W.D. Tex. Dec. 15, 2020) (emphasis added). That is, "the standard used by courts to grant a preliminary injunction is much more stringent than the standard used under Rule 12(b)(6), which only requires a plaintiff to allege a plausible claim for relief." *DGG Grp., LLC v. Lockhart Fine Foods, LLC*, No. A-20-cv-330, 2020 WL 2475821, at *4 (W.D. Tex. May 13, 2020) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). In evaluating a Rule 12(b)(6) motion, "the Court does not weigh the evidence or evaluate the plaintiff's likelihood of success." *Id.* "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Barclays Bank PLC*, 594 F.3d at 387 (citing *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir.2000)); *see also Escobar v. City of Del Rio*, No. DR-20-cv-0031, 2023 WL 6465132, at *2 (W.D. Tex. Oct. 2,

2023) (Moses, J.) (noting the same).

Despite the exceedingly easier motion to dismiss standard, Defendants repeatedly ask this Court to dismiss the suit "for the same reason[ing]" it used to deny the preliminary injunction. ECF No. 102 at 27. Defendants argue that since this Court denied the "preliminary injunction because the State is not likely to succeed on its claims," this Court should act "[c]onsistent[ly] with that ruling" and "now dismiss the case for lack of jurisdiction and failure to state a claim." *Id.* at 9.

Defendants seek to rely in improper evidence by conflating the preliminary injunction and motion to dismiss standards. They seek dismissal of "Texas's APA claims in Counts 3 to 5" for "fail[ure] to state a claim" (*Id.* at 25–27), based on "the record developed in this case," which "demonstrates the lack of a final agency action." *Id.* at 23; *see also id.* at 22 (seeking dismissal because Texas failed to "carry this burden" of "demonstrating … the existence of a final rule."). Defendants repeat this error with the *ultra vires* claim: "[i]n refusing to grant a preliminary injunction, the Court concluded that Texas was unlikely to succeed on Count 6, its *ultra vires* claim, because the State had not shown Border Patrol's actions were taken without any authority whatever," and—Defendants argue—this suit "should now be dismissed for the same reason." *Id.* at 27. Conclusive proof is never required at the preliminary-injunction stage, which is "by its very nature … not fixed or final or conclusive." *SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 435 n.8 (5th Cir. Unit A May 1981) (citation omitted). Indeed, because "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," it follows that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Defendants misstate the applicable standard, and the Court should deny their motion.

### III. Texas Has Pled Valid Claims for Conversion or Trespass to Chattels.

#### A. Defendants nowhere contest Texas's allegations or this Court's legal conclusions supporting Texas's state-law claims.

Texas's state-law claims are uncontested. Texas common law furnishes a cause of action for conversion for "the unlawful and wrongful exercise of dominion, ownership, or control by one person over the property of another, to the exclusion of the same rights by the owner." *Pan Am. Petrol. Corp. v. Long*, 340 F.2d 211, 219–220 (5th Cir. 1964). It also furnishes a cause of action for trespass to chattels for wrongfully exercising dominion over the private property of another in a way that causes "actual damage" or "deprives the owner of its use for a substantial period of time." *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex. 1981). Under either tort, the subjective intent of the tortfeasor is irrelevant. *Pan Am.*, 340 F.2d at 220 & n.24. "The important thing is that a property right was violated." *Mountain States Tel. & Tel. Co. v. Vowell Constr. Co.*, 341 S.W.2d 148, 150 (Tex. 1960).

Texas holds a proprietary interest in its c-wire fence. *See, e.g., State v. Cemex Constr. Materials S., LLC*, 350 S.W.3d 396, 398, 409 (Tex. App.–El Paso 2011, pet. granted, judgm't vacated w.r.m.) (conversion claim for construction materials). Yet Defendants "deliberately and intentionally used [wire cutters] in making a cut to the [fence]." *Mountain States Tel.*, 341 S.W.2d at 150. "The [fence] was lawfully in place" on state, municipal, or private land. *See* ECF 23-1 at 6 n.3. So, "[t]he molesting or severing of the [fence] was a violation of a property right which gave rise to a cause of action regardless of negligence." *Mountain States*, 341 S.W.2d at 150. By cutting Texas's c-wire fence, Defendants destroy its utility as a barrier and deprive Texas of its use for a substantial time.

This court explained in its TRO why Texas will likely prevail on its common-law claims. ECF 57 at 13. The Fifth Circuit motions panel agreed. *Texas v. DHS (Motions Panel Opinion)*, 88 F.4th 1127, 1135 (5th Cir. 2023), *vacated without discussion sub nom DHS v. Texas*, 144 S. Ct. 715 (2024) (mem.). Never in this litigation have Defendants contested *any* of that—not after this Court found Texas was likely to prevail and not after the Fifth Circuit motions panel granted an injunction

pending appeal. Even in their emergency filings in the Supreme Court and merits briefing before the Fifth Circuit, Defendants made no effort to show that Texas is unlikely to succeed on the merits of its trespass or conversion claims. At all three levels of federal judicial review, the argument that Defendants' ongoing destruction of Texas's property is an unlawful trespass stands unrefuted. *See* Supplemental Brief for Appellant, *Texas v. DHS*, No. 23-50869, ECF 162 at 29 n.6 (5th Cir. Apr. 29, 2024) (collecting cites and explaining how "Defendants have refused to engage with Texas's arguments under common law").

In their motion to dismiss, Defendants repeatedly point to Texas's acknowledgement that law enforcement may have some leeway to damage property in order respond to an emergency. *See* ECF 102 at 18, 24, 27. That is not an "admission" at all, *contra id.* at 18 n.6, but rather a restatement of common-law rules. As Texas has endeavored to explain repeatedly, "the common-law prohibition against trespass afforded a limited privilege to trespass," including for law enforcement, "for the purpose of rendering life-saving aid." *See, e.g.*, Brief for Appellant, No. 23-50869, ECF 84 at 46 (5th Cir. Jan. 16, 2024). Defendants simply ignore the common law's prohibitions, the privileges it allows, and the limits it imposes on those privileges, insisting on broader destructive authority completely untethered from the common law. Perhaps Defendants continue to ignore the common law (and its privileges) because that body of law disproves Defendants' baseless incantation that there is no readymade set of standards for assessing their (mis)conduct. *Contra* ECF 102 at 25. "To the extent Defendants believe some common-law or statutory privilege justifies their ongoing trespass to someone else's property, the application of tort principles 'involves the sort of routine dispute' that courts regularly decide." ECF 30 at 15 (citing *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018)).

Nor should this Court be misled by Defendants newfound linguistic focus on emergencies. *See* ECF 102 at 17–18 ("emergent need," "exigencies," "emergency assistance," "emergencies"). This Court knows full well that the relief Texas sought under the common law, the relief this Court provided in its TRO, and the relief the Fifth Circuit provided in its injunction pending appeal—*all*

of it accounted for emergencies. This Court found, however, that Defendants' actions could *not* be justified by medical exigency. ECF 57 at 24. It is Defendants alone who insist on the need to destroy the property of another sovereign whenever and wherever they want, anytime they find it convenient: "Far from Texas seeking a 'per se bar' to any tampering with its fence, it is Defendants who seek an order authorizing them to damage the property of others 'without restraint.'" ECF 48 at 12 n.2.

## B. Congress waived the United States' sovereign immunity for Texas's state-law claims.

Federal law waives Defendants' sovereign immunity from Texas's claim for non-monetary relief. The relevant waiver, which Congress added to the APA in 1976, provides:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States in an indispensable party.

5 U.S.C. § 702; *see also* 90 Stat. 2721 (1976). "Though codified in the APA, the waiver [in § 702] applies to any suit, whether or not brought under the APA." RICHARD FALLON ET AL., HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 902 (7th ed. 2015). Section 702's text is clear—"[a]n action in" federal court "seeking relief other than money damages" means any action, whether under the APA, a different statute, or the common law. As the current U.S. Attorney General once put it: "There is nothing in the language of the second sentence of § 702 that restricts its waiver to suits brought under the APA." *Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006) (Garland, J.). The Fifth Circuit, likewise, reads the provision to "generally waive[]" sovereign immunity. *Apter v. HHS*, 80 F.4th 579, 589 (5th Cir. 2023). "Section 702's plain terms waive sovereign immunity for 'any suit' seeking nonmonetary relief in federal court." *Texas v. DHS*, 88 F.4th 1127, 1133 (5th Cir. 2023).

That broad waiver squarely applies to Texas's common-law claims, as the Motions Panel Opinion already held: "Section 702 plainly waives immunity for Texas's trespass to chattels claim.

That claim was brought as '[a]n action' in federal court; it 'seek[s] relief other than monetary damages'; and it 'stat[es] a claim' that a federal agency's officials and employees 'acted or failed to act in an official capacity or under color of legal authority.' Accordingly, Texas's claim 'shall not be dismissed nor relief therein be denied on the ground that it is against the United States.'" *Id.* (quoting 5 U.S.C. § 702). Defendants' sole argument for circumventing that binding legal determination from the Fifth Circuit consists in retreating to an earlier decision that interpreted different language in § 702. *Compare* ECF 102 at 14 (citing *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484 (5th Cir. 2014)), *with Texas*, 88 F.4th at 1134 n.6 (explaining why that decision "is entirely consistent with reading the second sentence of § 702 to waive immunity for any nonmonetary claim").

The Fifth Circuit's conclusion is also consistent with "[n]umerous federal circuits [that] follow this plain-language reading of §702." *Id.* at 1134. Circuits across the country agree that § 702's waiver is broad and must be understood based on its plain terms. *See, e.g., Apter*, 80 F.4th at 589–91 (rejecting effort to narrow §702); *Blagojevich v. Gates*, 519 F.3d 370, 371–72 (7th Cir. 2008) ("Congress has waived sovereign immunity for most forms of prospective relief" because "§ 702 is a law of general application"); *Puerto Rico v. United States*, 490 F.3d 50, 57-58 (1st Cir. 2007) ("This waiver is for all equitable actions for specific relief against a Federal agency or officer acting in an official capacity" (quotation marks omitted)).

As Texas previously explained, at least two circuits have expressly held that § 702's broad waiver applies to state-law claims. *See Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017); *Treasurer of N.J.*, 684 F.3d at 400 n.19. Defendants assert these decisions are "not persuasive" and consist of just "four sentences" of analysis. ECF 102 at 15. But this Court is free to look for itself. Both opinions spend pages reviewing the statutory text, context, and legislative background before reaching the correct result. *See Perry Capital*, 864 F.3d at 617-21; *Treasurer of N.J.*, 684 F.3d at 396–400; *cf. Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 256–58, 263 (1999) (concluding that § 702's waiver barred claims not because they rested on state law, but

because the plaintiff sought monetary relief). Defendants' nitpicking aside, that is two more decisions than Defendants have ever identified for their atextual position that state-law claims are implicitly carved out of § 702.

All Defendants can muster—after ignoring fresh Fifth Circuit precedent and inviting a split with the weight of authority across the country—is a retreat to legislative history. ECF 102 at 14–15. But Section 702's text speaks for itself, and legislative history cannot trump unambiguous text. *See, e.g., Lamie v. U.S. Trustee*, 540 U.S. 526 (2004). In any event, courts have read the legislative record very differently from Defendants: "[T]he House and Senate Reports' repeated declarations that Congress intended to waive immunity for 'any' and 'all' actions for equitable relief against an agency make clear that no [other] limitations were intended." *Trudeau*, 456 F.3d at 187 (citations omitted). Those reports posed three limits on § 702's waiver: "First, the amendment only waives sovereign immunity for actions in a federal court; second, such actions must seek non-monetary relief; and third, it is 'applicable only to functions falling within the definition of "agency" in 5 U.S.C. section 701.'" *Treasurer of N.J.*, 684 F.3d at 400 (citation omitted). "But the House Report does not state that there is a fourth limitation limiting the waiver of sovereign immunity." *Id.*

Next, Defendants turn to a non-binding concurring opinion that did not purport to interpret § 702's waiver of sovereign immunity at all. ECF 102 at 14 (citing *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 854 (D.C. Cir. 2010) (en banc) (Kavanaugh, J. concurring in the judgment)). Then-Judge Kavanaugh's opinion never even cites that provision—which makes sense, given that his concurrence was focused on holding that the plaintiffs in that case did not have a federal cause of action, either in federal common law or implied via the APA.

Defendants also emphasize that waivers are "strictly construed." ECF 102 at 13. But that "misapplies the principle that courts should construe ambiguities strictly in favor of sovereign immunity." *Texas*, 88 F.4th at 1134 (citing *Sebelius v. Cloer*, 569 U.S. 369, 380–81 (2013)). Because there is "no ambiguity" to resolve here, strict construction is inappropriate. *Id.* Nor does it change

things that § 702's language is broad. The Supreme Court enforces immunity waivers that employ "broad language," *United States v. Williams*, 514 U.S. 527, 531–36 (1995), because breadth does not equal ambiguity, *Bostock v. Clayton County*, 140 S. Ct. 1731, 1749 (2020). Indeed, the Supreme Court heard a breach-of-trust claim against the federal government brought by an Indian tribe seeking non-monetary relief—i.e., an accounting of water rights. *Arizona v. Navajo Nation*, 599 U.S. 555, 562–63 (2023). Neither the Supreme Court nor the Ninth Circuit suggested the suit was barred because § 702 fails to expressly provide for common-law claims for breach-of-trust obligations. *See Navajo Nation v. U.S. Dep't of Interior*, 26 F.4th 794, 804 (9th Cir. 2022) (holding § 702's waiver "applied squarely to the Nation's breach of trust claim").

Alternatively, Defendants try a narrower argument, suggesting that § 702 may not apply just to state *tort-law* claims. ECF 102 at 15–16. That limitation appears nowhere in the statutory text, relying instead on the idea that a different federal statute—the Federal Tort Claims Act ("FTCA")—impliedly precludes Texas from seeking injunctive relief. The Motions Panel Opinion rightly rejected that argument, too, because it has "no purchase in the language of the FTCA and has been rejected by [this Court's] sister circuits." 88 F.4th at 1135. Section 702 "requires evidence, in the form of either express language or fair implication, that Congress meant to forbid the relief that is sought." *Michigan*, 667 F.3d at 775. No such inference can fairly be drawn from the FTCA just because it authorizes damages for past torts. That would "read[] too much into congressional silence." *Id.*; *see also B.K.*, 715 F.2d at 727–28.

Historical context, moreover, shows that § 702 was designed to add to and "strengthen th[e] accountability" already provided by the FTCA. H.R. Rep. No. 94-1656, 1976 WL 14066, at *4 (Sept. 22, 1976). Congress, in other words, expected Section 702 and the FTCA to exist side-by-side. Texas need not bring a separate FTCA action for damages every time federal agents wantonly destroy state property. The "indispensable" property right to exclude that America's founders held so dear is not up for forced sale *ad infinitum*. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021). That underscores why the FTCA does not implicitly preclude the claim

under state law here: Texas "is bringing a different claim, seeking different relief, from the kind the [FTCA] addresses." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 222 (2012). That this suit and the FTCA deal with a "similar subject matter" (i.e., torts) "is not itself sufficient" to "trigger a remedial statute's preclusive effect." *Id*. at 223. The FTCA may provide "the exclusive remedy for *compensation* for a federal employee's tortious acts." *McGuire v. Turbo*, 137 F.3d 321, 324 (5th Cir. 1998) (emphasis added). But damages cannot adequately redress ongoing, willful destruction of property. Instead, as this Court has already held at the preliminary-injunction stage, "compensation for past injury cannot adequately redress the prospect of continuing or future harm." ECF 57 at 13 n.7. "[T]he only appropriate remedy would be injunctive relief." *Id*.

Finally, Defendants may argue that the Supreme Court's unexplained order vacating the Fifth Circuit's injunction pending appeal provides a basis to ignore the Motions Panel Opinion's reading of § 702. But as one Justice whom Defendants rely on elsewhere recently explained, a "bare-bones order" in an emergency posture that contains no legal analysis is not precedential and should not "create a lock-in effect" on lower courts. *Labrador v. Poe*, 144 S. Ct. 921, 933–34 (2024) (Kavanaugh, J., concurring). Indeed, the only legal development since this Court's preliminary-injunction order supports Texas's position. *See* Rule 28(j) Letter, *Texas v. DHS*, No. 23-50869, ECF 123 (Feb. 23, 2024). Earlier this year, the Supreme Court rejected the federal government's efforts to evade a statutory waiver of sovereign immunity in a unanimous opinion. In *Department of Agriculture v. Kirtz*, 144 S. Ct. 457 (2024), the Supreme Court concluded it "need look no further" than the plain terms of the Fair Credit Reporting Act's broad immunity waiver. *Id*. at 466–69. In the process, the Court dismissed several arguments like those Defendants make here: it rejected invocation of clear-statement rules as a basis to narrow broad text, *id*. at 469–71; it rejected any reliance on legislative history to cabin the waiver, *id*. at 466, 471; and it rejected the idea that another federal statute impliedly precluded waiver under the FCRA, *id*. at 474. This Court should follow suit and heed the plain text of § 702's unambiguous waiver.

**C. Texas's state-law claims are not barred by intergovernmental immunity.**

Intergovernmental immunity does not grant an unconstrained license to destroy Texas's property, or anyone else's for that matter, within 25 miles of the border with Mexico—an area covering more than 30,000 square miles. Despite Defendants' refusal to acknowledge this simple fact, it remains true that federal agents within a State are generally subject to state law—including criminal law, *United States ex rel. Drury v. Lewis*, 200 U.S. 1, 3, 7-8 (1906); tort law, *Johnson v. Maryland*, 254 U.S. 51, 56 (1920); property law, *Wilkie v. Robbins*, 551 U.S. 537, 560 (2007); and even traffic laws, *Hall v. Virginia*, 105 S.E. 551, 552 (Va. 1921); *North Carolina v. Ivory*, 906 F.2d 999, 1001–02 (4th Cir. 1990); *Sanchez v. United States*, 803 F. Supp. 2d 1066, 1070–71 (C.D. Cal. 2011). As the Motions Panel Opinion held, intergovernmental immunity's exception to that general rule applies only where a state (1) "regulate[s] the United States directly" or (2) "discriminate[s] against the Federal Government or those with whom it deals." 88 F.4th at 1135 (quoting *United States v. Washington*, 596 U.S. 832, 838–39 (2022)).

"Texas is neither directly regulating the Border Patrol nor discriminating against the federal government." *Id.* Texas, just like the United States, holds property "rights [as] an ordinary proprietor" under state law. *Fort Leavenworth Ry. v. Lowe*, 114 U.S. 525, 527 (1885). And it exercises those rights "just as a private party would." *Am. Trucking Ass'ns v. City of Los Angeles*, 569 U.S. 641, 649–50 (2013); *see also Dep't of Revenue v. Kentucky*, 553 U.S. 328, 339 (2008). By bringing its own lawsuit to protect its property interests, the Motions Panel Opinion correctly found, Texas is "exercising its rights only as a proprietor," not as a regulator. 88 F.4th at 1135. And by invoking common-law tort principles that apply to everyone equally, Texas plainly is not "discriminating" against the federal government, as Defendants appear to concede. *Id.*

Defendants nevertheless endeavor to cast as "regulation" any application of state law that they find inconvenient. ECF 102 at 18–21. But this ambitious theory that intergovernmental immunity blows a Supremacy Clause-sized hole through any state law "has been thoroughly repudiated by modern intergovernmental immunity caselaw." *South Carolina v. Baker*, 485 U.S. 505, 520 (1988).

If Texas tort law "indirectly increases costs for the Federal Government," it lawfully "imposes those costs in a neutral, nondiscriminatory way." *Washington*, 596 U.S. at 839. Moreover, Defendants still have never acknowledged (much less disavowed) the troubling but inescapable implications of their position. *See* ECF 48 at 9–10 (hypothesizing that a "CBP officer might find it convenient to assault TMD soldiers based on his opinion that they make his job harder"). Defendants may think any such hypotheticals should be of little concern based on the "presumption" that federal actors are properly discharging their duties. ECF 102 at 18. But that will not always be true. And this Court already found as a factual matter *in this case* that Defendants were "obviously derelict" in carrying out their duties while destroying Texas's property. Intergovernmental immunity does not shield Defendants' conduct from generally applicable tort principles.

### D. The Court should not entertain Defendants' Supremacy Clause and preemption arguments, which fail in any event.

Perhaps recognizing the limits of intergovernmental immunity, Defendants now argue that Supremacy Clause immunity shields their conduct, ECF 102 at 19–20, and that Texas's tort law is preempted, *id.* at 20–21. Those arguments are waived. *See Croy v. United States*, --- F. Supp. 3d ---, 2023 WL 6393888, at *3 (W.D. Tex. 2023) (Moses, C.J.) (explaining that arguments not raised at earlier stage of district court litigation may be deemed waived). Before this Court, Defendants expressly disavowed reliance on preemption principles generally and on federal immigration authority under *Arizona v. United States*, 567 U.S. 387 (2012), in particular. ECF 37 at 55-56. Defendants insisted that this case is "better" classed under the intergovernmental-immunity heading. *Id.* at 56. In fact, Defendants did not use either the word "preemption" (or any variant of that word) or the term "Supremacy Clause immunity" in their district-court opposition to Texas's preliminary-injunction motion, ECF 23-1; their district-court supplemental brief on Texas's APA claims, ECF 47; or their district-court opposition to Texas's emergency motion for an injunction pending appeal, ECF 60.

Even if Defendants could theoretically resurrect for purposes of this motion to dismiss arguments that they previously disavowed at the preliminary-injunction stage, this Court should still refuse to entertain them. Basic principles of equitable estoppel prohibit a litigant from taking inconsistent positions during litigation. *See* 18B WRIGHT & MILLER, FED. PRAC. & PROC. § 4477.1 (3d ed.). Those principles unquestionably apply to litigation between two sovereigns, "in which each owes the other a full measure of respect." *New Hampshire v. Maine*, 532 U.S. 742, 755–56 (2001). This Court should not allow Defendants to continue sandbagging Texas and this Court, especially after Defendants repeatedly injected extra-record facts after the Court's preliminary-injunction record had closed.

These doctrines do not help Defendants in any event. "[N]o federal statute declares—either expressly or impliedly—that property rights vanish at the border." *See* Reply Brief for Appellant, *Texas v. DHS*, No. 23-50869, ECF 120 at 15–18. The only law that is even arguably relevant, 8 U.S.C. § 1357(a)(3), authorizes federal agents acting without a warrant "within a distance of twenty-five miles from [the border] to have access to private lands, not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States." This exception to the warrant requirement is not a roving license to destroy property. On its face, it nowhere allows federal officials to destroy property when they have no need to do so. As this Court already found, and as Texas's complaint alleged, "Defendants cannot justify cutting or moving the Plaintiff's fence whenever and wherever they find convenient based on a supposed need to access the river by boat and foot so they may passively observe migrants crossing." ECF 57 at 26. Otherwise, Defendants would have *carte blanche* to destroy every fence in a 30,000-square-mile area. Congress has never authorized federal agents to preemptively destroy every fence in an area roughly the size of South Carolina even when they already have access to the property. *Cf. West Virginia v. EPA*, 142 S. Ct. 2587, 2608–09 (2022).

Finally, it would make little sense to dismiss Texas's state-law claims based on Defendants' invocation of the "supremacy" of those federal laws they are committed to ignoring. This Court

already found that, despite Defendants pointing to authority to apprehend and inspect aliens under 8 U.S.C. § 1225 and § 1226, ECF 102 at 16–17, Defendants' "'inspection' and 'apprehension' practices, or lack thereof," were "illusory," ECF 57 at 28. And far from seeking to prevent illegal crossings or to re-direct aliens to a lawful (and safe) port of entry, ECF 102 at 17, Defendants were making "no attempt to prevent" illegal entries, ECF 57 at 24. Instead, Defendants "seek to establish an unofficial and unlawful port of entry" near "a particularly dangerous stretch of the river." *Id.* at 27–28. The Court was correct that waving illegal crossers deeper into the United States "without a single question or even a hello from a Border Patrol agent" is not enforcing the immigration laws. ECF 37 at 200. Those are all consistent with the allegations in Texas's complaint. *See* Complaint ¶¶ 8–9, 46–65. They are now the findings of this Court.

## IV. Texas Has Pled Valid Claims that Defendants Violated the APA.

### A. Texas has adequately alleged final agency action.

Texas has alleged both the existence of final agency action and a policy. Final agency action (1) marks the consummation of the agency decisionmaking process and (2) determines legal rights or obligations. *Data Mktg. P'ship v. DOL*, 45 F.4th 846, 853 (5th Cir. 2022). Defendants cannot deny that their policy to destroy Texas's property as they see fit marks the consummation of the agency's decision-making process. As Texas's mangled fencing attests, "it is 'not subject to further Agency review.'" *Data Mktg. P'ship*, 45 F.4th at 853 (citation omitted).

In Defendants' view, the policy is not final until a particular border agent executes it by cutting Texas's fence. But every policy must be implemented. Guidance ending the Migrant Protection Protocols in *Biden v. Texas*, for example, had to be carried out by DHS staff, yet the guidance "resulted in 'rights and obligations [being] determined.'" 597 U.S. 785, 808 (2022) (citation omitted).

Unwritten policies are not insulated from judicial review. *Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457, 479 (2001) ("Though the agency has not dressed its decision with the conventional procedural accoutrements of finality, its own behavior thus belies the claim that its interpretation

is not final."); *see Gomez v. Trump,* 485 F.Supp.3d 145, 193 (D.D.C. 2021) ("cluster of guidance documents, cables, and directives, have ordered consular offices and embassies to cease processing and issuing visas for otherwise qualified applicants" constitutes final agency action).

Even Defendants' motion to dismiss makes plain they believe themselves entitled to cut Texas's wire whenever and wherever along the border they see fit. ECF 102 at 3 ("Border Patrol has cut or moved this wire on occasion to reach migrants"), 8 ("federal law authorized Border Patrol agents to cut or move concertina wire to carry out their duties"), 10 ("[federal statutes] permit Border Patrol to cut or move Texas's concertina wire"; "Border Patrol agents have accordingly cut or moved the wire to carry out their statutory duties"; and claiming Border Patrol's wire-cutting is entitled to a "presumption of regularity"); 24 n.7 (Del Rio Sector guidance permits cutting even "where exigencies do not exist"). Defendants cannot, paragraphs later, credibly deny the existence of this policy—nor do they seriously try. Defendants vaguely suggest that Texas's detailed complaint fails to allege agency action, and quickly pivot to discussing Defendants' favorite parts of the preliminary injunction record. For the reasons discussed above, Defendants may not rely on that record.[3]

Even if the Court were to consider the factual record, it does not help Defendants. Other courts have found a defendant agency's behavior relevant to inferring the existence of a policy. In *U.S. Gypsum Co. v. Muszynski*, 161 F. Supp. 2d 289 (S.D.N.Y. 2001) (Rakoff, J.), the plaintiff requested judicial review of an EPA policy preventing the plaintiff from receiving a permit. The EPA moved to dismiss the action for lack of subject matter jurisdiction, arguing no a lack of final agency action. *Id.* at 290. In denying EPA's motion, the court held that despite the agency's disclaimer of its

---

[3] Regardless, the Court's preliminary-injunction opinion emphasized its view that "Plaintiff ha[d] not, *at this preliminary stage*" demonstrated final agency action, ECF 57 at 33 (emphasis added), and noted that "the Court does not suggest that the Plaintiff *cannot* establish final agency action when this case proceeds to be heard on the merits" and "[d]iscovery may produce information" showing final agency action, which was only unavailable due to the "early stage of the case." *Id.* (emphasis in original).

former policy, an agency's "'own behavior may belie the claim that its interpretation is not final.' … Ultimately, where an agency's decision is given practical effect, it will be sufficient to trigger judicial review." *Id.* at 291 (alterations adopted) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 479 (2001)). Here, the Eagle Pass policy is evidenced by the actions on the ground there.

Defendants have repeatedly articulated the contents of a policy specific to Eagle Pass. Defendants cannot have their cake and eat it, too: They responded to various media inquiries by saying that they were following a policy in Eagle Pass, *see* ECF 27-1 at 17, and testified to the same. Tr. 137–140, ECF 23-2 (BeMiller Decl. ¶¶ 5–6, 19), and the Court should take them at their word.

Defendants' half-hearted defense of their no-policy argument continues in a footnote that suggests the Court dismiss Texas's complaint because there is no written policy. ECF 102 at 16 n.7. Defendants likely chose not to brief this issue more fully because it is plainly contrary to prevailing precedent. *Bhd. of Locomotive Eng'rs & Trainmen v. FRRA,* 972 F.3d 83, 100 (D.C. Cir. 2020) (collecting cases holding that "[a]gency action generally need not be committed to writing to be final and judicially reviewable"); *accord Rosa v. McAleenan,* No. 1:19-cv-00138, 2019 WL 5191095, at *19 (S.D. Tex. Oct. 15, 2019) (Rodriguez, J.) (same); *Velesaca v. Decker,* 458 F.Supp.3d 224, 237 n.7 (S.D.N.Y. 2020) ("[A] number of cases have involved courts inferring from a course of agency conduct that the agency has adopted a general policy, even in the face of agency denials of such policies existing."); *Amadei v. Nielsen*, 348 F. Supp.3d 145, 165 (E.D.N.Y. 2018) ("[N]umerous courts have found that a plaintiff can satisfy the [APA's] finality requirement without offering evidence of a formal or official statement regarding the agency's position."). *De La Mota v. U.S. Dep't of Educ.*, No. 02-cv-4276, 2003 WL 21919774, at *8 (S.D.N.Y. Aug. 12, 2003) ("[I]t is of no moment that the agency action here came in the form of an 'informal' email correspondence between a DOE employee and the law schools and plaintiffs. The practical effect of the DOE's action, not the informal packaging in which it was presented, is the determining factor in evaluating whether the DOE's action was 'final.'"); *Her Majesty the Queen in Right of Ontario v. EPA*, 912 F.2d 1525, 1531 (D.C. Cir. 1990) (finding that "the absence of a formal

statement of the agency's position, as here, is not dispositive"); *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 929 (D.C. Cir. 2008) (concluding that "the record" as a whole "leaves no doubt" that a policy exists, even though "the details … are still unclear"); *R.I.L-R v. Johnson*, 80 F.Supp.3d 164, 184 (D.D.C. 2015) ("Agency action, however, need not be in writing to be final and judicially reviewable."); *Grand Canyon Tr. v. Pub. Serv. Co. of N.M.*, 283 F.Supp.2d 1249, 1252 (D.N.M. 2003) (holding that "[b]oth law and logic" dictate that an unwritten agency policy is reviewable).

**B. Destruction of Texas's fence is not committed to agency discretion by law.**

Defendants have also argued that, even if final, its wire-cutting policy is "committed to agency discretion by law." ECF 102 at 16 (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). Yet "[t]he general exception to reviewability provided by § 701(a)(2) for action committed to agency discretion remains a narrow one," *Texas v. United States*, 809 F.3d 134, 166 (5th Cir. 2015) (citation omitted), and Defendants do not explain why it applies here. Cutting Texas's fence is nothing like decisions typically deemed committed to agency discretion. No agency has "refus[ed] to institute investigative or enforcement proceedings." *Id.* (citation omitted). Short of that, the Supreme Court routinely rejects such self-serving claims of agency discretion. *See, e.g., DHS v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1905–07 (2020); *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2568 (2019); *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370–372 (2018).

Rejecting that argument is even easier here because there clearly *is* "law to apply." *Texas*, 809 F.3d at 165. Texas tort law defines Texas's property rights. Defendants' argument that federal agents must make on-the-spot judgments proves the point: the common-law prohibition against trespass afforded a limited privilege to trespass for purposes of rendering life-saving aid. TEX. PENAL CODE § 9.22 (codifying the necessity defense). But that privilege, even when exercised by federal agents, could not justify destroying property absent exigency on the theory that there *might* be some future exigency. Centuries of tort law thus foreclose the very questions that Defendants

suggest are unanswerable. In any event, any agency action, "can be reviewed to determine whether the agency exceeded its statutory powers." *Texas*, 809 F.3d at 166 (citation omitted).

Congress has never granted Defendants *unreviewable* authority to destroy Texas's property. Defendants cannot override the "presumption of reviewability," *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020). Nor is Defendants' policy an unreviewable lack of enforcement under 5 U.S.C. § 701(a)(2). Agency rules—as opposed to "orders" or "one-off nonenforcement decisions"—do not *ever* fall within the APA's unreviewability provision. *Texas v. Biden* (*MPP*), 20 F.4th 928, 983–84 (5th Cir. 2021), *rev'd on other grounds*, 597 U.S. 785 (2022). Because the challenged rule here does not involve mere "nonenforcement decisions," but affirmative agency action destroying Texas's property, it does not involve "the executive's longstanding, common-law-based discretion to do nothing in a particular case." *Id.* at 982 (emphasis added).

### C. Texas has pled violations of the APA.

Texas has properly pled its APA claims. Defendants continue deny that their admitted policy "within Eagle Pass" of permitting the destruction of Texas's fence constitutes final agency action. ECF 102 at 17–18. But Defendants cannot credibly argue that no such policy exists, or that the Complaint fails to allege sufficient facts; Defendants have admitted their policy is permissive cutting of Texas fencing "without restraint." Nov. 14, 2023, Tr. at 207:11-12. That is classic final agency action: an agency's binding interpretation of its own statutory authority. Discovery will likely reveal additional details. That Defendants have not published their policy does not prevent review. *See, e.g., Bd. of Locomotive Eng'rs & Trainmen v. FRRA*, 972 F.3d 83, 100 (D.C. Cir. 2020); *see generally Dep't of Com. v. New York*, 139 S. Ct. 2552, 2575 (2019) (explaining that courts are "not required to exhibit a naiveté from which ordinary citizens are free") (citation omitted).

Texas has properly pled that Defendants' policy is subject to notice and comment requirements. The challenged policy is a "rule" because it is "an agency statement of general … applicability and future effect" that either "prescribes law or policy" or at the very least "describes the organization, procedure, or practice requirements" of the agency." 5 U.S.C. § 551(4).

Defendants' policy is a substantive rule requiring notice and comment. The challenged rule satisfies the test for a substantive rule, and thus could not fall within the exceptions for policy statements, interpretive rules, or procedural rules; that test is similar to that for final agency action. *See Texas v. United States*, 40 F.4th 205, 228–29 (5th Cir. 2022) ("For the same reasons articulated [earlier in the opinion finding final agency action], the Final Memo is much more substantive than a general statement of policy and, as such, it had to undergo notice and comment procedures."); *Texas v. United States*, 555 F. Supp. 3d 351, 429 (S.D. Tex. 2021) (noting similarity between two tests), *appeal dismissed,* No. 21-40618, 2022 WL 517281 (5th Cir. Feb. 11, 2022).

"Substantive rules" produce "significant effects on private interests." *Texas v. United States* ("*DACA*"), 50 F.4th 498, 522 (5th Cir. 2022). The Fifth Circuit found the policy in *DACA* to be a substantive rule even though it required no action from Texas and did not threaten enforcement. *See id.* at 522–24. Aside from the effects on the aliens themselves, cutting Texas's wire fence obviously has significant effects on the State, including the costs to repair, the social service costs due to increased flow of aliens, and the conflict of a federal agency destroying another sovereign's property. The Eagle Pass policy was required to be published in the Federal Register as a substantive rule and subject to public inspection and comment. Because it was not, it is unlawful.

Finally, Defendants' policy is arbitrary and capricious. "*[P]ost hoc* rationalizations" cannot be used to defend against a claim of arbitrary-and-capricious agency action. *Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*, 16 F.4th 1130, 1136 (5th Cir. 2021). Instead, "[a]n agency must defend its actions based on the reasons it gave when it acted." *OnPath Fed. Credit Union v. United States Dep't of Treasury, Cmty. Dev. Fin. Institutions Fund*, 73 F.4th 291, 298 (5th Cir. 2023) (quoting *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020)). Courts "may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 135 S. Ct. 2699, 2712 (2015) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). Defendants offer no reasoned explanation on these points made when the agency acted. *See Sprint Nextel Corp. v. FCC*, 508 F.3d 1129, 1132 (D.C. Cir. 2007) ("We … require more than a result; we

need the agency's *reasoning* for that result." (emphasis added)). "[A] regulation is arbitrary and capricious if the agency failed to consider an important aspect of the problem," which "includes … considering the costs and benefits associated with the regulation." *Mexican Gulf Fishing Co. v. United States Dep't of Com.*, 60 F.4th 956, 973 (5th Cir. 2023).

Defendants offer no basis for their policy. Instead, they point to a single paragraph in the Complaint where Texas pleads the legal element of arbitrary and capriciousness, calling it "deficient on [its] face." ECF 102 at 26. This is misleading (at best). Texas pleads at length that, *inter alia*: TMD documented at least 20 incidents when CBP officials damaged Texas's fencing; a CBP spokesman announced that federal agents were entitled to destroy state property to admit illegal aliens; CBP's damage to Texas's fencing increased in September and October of 2023; on just one occasion alone, CBP cut Texas's fencing to admit over 1,200 illegal aliens; and CBP later doubled down on its policy as evidenced by its cutting Texas's fencing more times in a the 30-day period beginning in September 2023 than in the preceding eight months combined. ECF 1, ¶¶ 51, 52, 53, 54, 55, 58.

## V.    Texas Has Pled a Valid *Ultra Vires* Claim.

Texas has properly pled its *ultra vires* claims. Defendants' argument that no *ultra vires* claim may survive against an agency for exceeding the limited scope of its authority is not the law.

Defendants attempt to distinguish *Apter v. HHS* by arguing that case applies only to claims against agency acts unauthorized "under any circumstances." 80 F.4th 579 (5th Cir. 2023); *see* ECF 102 at 27. But *Apter* described *ultra vires* claims thus: "where the officer's powers are limited by statute, *his actions beyond those limitations are considered individual and not sovereign actions*." 80 F.4th at 587 (internal quotations omitted) (emphasis added). *Apter* continued, "[s]uch actions are … [beyond] his authority and therefore may be made the object of specific relief." *Id*. (cleaned up).

The existence of a policy or final agency action is irrelevant to Texas's *ultra vires* claim. Only "agency action" is necessary, and "virtually every statement an agency may make" suffices. *Apter*, 80 F.4th at 590 (citation omitted). *Apter* held that FDA social-media posts giving medical advice

to the public constituted "agency action" because they announced "principle[s] of general applicability and future effect." *Id.* (citation omitted). Specifically, the posts "directed consumers to take specific actions in keeping with the generally applicable principle that FDA had settled on and announced." *Id.* at 591.

Congress directed Defendants to control and guard U.S. borders against illegal entry—not to facilitate illegal entry by destroying the property of another sovereign. *See* 6 U.S.C. §§ 202(5), 211(c)(2), (5), (6), (8), (e)(3). Defendants' conduct directly contravenes their statutory obligations.

Defendants correctly quote *Danos v. Jones*, stating that an *ultra vires* claim must "do more than simply allege that the actions of the officer are illegal or unauthorized": it must "allege facts sufficient to establish that the officer was acting 'without any authority whatever,' or without any 'colorable basis for the exercise of authority.'" 652 F.3d 577, 583 (5th Cir. 2011) (citations omitted). So, too, here.

Defendants cite statutory authority to inspect, apprehend, and detain noncitizens; but they identify no colorable authority to cut fences just to "passively observe migrants crossing." ECF 57 at 26. *Apter* explained that "while FDA cites plenty of statutory authority allowing it to issue *information*, it never identifies even colorable authority allowing it to make medical *recommendations.*" 80 F.4th at 589. The issue is not whether Defendants were "clothed with [government] authority," *Monroe v. Pape*, 365 U.S. 167, 184 (1961), when they cut Texas's fences, but whether they acted in accordance with federal law.

In all events, Defendants ignore the Court's discretion to fashion equitable relief, including appropriate prophylactic relief. *See e.g., Schenck v. Pro-Choice Network of W. N. Y.*, 519 U.S. 357, 381–82 (1997). Defendants' arguments thus speak to the scope of relief rather than to Rule 12 dismissal.

## VI.    There Is No Statutory Bar to Injunctive Relief Here.

Defendants invoke 8 U.S.C. § 1252(f)(1), a remedial bar in the INA. ECF 102 at 28. Section 1252(f)(1) strips lower federal courts of "jurisdiction or authority to enjoin or restrain the

operation" of certain provisions in Title 8 governing inspection, apprehension, and removal of aliens. But Defendants have already waived reliance on § 1252(f)(1). On October 30, 2023, the district court entered a TRO. On November 21, Defendants agreed to extend it. ECF 57 at 5 ("Following the virtual conference, the Court ordered that the TRO be extended to November 29, 2023, at 11:59 p.m. on consent of the parties."). Defendants' voluntary submission to an injunction in this very case is a telltale sign that they previously harbored no doubts about § 1252(f)(1)'s inapplicability. And because § 1252(f)(1) does not go to subject-matter jurisdiction, *see, e.g., Biden v. Texas*, 597 U.S. 785, 798 (2022), a party may waive its applicability in a particular case, including by agreeing to a court order contrary to its terms. Rather than limiting a court's power to adjudicate a given claim, § 1252(f)(1) just restricts access to "a specific category of remedies," *Biden v. Texas*, 597 U.S. 785, 798 (2022), and Defendants have already consented to be subject to those remedies.

In any event, Texas has never sought to enjoin Defendants from carrying out their responsibilities under a covered provision of the INA (or any provision of the INA for that matter) based on differing understandings of what those responsibilities entail. Instead, it sought an order to protect its own property interests under Texas tort law. That kind of order—one permitting Defendants to apprehend, process, and transfer aliens to their hearts' content but barring them from wantonly destroying property in the process—would have, at most, a "collateral effect" on Defendants' enforcement of immigrations laws. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 553 n.4 (2022).

Defendants respond, ECF 102 at 28, that Texas's requested relief is a veiled attempt to compel the federal government to enforce the immigration laws in contravention of *Garland v. Aleman Gonzalez*, 596 U.S. 543, 552–54 (2022). But Texas's desire to see Defendants fulfill their statutory mandates does not bear on the State's entitlement as an ordinary property owner to protection from unlawful trespass. Texas seeks only to protect its property rights. An injunction would accomplish that goal with, at most, only a "collateral effect" on Defendants' Title 8 responsibilities. *Id.* at 553 n.4.

*Aleman Gonzalez* is clear that ancillary repercussions are not sufficient to trigger § 1252(f)(1). Indeed, it approvingly cites a case where an injunction only was "one step removed" from the operation of covered provisions. 596 U.S. at 553 n.4 (citing *Gonzalez v. DHS*, 508 F.3d 1227, 1233 (9th Cir. 2007)). The order at issue there enjoined the unlawful application of an INA provision governing alien status adjustments. *Gonzalez v. DHS*, 508 F.3d at 1233. Although the adjustment-of-status provision was not itself covered by the INA's remedial bar, the order's practical effects would include the commencement of removal proceedings under a provision that *was* covered. *Id.* The Ninth Circuit nevertheless correctly held § 1252(f)(1) inapplicable because removal proceedings were just a "collateral consequence" of the district court's order. *Id.* Here, the possibility that Texas's requested relief might impact Defendants' Title 8 authority is even more attenuated.

Regardless, even if Defendants' interpretation were correct, § 1252(f)(1) could not be a basis for successful dismissal of a claim as "an injunction is not a cause of action." *Novedea Sys., Inc. v. Colaberry, Inc.*, No. 6:20-cv-180, 2020 WL 9211073, at *2 (E.D. Tex. Dec. 11, 2020); *see also Jones v. Wells Fargo Bank, N.A.*, No. 5-14-cv-943, 2015 WL 12734177, at *4 (W.D. Tex. Jan. 21, 2015). Even if a motion to dismiss could dismiss a remedy requested, Plaintiff has requested relief that is unquestionably not subject to 1252(f)(1). *See* ECF 1 at 29 (requesting stay of agency action and vacatur under APA and declaratory relief). Stays and vacatur are not subject to 1252(f)(1). A stay is not an injunction. *Texas v. Biden*, 646 F. Supp. 3d 753, 769 (N.D. Tex. 2022). Recent Fifth Circuit precedent confirms vacatur is not precluded either. *See All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 254 (5th Cir. 2023) ("In the same way that a preliminary injunction is the temporary form of a permanent injunction, a stay [under § 705] is the temporary form of vacatur."); *Texas v. United States (DACA)*, 50 F.4th 498, 528 (5th Cir. 2022) ("As an initial matter, § 1252(f)(1) does not apply to vacatur."). Same for declaratory relief. *See Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011). This construction is consistent with the Supreme Court's most recent pronouncement on the question. *See Biden*, 597 U.S. at 800 (describing how, in *Nielsen v. Preap*, 139 S. Ct. 954 (2019),

24

the Court "proceeded to reach the merits of the suit, notwithstanding the District Court's apparent violation of section 1252(f)(1), by reasoning that '[w]hether the [District] [C]ourt had jurisdiction to enter such an injunction is irrelevant because the District Court had jurisdiction to entertain the plaintiffs' request for declaratory relief'") (alterations in original) (quoting *Preap*, 139 S. Ct. at 962)

CONCLUSION

The Court should deny Defendants' motion to dismiss.

Dated: May 2, 2024.                     Respectfully submitted.

**KEN PAXTON**                           */s/ Ryan D. Walters*
Attorney General of Texas                **RYAN D. WALTERS**
                                         Chief, Special Litigation Division
                                         Texas Bar No. 24105085
**BRENT WEBSTER**
First Assistant Attorney General
                                         **RYAN G. KERCHER**
                                         Deputy Chief, Special Litigation Division
**RALPH MOLINA**                         Texas Bar No. 24060998
Deputy Attorney General for Legal Strategy

                                         **DAVID BRYANT**
                                         Senior Special Counsel
                                         Texas Bar No. 03281500

                                         **SUSANNA DOKUPIL**
                                         Special Counsel
                                         Texas Bar No. 24034419

                                         **MUNERA AL-FUHAID**
                                         Special Counsel
                                         Texas Bar No. 24094501

                                         **JACOB E. PRZADA**
                                         Special Counsel
                                         Texas Bar No. 24125371

                                         Office of the Attorney General
                                         Special Litigation Division
                                         P.O. Box 12548, Capitol Station
                                         Austin, Texas 78711-2548
                                         (512) 936-1706
                                         Ryan.Walters@oag.texas.gov
                                         Ryan.Kercher@oag.texas.gov
                                         David.Bryant@oag.texas.gov
                                         Susanna.Dokupil@oag.texas.gov
                                         Munera.Al-Fuhaid@oag.texas.gov
                                         Jacob.Przada@oag.texas.gov

                                         **COUNSEL FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on May 2, 2023, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/Ryan D. Walters*
RYAN D. WALTERS