**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

| | |
|---|---|
| THE STATE OF TEXAS,<br>*Plaintiff,*<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*<br>*Defendants.* | NO. 2:23-CV-00055-AM |

**RESPONSE TO FILING BY**
**GENERAL COUNSEL OF THE OFFICE OF THE GOVERNOR**

The parties to this litigation—the State of Texas, represented by its Attorney General, and the United States of America, represented by its Attorney General—have agreed to the terms of a settlement. The only reason that this settlement has not been finally memorialized and the case resolved has been the efforts of the General Counsel of the Governor to involve himself in a case in which the Governor is not party.

The General Counsel has now made an unauthorized appearance on behalf of the State of the Texas—an entity he has no authority to represent in litigation—and has filed a brief with this Court purporting to set forth the State's views. Not only does this brief conflict with the State's actual position, as set forth below by its authorized counsel, but its view of executive authority conflicts with the text, structure, and history of the Constitution of 1876 and precedent under it.

The General Counsel cites only a single purported example supporting his theory of executive authority. *See* ECF No. 169 at 5 (citing *Steward et al v. Abbott et al*, ECF No. 180, No. 5:10-cv-01025 (W.D. Tex. Aug. 26, 2013)). But the General Counsel's description of the case is incorrect: Governor Perry did not sign the settlement "as the State's chief diplomatic officer," ECF No. 169 at 6, but because Governor Perry *was a defendant*. This Court need look no further than the caption:

> ERIC STEWARD, *et al.*,
> *Plaintiffs*
> v.
>
> RICK PERRY, Governor of the State of Texas, *et al.*,
> *Defendants*

Interim Settlement Agreement at 1, *Steward et al v. Abbott et al*, ECF No. 180, No. 5:10-cv-01025 (W.D. Tex. Aug. 26, 2013); *see also id.* ("Defendants are . . . Rick Perry, in his official capacity as Governor of The State of Texas"). The signature was on behalf of the Governor of Texas *as a defendant*, not on behalf of the State. *Id.* at 22. The case offers no support for the General Counsel's view of executive authority.

To be clear, the Governor can reach any separate agreement he wishes with the United States regarding how settlement of this case will be "operationalize[d]," ECF No. 169 at 5, but the Governor can neither compel nor prevent the Attorney General from settling the State's claims, the Attorney General's constitutional duty.

The General Counsel has no authority to represent the State in litigation. His unauthorized appearance and filing should be struck and his legal theory disregarded. This Court should reaffirm that the parties to this case have every right to settle it without the involvement of non-parties.

## I. The State of Texas Does Not Have a Unitary Executive Branch.

The premise of the General Counsel's brief—that the Governor is "the only official authorized to bind Texas" in this matter, ECF No. 169 at 1—conflicts with the structure of the Executive Department set forth in the Texas Constitution of 1876.

The Texas Constitution operates differently than the Constitution of the United States: "[T]he Texas Constitution does not vest the executive power solely in one chief executive." *In re Abbott*, 645 S.W.3d 276, 280 (Tex. 2022). "[T]he executive power is spread across several distinct

elected offices." *Id.* Put simply, "Texas does not have a unitary executive." *State v. Volkswagen Aktiengesellschaft*, 692 S.W.3d 467, 473 (Tex. 2022).

This design was a conscious and deliberate choice. The current Constitution was adopted in 1876, the fifth in a series that included the Reconstruction-era constitutions of 1866 and 1869. Authority within the Texas Executive Department was "deliberately 'fractured.'" *Saldano v. State*, 70 S.W.3d 873, 877 (Tex. Crim. App. 2002). "[I]nfluenced by the political philosophy of the Jacksonian era and the despotic control of the reconstruction governor," the framers "deliberately chose to decentralize executive authority." *Id.* The Constitution "in effect creates a separation of powers within the executive department itself." *Id.* n.11.

Where other States vest executive authority "in the governor," Texas allocates separate executive authority among "the magistracy composing the executive department." *Bledsoe v. Int'l R. Co.*, 40 Tex. 537, 566 (1874) (discussing the Constitution of 1869). The current Constitution divides the Executive Department among six officials, each with independent constitutional authority: the Governor, who shall be the Chief Executive Officer of the State, the Lieutenant Governor, Secretary of State, Comptroller of Public Accounts, Commissioner of the General Land Office, and Attorney General. Tex. Const. art. IV, § 1; *see also Paxton v. Am. Oversight*, 716 S.W.3d 535, 542–43 (Tex. 2025) (discussing "the officers of the Executive Department enumerated in the Constitution"). The Governor is the Chief Executive Officer, Tex. Const. Art. IV, but executive authority is distributed by constitutional mandate among five other officers and creates "boundaries of power . . . between the different offices composing the executive department." *Bledsoe*, 40 Tex. at 566. The purpose and effect of this division of responsibility is a weaker governor, a natural response to the experience of Texas under the reconstruction governorship.

The interpretive commentary[1] explains the history behind this provision:

> The framers of the Constitution of 1876 . . . were determined to cut down still further on the governor's power so as not to see a future renewal of his despotic

[1] Although not binding, the interpretive commentary "demonstrate[s] the prevailing understanding" of the Texas Constitution. *In re Abbott*, 628 S.W.3d 288, 294 n.7 (Tex. 2021).

> control over state administration. Hence, they adhered to the executive department principle and the decentralization of authority, and further made all the officials but the secretary of state independent of the governor and dependent only on the electorate.

Tex. Const. art. IV, § 1, interp. commentary. The Texas Constitution "establishes a plural executive, . . . mak[ing] for a separation of powers within the executive department itself." *Id.*

For this reason, "[a]ctors within the [Texas] executive branch. . . are not interchangeable and cannot be considered alter egos of one another." *State v. Volkswagen Aktiengesellschaft*, 692 S.W.3d 467, 474 (Tex. 2022). When the State is sued, plaintiffs "must seek relief against the particular government official or agency responsible for the challenged action." *In re Abbott*, 645 S.W.3d 276, 280 (Tex. 2022). "Suits against the State do not sweep in every officer operating under the State's authority; rather, a plaintiff must identify and name the officer or agency with authority to enforce the challenged law." *State v. Zurawski*, 690 S.W.3d 644, 659 (Tex. 2024).

Indeed, even where the Governor appoints officers for state agencies, "the state agencies' enabling statutes rarely give the Governor formal control over the officers' decisions once appointed." *In re Abbott*, 645 S.W.3d at 280 n.1. There are a "wide variety of state agencies . . . whose animating statutes do not subject their decisions to the Governor's direct control." *Id.* at 280. The Governor does not "ha[ve] statutory authority to directly control DFPS's investigatory decisions." *Id.* at 281; *see also id.* at 283 (holding that "the Governor lacks the authority to investigate or prosecute" reports of abuse).

In the same way that the Attorney General cannot intrude on the exclusive powers of the Governor (or other constitutional executive officials), the General Counsel is wrong to suggest that the Governor can intrude on the exclusive constitutional authority of the Attorney General.

## II. The Attorney General, as Chief Legal Officer, Exercises Exclusive Authority and Broad Discretion in Representing the State in Litigation.

"Like the common-law attorney general, the Texas attorney general 'is the chief law officer of the State.'" *Webster v. Comm'n for Lawyer Discipline*, 704 S.W.3d 478, 495 (Tex. 2024) (quoting *Agey v. Am. Lib. Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943)); *see also* Tex. Const. art. IV, § 22,

interp. commentary ("The attorney general is the chief law officer of the state[.]"). The duties of the Attorney General "remain 'multifarious, neces[s]arily involving at all times the exercise of broad judgment and discretion.'" *Webster*, 704 S.W.3d at 495 (quoting *Charles Scribner's Sons v. Marrs*, 262 S.W. 722, 727 (Tex. 1924)).

Because of the non-unitary structure of the Executive Department, the duties of the Attorney General vary significantly depending on whether he is representing another state official or agency or instead is exercising his independent constitutional authority. The General Counsel's brief asks this Court to overlook the well-established distinction between these circumstances.

Other than agencies established by the Texas Constitution, a contract for legal services with a state agency must be approved by the Attorney General to be valid. Tex. Gov't Code § 402.0212(a). When the Attorney General denies approval for an outside counsel contract, the Attorney General "shall provide legal services for [the] state agency." *Id.*

When the Attorney General acts as counsel to another state official or agency, he owes that client the ordinary duties of counsel. The Texas Supreme Court has explained that "when a statute confers a right upon the Attorney General to represent an agency, it imposes a corollary duty, and the agency has every right to expect the same diligent and faithful representation as any other 'client.'" *Pub. Util. Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 125 (Tex. 1988); *see also id.* ("the Attorney General has the right and duty to *represent* the state agencies"); *id.* (noting the "duty to *represent* the agency"). *Cf.* ECF No. 169 at 7 (citing Texas Disciplinary R. Prof'l Conduct 1.02(a)).

The Fifth Circuit applied this principle in *League of United Latin Am. Citizens v. Clements*, 999 F.2d 831 (5th Cir. 1993). There, although Chief Justice Phillips, a defendant, objected to the settlement, Attorney General Morales "argue[d] that these non-consenting parties are no obstacle" because "in his role as lawyer for the State, . . . he can ignore [the officials he represents] and impose his own views." *Id.* at 840. The Fifth Circuit explained that "the Attorney General cannot bind state officials, his clients, to his own policy preferences." *Id.* "No lawyer may forge a settlement agreement over the express objection of his client." *Id.* at 842. Like other lawyers, the

Attorney General "cannot ignore his clients" when he represents state officials or a state agency. *Id.* at 843.

This principle readily explains *Steward v. Abbott*, on which the General Counsel mistakenly relies.[2] In that case, Governor Perry was a defendant represented by then-Attorney General Abbott and his office. *See, e.g.*, Defendants' Partial Motion to Dismiss Plaintiffs' Amended Complaint, *Steward v. Abbott*, No. 5:10-cv-01025, ECF No. 67 (W.D. Tex. Nov. 4, 2011) (listing "Greg Abbott, Attorney General of Texas," among others, as counsel for "Rick Perry, Governor of the State of Texas"). Because Attorney General Abbott was representing Governor Perry, he owed the Governor "the same diligent and faithful representation as any other 'client,'" *Cofer*, 754 S.W.2d at 125, and could not "forge a settlement agreement over the express objection of his client." *LULAC*, 999 F.2d at 842.

As a defendant, Governor Perry had to consent to any settlement, and his general counsel signed the interim settlement agreement on behalf of Governor Perry as a defendant:


DAVID MORALES
General Counsel, for
RICK PERRY
Governor of Texas
***Defendant***

ECF No. 180 at 22. The General Counsel's description of the case as involving Governor Perry "sign[ing] as the State's chief diplomatic officer," ECF No. 169 at 10, is not supported by the case's actual facts. Nor does the case have any relationship to this case, where Governor Abbott is not a party.

In addition to his role acting as counsel for state officials and agencies in litigation, the Attorney General also has the independent constitutional authority to represent the State of Texas

---

[2] It is unclear why the General Counsel cites the case as "United States v. Texas." ECF No. 169 at 10. PACER lists the short form as "Steward, et al v. Abbott et al."

itself, exercising his own judgment as its chief legal officer. *See* Tex. Const. art. IV, § 22. The duties of the Attorney General "remain 'multifarious, neces[s]arily involving at all times the exercise of broad judgment and discretion.'" *Webster*, 704 S.W.3d at 495 (quoting *Charles Scribner's Sons v. Marrs*, 262 S.W. 722, 727 (Tex. 1924)). That exercise of judgment and discretion" not only extends to "bringing and defending lawsuits but also . . . 'exercis[ing] his judgment and discretion' regarding the suits in which the State is an interested party." *Id.* (quoting *Agey*, 172 S.W.2d at 974). In fulfilling these duties, the attorney general's "judgment and discretion . . . *will not be* controlled by other authorities." *Id.* at 495 (quoting *Marrs*, 262 S.W. at 727).

The Texas Disciplinary Rules of Professional Conduct specifically recognize this role. Government attorneys, including the Attorney General, often have "authority concerning legal matters that ordinarily reposes in the client in private client-lawyer relationships," including authority "to decide upon settlement or whether to appeal from an adverse judgment." Tex. Discip. R. Prof'l Conduct, preamble cmt. 13.

Indeed, when a state agency or official has been named only in an official capacity to join the State, the Attorney General retains significant independent authority. *See LULAC*, 999 F.2d at 842 ("[W]e need not and do not decide the authority of the Attorney General when an official is named in his official capacity only to join the State."). For example, the Attorney General could appeal an adverse judgment in a suit nominally brought by the Comptroller even when the Comptroller did not wish to appeal:

> [T]he State of Texas is the actual party in suit to recover taxes . . . .
>
> [T]he Comptroller obviously exercised his administrative discretion and rejected request for refund of taxes paid under protest; otherwise there would have been no litigation. Thereafter, upon filing of suit, the Comptroller's statutory powers ended. In matters of litigation the Attorney General is the officer authorized by law to protect the interests of the State[.] . . . It was within discretion of the Attorney General, not that of the Comptroller, to decide whether to appeal a case in which the State had experienced an adverse judgment in the trial court. In such matters the Attorney General, not the Comptroller of Public Accounts, is authorized to perform the duties of the State's attorney.

*Bullock v. Tex. Skating Ass'n*, 583 S.W.2d 888, 894 (Tex. App.—Austin 1979, writ ref'd n.r.e.).

The Texas Supreme Court unanimously held that these responsibilities include settling lawsuits on behalf of the State. In *Terrazas v. Ramirez*, a redistricting lawsuit, the Attorney General, representing the Governor and the director and executive director of the Texas Legislative Council, executed settlement agreements on behalf of his clients. *Terrazas v. Ramirez*, 829 S.W.2d 712, 713 (Tex. 1991) (plurality op.). Seven justices rejected the argument that the Attorney General exceeded his authority: "The Attorney General, as the chief legal officer of the State, has broad discretionary power in conducting his legal duty and responsibility to represent the State." *Id.* at 721 (plurality op.). Although the Attorney General "appear[ed] to have acted throughout this litigation only on behalf of the state defendants and not for himself," he also had the authority "even on his own . . . to suggest possible remedies after the district court rendered an interlocutory summary judgment holding Senate Bill 31 unconstitutional." *Id.* at 722. "He also had the power to negotiate a settlement with the plaintiffs and to execute an agreement with them. To hold that he did not would be to give him less authority than any party or any other attorney participating in the case." *Id.*

In their dissents, Justice Mauzy and Hightower agreed with the plurality about the Attorney General's broad settlement authority: "The Attorney General, in carrying out his constitutional responsibility to represent the interests of the state, has discretionary power to settle lawsuits on behalf of the state so long as he does not usurp the authority of a co-equal department of government." *Id.* at 753 (Hightower, J., dissenting). Because "there [was] no specific constitutional authorization for any department of government to exercise redistricting power under the circumstances present in this cause," the Attorney General's agreement to a substitute districting plan was proper." *Id.*; *see also id.* at 746 (Mauzy, J., dissenting) (noting the Attorney General's "broad discretionary authority").

In their concurrences, Justices Gonzalez and Cornyn agreed with the ordinary authority of the Attorney General to settle cases but distinguished redistricting. *See id.* at 727 (Gonzalez, J., concurring) ("Our Constitution and statutes confer substantial powers upon the State's Attorney

General to settle ordinary civil lawsuits. However, this is not an ordinary civil lawsuit [because the settlement] . . . modifies or alters a redistricting plan[.]"); *id.* at 733–73 ("[T]he Constitution and laws of this state generally grant the Attorney General broad authority in exercising his role as the state's lawyer. The general discretionary power of the Attorney General to settle lawsuits on behalf of the state is not the issue here. As a general rule, he has such authority."). All nine justices, in other words, recognized the broad authority of the Attorney General to settle lawsuits as the State's lawyer.

The General Counsel's brief to this Court disregards these crucial differences between the authority of the Attorney General when representing another agency as a client, as in *Cofer*, and in exercising the Attorney General's independent constitutional discretion and judgment to bring suit on behalf of the State, as in *Webster*.

## III. The Governor Is Not a Party to Litigation Brought by the State.

The General Counsel's assertion that the Governor is, in some sense, always the "client" entitled to direct his litigation on behalf of the State and that the Attorney General acts merely as counsel for the Governor, ECF No. 169 at 7, is not only unsupported by precedent but directly conflicts with multiple holdings of the Texas Supreme Court and the structure of the Texas Constitution itself. Indeed, if that view were correct, the roles of General Counsel for the Governor and Attorney General would be indistinguishable. *Cf. Farmers Group, Inc. v. Lubin*, 222 S.W.3d 417, 425 (Tex. 2007) (holding that requiring the Attorney General to represent a client in litigation on behalf of the State "would inevitably restrict the broad discretionary power attorneys general need to carry out their constitutional duties" "to represent the state" (internal quotation marks omitted)).

Consider *Webster v. Commission for Lawyer Discipline*. If the Attorney General were merely counsel for the Governor, then the Attorney General would have no "judgment and discretion [in] bringing and defending lawsuits." 704 S.W.3d at 495. Like other lawyers, the Attorney General would be bound to follow his "client's" instructions. The General Counsel makes no attempt to

harmonize the Texas Supreme Court's holding with his suggestion that the Attorney General is an "inferior" officer bound to follow the Governor's instructions.

Indeed, four years ago, the Texas Supreme Court unanimously reaffirmed that the Governor is not a party in litigation brought by the Attorney General on behalf of the State. The Attorney General, "acting on behalf of the Texas Commission on Environmental Quality (TCEQ)," sued VW Germany and Audi Germany for violations of Texas environmental statutes. *State v. Volkswagen Aktiengesellschaft*, 692 S.W.3d 467, 470 (Tex. 2022) (per curiam). The caption shows that the sole governmental party is "The State of Texas." *Id.* at 467.

Following recusal of two justices, the Chief Justice requested that the Governor appoint two substitute judges. *Id.* at 469 (citing Tex. Gov't Code § 22.005(a)). The defendants objected "that allowing the Governor to appoint justices in this case would create both due-process and ethical problems because the State is a party." *Id.*

The Texas Supreme Court unanimously rejected the argument that "allowing the Governor to commission two justices . . . is tantamount to allowing the State 'to be the judge of its own cause' and 'would create an appearance of partiality.'" *Id.* at 473. This is because "it is not the Governor but the Attorney General, a distinct and separately elected officer, who has authority to initiate and conduct enforcement actions on the State's behalf." *Id.* "Because these actions were not brought by the Governor, at his direction, or on his authority, we do not impute the status of party to the Governor himself." *Id.* at 474. "The State acts through its officers, to be sure, but the Governor is not automatically implicated in every state action or even every executive-branch action." *Id.*

The Texas Supreme Court distinguished between "a government entity and its constituent government actors." *Id.* "[A]ctors within the [Texas] executive branch . . . are not interchangeable and cannot be considered alter egos of one another." *Id.* The Governor is not a party to an enforcement action brough by the Attorney General. *Id.*; *see also id.* at 475 ("[T]he Governor's status as the elected officer that leads the executive branch does not justify imputing other state actors' conduct or party status to him.").

*Volkswagen* confirms the relative responsibilities of the Governor and Attorney General in actions brought in the name of the State. The Attorney General, as the chief law officer of the State, exercises judgment and discretion—which will not be controlled by others—regarding the suits in which the State is an interested party. *Webster*, 704 S.W.3d at 495. The Governor, in contrast, is not a party to litigation brought by the State and does not have even sufficient interest that the Governor's appointment of specific judges to hear the case creates an appearance of partiality. *Volkswagen*, 692 S.W.3d at 479.

Far from supporting the General Counsel's view, the statutory requirement that the Attorney General report to the Governor "the first Monday of December of each even-numbered year" regarding "cases in which the state was a party" confirms that the Governor is *not* a client these cases. An attorney must "keep a client reasonably informed about the status of a matter." Tex. Discip. R. Prof'l Conduct § 1.03. That the Governor is entitled only to "a summary" every two years reinforces the duty and responsibility of the Attorney General to make decisions on behalf of the State in litigation. The General Counsel's demands for additional information regarding this case, ECF No. 169 at 2, conflict with the Legislature's decision to provide the Governor only with periodic summaries of litigation involving the State.

In a recent dissent in a different case, Justice Scott Brister detailed the role of the Attorney General: "The Office of the Attorney General ('OAG') has constitutional and statutory duties to represent the State in hundreds of cases as a *party* and as *counsel.*" *In re Google, LLC*, 705 S.W.3d 479, 491 (Tex. App. [15th Dist.] 2025) (Brister, J., dissenting). "OAG acts in dual capacities: as *trial counsel*, and as a *party*." *Id.*

Nothing in the Texas Constitution grants the Governor any authority to litigate or settle cases on behalf of the State. Indeed, when the Governor recently filed a petition for writ of quo warranto, he filed suit as "In re Governor Abbott, in his Official Capacity as Governor of the State of Texas." In contrast, the Attorney General filed a similar petition on behalf of the State of Texas: "In re State of Texas." Far from supporting the General Counsel, *Day Land & Cattle Co. v. State* supports the Attorney General's view by confirming that "in a government in which the duties of

all officers, as well as their powers, are defined by written law, no power ought to be exercised for which warrant is not there found," 4 S.W. 865, 867 (Tex. 1887), including the power to direct the Attorney General to file suit.

Put simply, "[i]n matters of litigation the Attorney General is the officer authorized by law to protect the interests of the State." *Bullock v. Tex. Skating Ass'n*, 583 S.W.2d 888, 894 (Tex. App.—Austin 1979, writ ref'd n.r.e.). The holding of *Volkswagen* applies directly to foreclose the General Counsel's attempts to interfere with the settlement of this case: "[I]t is not the Governor but the Attorney General, a distinct and separately elected officer, who has authority to initiate and conduct enforcement actions on the State's behalf." *Volkswagen Aktiengesellschaft*, 692 S.W.3d at 470.

## IV. Any Settlement With "the State of Texas" Must Be With the Attorney General.

This constitutional allocation of authority to the Attorney General is not disturbed by Article IV, Section 10. No court, treatise, or other authority has ever interpreted the general authority of Section 10 to override the specific constitutional authority of the Texas Attorney General to settle cases as the State's chief legal officer, and as detailed above, the General Counsel has identified no case as an example of anyone ever interpreting the Governor's authority so expansively.

The authority and responsibility of the Attorney General to "exercise his judgment and discretion regarding the suits in which the State is an interested party," *Webster*, 704 U.S. at 495, assessments that "are privileged at a *constitutional* level," *id.* at 495–96, necessarily includes the right to settle cases. The Attorney General cannot be compelled to bring suit (or continue asserting claims) on behalf of the State when he does not believe that asserting those claims is warranted. *Cf. Lewright v. Bell*, 63 S.W. 623, 624 (Tex. 1901). Nor can the Attorney General be compelled to cease pursuing claims on behalf of the State. Put simply, the Attorney General could file a motion to voluntarily dismiss this case under Rule 41(a) at any time, and the Governor could raise no complaint. *Cf. Executive Condominiums, Inc. v. State*, 764 S.W.2d 899, 902 (Tex. App.—Corpus

Christi–Edinburg 1989, writ denied) (holding that the Attorney General can "compromise and settle claims by agreed judgment on behalf of the State").

The Governor's authority to enter into agreements under Article IV, Section 10 necessarily cannot exceed his constitutional authority or violate the separation of powers, either inside or outside of the Executive Department. In the same way that a settlement agreement entered into by the Attorney General (even a settlement agreement joined by the Governor) cannot "encroac[h] upon a power which the Constitution commits to the Legislature," *Terrazas*, 829 S.W.2d at 713 (plurality op.), the Governor cannot "conduct . . . intercourse and business of the State" in a manner that encroaches on the power that the Constitution allocates to other executive officials. Indeed, Attorney General Abbott successfully defended against a similar attempt to expand the powers of the President of the United States. *See Medellin v. Texas*, 552 U.S. 491, 529–30 (2008) ("Congress has indeed authorized the President to represent the United States before the United Nations, the ICJ, and the Security Council, 22 U.S.C. § 287, but the authority of the President to represent the United States before such bodies speaks to the President's *international* responsibilities, not any unilateral authority to create domestic law."). In the same way that the Governor could not reach an agreement with the United States (or another State) that would bind the Legislature to modify Texas law or bind the Texas judiciary in how it decides cases, an agreement by the Governor cannot bind the Attorney General to pursue or abandon claims.

None of this should cast doubt on the general ability of the Governor to enter agreements on behalf of the State. The General Counsel's theory conflates negotiating a new agreement with resolving a lawsuit the Attorney General brought and has litigated. Settling this case is an exercise of the Attorney General's litigation authority, not the Governor's conduct of the State's intercourse and business with the United States. The cases cited by the General Counsel arose where the State affirmatively contracted with another sovereign pursuant to legislative authorization, not settlement of pending lawsuit. *See Adams v. Calvert*, 396 S.W.2d 948, 950 (Tex. 1965) (involving express authorization by the Legislature for the Governor to cede jurisdiction over lands to the United States); *Highway Comm'n of Tex. v. Vaughn*, 288 S.W. 875, 876 (Tex. App.—

Austin 1926, writ ref'd) (involving a special act concerning construction of a bridge across the Red River); *see also* Tex. Att'y Gen. Op. No. M-312 (1968); Tex. Att'y Gen. Op. No. M-891 (1971). Far from suggesting that Article IV, Section 10 constitutes a broad grant of authority for the Governor to override the general structure of the Texas Constitution, these cases suggest that Article IV, Section 10 constitutes a means for the Governor to exercise authority otherwise allocated to him by statute or by the Constitution.

Nor does the Attorney General deny that these agreements might affect claims brought by the Attorney General on behalf of the State. If, for example, the Governor sold or donated the concertina wire at issue to the United States (or granted an easement to the federal government), the claims at issue might become moot. But such an agreement regarding the State's property is qualitatively different than an agreement to dismiss the State's claims, a decision within the constitutional authority of the Attorney General.

Nor does this Court need to consider the extent to which a settlement agreement entered into by the Attorney General on behalf of the State of Texas could impose obligations on non-party state officials and agencies. *Cf. Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986) ("[P]arties who choose to resolve litigation through settlement . . . may not impose duties or obligations on a third party, without that party's agreement. . . . [A] court may not enter a consent decree that imposes obligations on a party that did not consent to the decree.").

The General Counsel correctly does not argue that the settlement reached by the parties in this case imposes any obligations on the Governor, on the Texas Military, or on the Texas Department of Public Safety. ECF No. 169 at 5. The obligations in the terms of parties' settlement are imposed entirely on the United States Defendants in exchange for the State of Texas settling its claims. To the extent that the Governor believes it would be "good sense" to reach a separate agreement with the United States regarding how the obligations of the United States will be "operationalize[d]," ECF No. 169 at 5, nothing prevents the Governor from having these discussions and reaching such an agreement. But the Governor is not a party to this case and cannot

prevent the Attorney General from exercising his constitutional responsibilities to conduct litigation on behalf of the State. *Webster*, 704 S.W.3d at 495. Article IV, Section 10 does not permit the Governor to exercise authority allocated by the Texas Constitution either outside the Executive Department or to another constitutional officer within the Executive Department.

## CONCLUSION

As detailed in the contemporaneously filed motion, the appearance and brief of the General Counsel should be struck. This Court should reaffirm that settlement can and must be reached by the parties to this case through their authorized representatives: the United States, as represented by its Attorney General through the Department of Justice, and the State of Texas, as represented by its Attorney General.

Dated: August 17, 2026

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

ROB FARQUHARSON
Deputy Attorney General for Legal Strategy

WILLIAM D. WASSDORF
Associate Deputy AG for Civil Litigation
Texas State Bar No. 24103022

MICHAEL E. COTTON
Chief, Special Litigation Division

Respectfully submitted,

/s/ *David Bryant*
DAVID BRYANT
Senior Special Counsel
Texas State Bar No. 03281500

STEVEN B. LOOMIS
Special Counsel
Texas Bar No. 24060998

OFFICE OF THE TEXAS ATTORNEY GENERAL
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2100
Fax: (512) 457-4410
will.wassdorf@oag.texas.gov
david.bryant@oag.texas.gov
steven.loomis@oag.texas.gov

COUNSEL FOR STATE PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on September 2, 2026, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/ David Bryant*
**DAVID BRYANT**